UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X

ANTHONY MANGANIELLO,

                                   Plaintiff,                    CIVIL ACTION No.:  07 CV 3644 (HB)

     - Against-

THE CITY OF NEW YORK, DET. LUIS AGOSTINI,
 individually and as a New York City  Police Detective,
SHAWN ABATE, individually and as a New York City
Police Detective, DEREK PARKER individually  and as a
New York City Police Detective,  LT. HENRY SCOTT
individually and as a New York City Police Lieutenant,
P.O. ALEX PEREZ, individually  and as a New York City
Police officer, P.O. MIRIAN NIEVES, individually and as
a New York City Police officer, MICHAEL PHIPPS
individually and as the  Commanding Officer of the
43rd Precinct, JOHN McGOVERN,  individually and as a
New York City Police Detective Sergeant,
ROBERT MARTINEZ, individually and as a New York
City Police Detective, GERYL MCCARTHY,  individually
and as a New York  City Police Deputy Inspector,

                              DEFENDANTS
-----------------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF MOTION

Plaintiff submits the within Memorandum of Law in support of his motion pursuant to

Rule 37 of the Federal Rules of Civil Procedure.

## STATEMENT OF FACTS

This is a malicious prosecution action in which Plaintiff, a former parkchester security guard alleges that he was maliciously prosecuted for the murder of Albert Acosta, a fellow parkchester security guard. After his arrest, Plaintiff's clothes and hands were tested for gun shot residue which revealed that he did not fire a gun. (Ex. 13, ¶ 59). Further Plaintiff alleges that after being told by a Bronx A.D.A., that there was no probable cause to connect Plaintiff with the Homicide of Acosta, all defendants fabricated evidence to create a link between Plaintiff and Acosta's murder. (Ex. 13, ¶ 62). Plaintiff further alleges that defendant Shawn Abate knowingly forwarded false information to the District Attorney's office. (Ex, 13 ¶ 74, 85). Plaintiff further alleges that Alex Perez and Officer Nieves conspired and provided false testimony before the grand jury and at trial to attempt to link Plaintiff to the murder. (Ex. 13, ¶ 119-124). More specifically Nieves falsely testified that upon arriving at the crime scene, Plaintiff made a statement that it was his partner in the room and Perez testified that there had been no radio transmission identifying who was in the room, when in fact, it had been broadcast over the radio that Acosta was murdered. (Ex. 13, ¶ 119-124). The defendants provided these false statements and testimony to give the false appearance that Plaintiff had knowledge of who was in the room because he was involved in the murder. (Ex.13, ¶ 119-124).

On October 16, 2007, Plaintiff demanded the depositions of the following individuals: (i) Maureen McMahon, (ii) The Laboratory Technician(s) who performed the gun shot residue, skin, hair, fiber and print analysis during the investigation into the homicide of Albert Acosta (If different from Maureen McMahon) (iii) Police Officer Rodriguez (43rd Precinct), (iv) Alex Perez

and (v) Shawn Abate. (Ex. 1). The Court's Scheduling Order required all factual discovery to be concluded by February 11, 2008. (Ex. 2). On January 11, 2008, the Court extended the deadline to March 14, 2008 to allow defendants additional time to complete the depositions. (Ex. 3).

On February 11, 2008, the undersigned issued a subpoena for the deposition of A.D.A. Christine Scaccia, who conducted Plaintiff's trial, to be deposed on February 28, 2001. (Ex. 4). The undersigned was contacted by defense counsel who represented that she was representing A.D.A. Scaccia and would not be producing her on February 28, 2001. (Ex. 5). On March 7, 2008, the undersigned sought judicial assistance because the defendants had still not produced the above referenced individuals for deposition, despite being ordered to do so. (Ex. 5). The Court made the following endorsement on the undersigned's letter "The defendant is directed to produce the witnesses for whom notices of deposition have been served, and that the depositions all occur before the deadline for discovery". (Ex. 5). On March 7, 2008, the undersigned advised defense counsel that I was available the following Monday through Thursday and asked defense counsel to produce her witnesses. (Ex. 7). On March 10, 2008, the Court gave Plaintiff leave to take up to fifteen depositions and indicated that the deadlines for discovery will remain in effect. (Ex. 8). The undersigned immediately faxed the Court's notification to defense counsel. (Ex. 8). However, defendants failed to produce any of the outstanding witnesses. (*Joseph Declaration*, ¶ 6). On March 10, 2008, defense counsel for the first time advised that Ms. Scaccia was on a two month long trial and could not be produced. (Ex. 6). In response to a letter by defense counsel seeking another extension, the Court on March 14, 2008 issued the following endorsement " You will try to get an hour of the ADA's time after an afternoon recess if it doesn't happen tell me and I will try my hand. (2) The 15 depositions need not all be taken but the right to those that are of

3

defendant seem beyond per adventure. (3) You have already one adjournment from February 11 to March 14, 2008 no more seem appropriate. Nonetheless you may work the schedule you both subscribed to any way you want but we will be on trial in June and if you give me 60 days to decide motions they will be decided if you don't it is unlikely they will be but I'll try". (Ex. 9).

Ms. Scaccia's deposition testimony is incredibly important because a witness whom the defendants produced admitted to Ms. Scaccia that he lied about selling the Plaintiff a gun of the same caliber as the one used to murder Mr. Acosta. (Ex. 15, p. 506-508). Following an off the record discussion with defense counsel and the A.D.A, Judge Marcus (the trial Judge at Mr. Manganiello's trial ) said "Everyone seems to agree that Mr. Damon is not telling the truth". (Ex. 15, p. 506-508).

Despite the passing of almost a month, defense counsel has yet to produce any of the witnesses for whom depositions remain outstanding. (*Joseph Declaration*, ¶ 6).

Plaintiff maintains that on the date of Acosta's murder, for the entire time he was at the building where Acosta was found (prior to receiving a call about Acosta being down), he was in the company of two police officers, known to him as Officers Rodriguez and Ortiz. (Ex. 13, ¶ 103). Plaintiff likewise alleges that Agostini created police reports which attributed fabricated statements to officers Rodriguez and Ortiz that Plaintiff left the call before they did. (Ex. 13, ¶ 103, 104).

On March 11, 2008, defense counsel represented to the Court that despite her diligent efforts, she could not produce Officer Rodriguez because she did not know who he was. (Ex. 9, p. 2). On March 13, 2007, defendants finally produced Officer Ortiz for a deposition. (Ex. 14). Officer Ortiz testified that while he had no recollection, his partner, who he was able to identify as

4

Officer Eric Rodriguez, Shield No.: 12041 kept all of the notes concerning what time they responded to calls on the date of Acosta's murder. (Ex. 14, p. 5, 13, 14). Officer Ortiz testified that Officer Rodriguez had been transferred to the Transit District of the N.Y.P.D. (Ex. 14, p. 6). Had defense counsel simply spoke with Officer Ortiz prior to his deposition, she would have had his information in sufficient time to produce him for a deposition prior to the deadline. On March 13, 2008, after Mr. Ortiz's deposition, the undersigned reminded defense counsel that Ortiz had provided Mr. Rodriguez's pedigree information during his deposition and that we again demanded he be produced for deposition. (Ex. 12).  To date, officer Rodriguez has still not been produced for a deposition. (*Joseph Declaration*, ¶ 6).

On September 11, 2007, Plaintiff demanded production of all applications filed by Plaintiff with the New York City Police Department for employment including all of Plaintiff's psychological records. (Ex.10, ¶ 15).  On November 29, 2007, the Court directed defendants to disclose any psychological records of the Plaintiff in their possession before December 4, 2007. (Ex. 11).  To date, defendants have failed to produce said documents. (*Joseph Declaration*, ¶ 7). At a recent deposition of Dr. Latif, Plaintiff's treating physician, held on March 10, 2008, defendant made reference to said examinations, despite the fact that they have not been turned over to date. (*Joseph Declaration*, ¶ 8). On March 13, 2008, the undersigned wrote defense counsel and reminded her of her obligations to disclose Plaintiff's psychological records and said letter has been ignored. (Ex. 12).

Likewise, during the deposition, defendant made a complete copy of Dr. Latif's chart and marked it as a deposition exhibit. (*Joseph Declaration*, ¶ 9). Defense counsel represented that they would provide same to Plaintiff and they have yet to do so. (*Joseph Declaration*, ¶ 9)

## DISCUSSION

Defendants have wilfully obstructed discovery by failing to appear for depositions, failing to provide discovery and interfering with a subpoena for a nonparty deposition. As such, the allegations in Plaintiff's complaint concerning the defendants and witnesses who have not been produced for deposition should be deemed true and defendants should be precluded from offering evidence or asserting contentions on points which they have failed to provide discovery.

Federal Rule of Civil Procedure 37(a)(3)(b) states in pertinent part that if a party or a witness fails to obey an order to provide or permit discovery the court may issue just orders including (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims; (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence, (iii) striking pleadings in whole or in part or rendering a default judgment against the disobedient party.  Once it is determined that a party has violated a discovery order, F.R.C.P. R. 37 requires that the disobedient party to show that its failure to comply is substantially justified or that other circumstances make an award of sanctions unjust. *Poliquin v. Garden Way, Inc.*, 154 F.R.D. 29 (D.Me. 1994).

Here, Plaintiffs first demanded depositions of the following individuals  (i) Maureen McMahon, (ii) The Laboratory Technician(s) who performed the gun shot residue, skin, hair, fiber and print analysis during the investigation into the homicide of Albert Acosta (If different from Maureen McMahon) (iii) Police Officer Rodriguez (43rd Precinct), (iv) Alex Perez and (v) Shawn Abate on October 16, 2007.  The Court ordered that these individuals be produced for deposition by March 14, 2008. On March 10, 2008, the Court again ordered these individuals to be produced

for deposition. Almost seven months have passed since Plaintiff's demand and despite two Court orders, the defendants still have not been deposed. This noncompliance is extremely prejudicial because two defendants have still not been produced for deposition. As defendants Abate and Perez have not appeared for deposition, the allegations in Plaintiff's complaint against them should be deemed established.

Even more egregious, defendants misrepresented that they had no way of knowing who Officer Rodriguez was. As shown in Officer Ortiz's deposition, Officer Rodriguez's pedigree information was readily available to the defendants and they failed to take very basic steps to ascertain his identity, such as asking his former partner (Ortiz), who is a City employee. This failure to comply with their basic discovery obligations has completely frustrated Plaintiff's ability to corroborate his contention that he was with officers Ortiz and Rodriguez for the entire time he was at the location of Acosta's homicide. This is especially prejudicial because Ortiz testified that Rodriguez maintained the paperwork, which is likely to identify what time Plaintiff was with the two officers. Therefore, it should be deemed established that Plaintiff was with officers Rodriguez and Ortiz at the time of Acosta's murder.

Additionally, Plaintiff maintains that he was prosecuted for a murder involving the use of a gun despite the fact that the gun shot residue examinations of his hands showed that he did not fire a gun on the day of Acosta's murder. Likewise, samples of hair and blood taken from Acosta and Plaintiff on the day of Acosta's murder showed that neither had any DNA or fibers from the other. Plaintiff has a need to question the laboratory technicians who performed these examinations to corroborate these contentions. As defendants have failed to produce these individuals for deposition, it should be deemed established that Plaintiff's contentions in this

regard are likewise true.

As discussed above, defendants wilfully interfered with a subpoena issued by Plaintiff for A.D.A. Scaccia's deposition. Defense counsel represented that she would be representing a non-party witness and refused to produce the witness on the date notice on the subpoena. Rather than provide alternative dates for said deposition, defense counsel ignored Plaintiff's subpoena until the undersigned sought an order compelling the deposition. Then defense counsel, represented that Ms. Scaccia was unavailable due to a trial. Here, defense counsel stonewalled Plaintiff's non-party subpoena until the witness was unavailable. Defense counsel has even ignored the Court's directive to produce Ms. Scaccia after an afternoon recess. This has completely frustrated Plaintiff's ability to determine what facts the defendants made known to the A.D.A. Ms. Scaccia's testimony is particularly important because a witness who the defendants produced that claimed to have sold plaintiff a gun recanted his story to Ms. Scaccia. Based upon this interference, it should be deemed established the Plaintiff was prosecuted without probable cause.

Finally, defendants should be precluded from any use of Plaintiff's psychological tests administered by the N.Y.P.D., as they have failed to turn same over to Plaintiff, despite being ordered to do so November 29, 2007. Likewise, defendants should be compelled to immediately provide Plaintiff with a copy of Dr. Latif's chart, which was marked as a deposition exhibit.

## CONCLUSION

For the foregoing reasons, Plaintiff requests that the Court issue Orders (i) deeming Plaintiff's allegations as to defendants Abate and Perez as established, (ii) deeming it established that there was no probable cause to prosecute Plaintiff for the murder of Albert Acosta, (iii)

8

deeming it established that gun shot residue testing of Plaintiff's hands and clothes from the date of Acosta's murder established that Plaintiff did not fire a gun on that date, (iv) deeming it established that at the time Mr. Acosta was murdered, Plaintiff was in the company of P.O. Ortiz and P.O. Rodriguez, (v) precluding defendants from use or mention of Plaintiff's psychological records and other documents associated with Plaintiff's application for employment with the New York City Police Department and (vi) compelling defendants to provide Plaintiff with a copy of the exhibit Dr. Latif's deposition.

Respectfully submitted,

OSORIO & ASSOCIATES, LLC

BY:

Michael H. Joseph, Esq. (MJ8838)
184 Martine Avenue
White Plains, New York 10601
(914) 761-3168

Dated: White Plains, New York
April 9, 2008

9