# United States District Court

SOUTHERN DISTRICT OF NEW YORK

ANTHONY MANGANIELLO

V.

THE CITY OF NEW YORK
DET. LUIS AGOSTINI, individually and as a New York City Police Detective
SHAWN ABATE, individually and as a New York City Police Detective
DEREK PARKER individually and as a New York City Police Detective
LT. HENRY SCOTT individually and as a New York City Police Lieutenant
P.O. ALEX PEREZ, individually and as a New York City Police officer
P.O. MIRIAN NIEVES, individually and as a New York City Police officer
MICHAEL PHIPPS individually and as the Commanding Officer of the 43rd Precinct
JOHN McGOVERN, individually and as a New York City Police Detective Sergeant
ROBERT MARTINEZ, individually and as a New York City Police Detective,
GERYL MCCARTHY, individually and as a New York City Police Deputy Inspector,

**SUMMONS IN A CIVIL CASE**

CASE NUMBER:

**07 CV 3644**

TO: (Name and address of defendant)

THE CITY OF NEW YORK, 100 Church Street, New York, NY 10007
DET. LUIS AGOSTINI, One Police Plaza, New York, NY 10038
SHAWN ABATE, One Police Plaza, New York, NY 10038
DEREK PARKER One Police Plaza, New York, NY 10038
LT. HENRY SCOTT One Police Plaza, New York, NY 10038
P.O. ALEX PEREZ, One Police Plaza, New York, NY 10038
P.O. MIRIAN NIEVES, One Police Plaza, New York, NY 10038
MICHAEL PHIPPS One Police Plaza, New York, NY 10038
JOHN McGOVERN, One Police Plaza, New York, NY 10038,
ROBERT MARTINEZ, One Police Plaza, New York, NY 10038
GERYL MCCARTHY, One Police Plaza, New York, NY 10038

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

Michael H. Joseph, Esq.
Osorio & Associates LLC
184 Martine Ave.
White Plains, NY 10601

an answer to the complaint which is herewith served upon you, within ____20____ days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

J. MICHAEL McMAHON

CLERK

DATE  MAY 0 8 2007

(BY) DEPUTY CLERK

# 07 CV 3644

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

ANTHONY MANGANIELLO,

                Plaintiff,              CIVIL ACTION No.:

  - Against-

THE CITY OF NEW YORK,
DET. LUIS AGOSTINI, individually
and as a New York City Police Detective
SHAWN ABATE, individually and as a New York City
Police Detective, DEREK PARKER individually
and as a New York City Police Detective,
LT. HENRY SCOTT individually and as a New York
City Police Lieutenant, P.O. ALEX PEREZ, individually
and as a New York City Police officer,
P.O. MIRIAN NIEVES, individually and as a New York City
Police officer, MICHAEL PHIPPS individually
and as the Commanding Officer of the 43rd Precinct,
JOHN McGOVERN, individually and as a New York City
Police Detective Sergeant, ROBERT MARTINEZ, individually
and as a New York City Police Detective, GERYL MCCARTHY,
individually and as a New York City Police Deputy Inspector,



MAY 08 2007

                              DEFENDANTS

------------------------------------------------------------X

**COMPLAINT IN A CIVIL ACTION**

1.     Plaintiff brings this action for compensatory damages, punitive damages and attorney's fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 for violations of his civil rights, as said rights are secured by said statutes and the Constitution of the United States.

## JURISDICTION

2. This Court has original jurisdiction under 28 U.S.C. § 1331, 1343, U.S.C. § 1988 and the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

## VENUE

3. Venue properly lies in the Southern District of New York under 28 U.S.C. § 1391(b), in that this is the District in which the claim arose.

## JURY DEMAND

4. Plaintiff respectfully demands a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

## PARTIES

5. At all relevant times, plaintiff Anthony Manganiello was and is a citizen of State of New York and the County of Westchester.

6. Defendant, THE CITY OF NEW YORK, was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

7. Defendant, THE CITY OF NEW YORK, maintains the New York City Police Department, a duly authorized public authority and/or police department, authorized to perform all functions of a police department as per the applicable sections of the New York State Criminal Procedure Law, acting under the direction and supervision of the aforementioned municipal corporation, the City of New York.

8. At all times relevant herein Luis Agostini was a duly sworn police officer and detective

of the New York City Police department and was acting under the supervision of said department and according to his official duties.

9. At all times relevant herein, Luis Agostini was acting under the color of law.

10. At all times relevant herein Derek Parker was a duly sworn police officer and detective of the New York City Police department and was acting under the supervision of said department and according to his official duties.

11. At all times relevant herein, Derek Parker was acting under the color of law.

12. At all times relevant herein Shawn Abate was a duly sworn police officer and detective of the New York City Police department and was acting under the supervision of said department and according to his official duties.

13. At all times relevant herein, Shawn Abate was acting under the color of law.

14. At all times relevant herein Lt. Harry Scott was a duly sworn police officer and Lieutenant of the New York City Police department and was acting under the supervision of said department and according to his official duties.

15. At all times relevant herein, Harry Scott was acting under the color of law.

16. At all times relevant herein Commander Michael Phipps was a duly sworn police officer and Commanding Officer of the New York City Police department.

17. At all times relevant herein Commander Michael Phipps was the Commanding Officer of the 43rd Precinct and was in a policy making position and was otherwise responsible for setting and overseeing policies, customs and practices at the 43rd Precinct.

18. At all times relevant herein, Michael Phipps was acting under the color of law.

19. At all times relevant herein John McGovern was a duly sworn police officer and Detective Sargent of the New York City Police department and was acting under the supervision of said department and according to his official duties.

20. At all times relevant herein John McGovern was acting under the color of law.

21. At all times relevant herein Deputy Inspector Geryl McCarthy was a duly sworn police officer and Deputy Inspector of the 43rd precinct of the New York City Police department and was acting under the supervision of said department and according to her official duties.

22. At all times relevant herein Deputy Inspector Geryl McCarthy was acting under the color of law.

23. At all times relevant herein Alex Perez was a duly sworn police officer of the New York City Police department and was acting under the supervision of said department and according to his official duties.

24. At all times relevant herein, Alex Perez was acting under the color of law.

25. At all times relevant herein Miriam Nieves was a duly sworn police officer of the New York City Police department and was acting under the supervision of said department and according to his official duties.

26. At all times relevant herein, Miriam Nieves was acting under the color of law.

27. At all times relevant herein Detectives Shawn Abate, Luis Agosini, Miriam Nieves, Alex Perez, Lt. Harry Scott, Sgt. John McGovern, Commander Michael Phipps and Deputy Inspector Geryl McCarthy were assigned to the 43rd Precinct of the New York City Police

Department.

28. At all times relevant herein, the defendants acted jointly and in concert with each other.

**COUNT I: MALICOUS PROSECUTION UNDER 42 USC 1983**

29. Plaintiff repeats and reiterates each and everyone of the foregoing allegations as if more fully stated herein.

30. On or about February 12, 2001, Albert Acosta while employed as a Security Officer for Parkchester South Condominium Inc., (hereinafter "Parkchester") was murdered in the basement of 1700 Metropolitan Ave., Bronx, N.Y.

31. Ballistics testing showed that Acosta's death was caused by two bullets from a .22 caliber gun.

32. On the aforementioned date, Plaintiff was a Security Officer employed by Parkchester and was arrested for suspicion of the murder of Albert Acosta.

33. There were no witnesses to the murder of Albert Acosta.

34. There was no direct evidence linking Plaintiff to the murder of Albert Acosta.

35. After Plaintiff was arrested, he was transported to the 43rd Precinct.

36. Upon information and belief, Plaintiff was arrested because a custodian named Walter Cobb stated that while walking outside he heard shots and shortly thereafter saw the Plaintiff emerging from the building and because there was a white streak of plaster on his uniform, which was similar to plaster that was found near the crime scene.

37. The aforementioned plaster could not be connected to the room where the homicide occurred and in fact was a common substance found in all of the buildings at Parkchester.

38. Initially, Mr. Cobb told Sgt. Rolf Ohle of Parkchester, who was the first person to respond to the scene that he heard shots and it sounded like they came from outside the building.

39. Mr. Cobb did not mention anything about Mr. Manganiello coming out of the building shortly after the shooting to Sgt. Ohle.

40. Mr. Cobb has given inconsistent versions of where he heard the shots coming from, when he heard the shots, whether he saw the Plaintiff shortly after the shots and what the Plaintiff allegedly said to him.

41. There were several reasons to question the veracity of Mr. Cobb.

42. The initial handwritten notes prepared by various officers of the interviews with Cobb were given to Detective Luis Agostini.

43. Among other things, Detective Luis Agostini destroyed the notes and/or intentionally or recklessly lost the notes to keep the Plaintiff and his attorney from effectively questioning Cobb's credibility.

44. Upon information and belief, the statements of Cobb in the original handwritten notes differed from what Cobb ultimately testified to both before the grand jury and at trial.

45. Agostini and Abate knew that there were reasons to question the credibility of Cobb, but they forwarded the information provided by Cobb to the Bronx County District, without making a full disclosure that Cobb's credibility was questionable.

46. An employee from Verizon was present in the room directly across from where Acosta was found and did not hear any gun shots at the time Mr. Cobb states he heard the shots.

47. The employee from Verizon did not see the Plaintiff in the area where Acosta's body was found at the time that Walter Cobb stated that he heard shots and saw the Plaintiff leaving the scene.

48. Likewise three other employees of Parkchester were in the basement where Acosta was later found and they did not hear any shots, nor did they see Plaintiff in the vicinity.

49. Approximately one hour and a half prior to Acosta being found, the Plaintiff was at an apartment on the fifth floor in response to a call of an altercation and was present with several New York City police officers at the time.

50. After this call, Plaintiff left the building and did not return until after a call came over the radio that a Parkchester Security officer was down in the basement.

51. Among other transmissions, Sgt. Ohle transmitted over the radio that a Parkchester Security guard was down.

52. Additionally, upon information and belief, additional transmissions that Acosta had been shot were broadcast over the Parkchester radio system.

53. Upon arriving at the scene, Plaintiff was arrested and taken to the 43rd Precinct.

54. While Plaintiff was at the 43rd Precinct, he was being questioned aggressively by Detectives Luis Agostini and Shawn Abate.

55. While Plaintiff was being questioned, his brother Mario Manganiello, a police officer with the City of Mount Vernon went to the 43rd Precinct and saw the Plaintiff sitting in a chair in an undershirt, in a shaken condition and had apparently been interrogated as a suspect for the murder of Acosta.

56. Upon seeing the Plaintiff, Mario Manganiello called an attorney for his brother.

57. After Mario Manganiello called an attorney, Lt. Harry Scott approached Mario Manganiello and said to Mario, that this didn't have to go this way, you're a cop and now you got your brother lawyered up, what's the first thing you think and I'm sorry that it has to go like this.

58. In retaliation for the Plaintiff seeking legal representation, the defendants assumed that the Plaintiff must have been the murderer and the defendants conspired and set out on a course of actions more fully described herein to maliciously prosecute the Plaintiff, deny him his constitutional rights, deny him due process, deny him his right of confrontation, and deny him a fair trial in that in furtherance of these goals among other things, they fabricated evidence, destroyed and/or intentionally or recklessly "Lost" exculpatory evidence, suborned perjury and committed perjury.

59. After being arrested, Plaintiff's clothes and hands were tested for chemical and ballistic analysis, all of which revealed that he did not fire a gun.

60. Upon information and belief, on February 12, 2001, an Assistant District Attorney named Dondes advised the defendant Detectives that there was no probable cause to arrest Plaintiff and to charge him with the homicide of Albert Acosta and Dondes further did not authorize the arrest.

61. Upon information and belief, Detective Luis Agostini committed a course of actions to create and fabricate evidence that would create probable cause to believe that Plaintiff committed the homicide of Albert Acosta.

62. After Assistant District Attorney Dondes advised Luis Agostini that there was no

probable cause to charge Plaintiff with the Homicide of Albert Acosta, Luis Agostini conspired with other defendant officers, including but not limited to Parker, Abate, Martinez, Nieves and Perez to create and fabricate evidence against the Plaintiff to link him to the homicide of Albert Acosta.

63. Detective Luis Agostini was directly and actively involved in the continuation of criminal proceedings against plaintiff.

64. Detective Shawn Abate was directly and actively involved in the continuation of criminal proceedings against plaintiff.

65. Detective Robert Martinez was directly and actively involved in the continuation of criminal proceedings against plaintiff.

66. As more fully set forth herein, all defendants were directly and actively involved in the continuation of criminal proceedings against plaintiff.

67. At all times mentioned, herein there was a lack of probable cause to commence and continue criminal proceedings against plaintiff.

68. At all times herein, the defendants acted with malice in continuing criminal proceedings against plaintiff.

69. Luis Agositini and Robert Martinez conspired with Derek Parker to get witnesses to come forward with false testimony that Plaintiff either possessed a .22 caliber gun and/or was trying to purchase a weapon prior to the homicide of Acosta.

70. Detective Derek Parker recruited an inmate who was incarcerated at Riker's Island Correctional facility named Terrance Alston to provide testimony that the Plaintiff

approached him while he was in Parkchester and solicited him to kill another security officer over a dispute because of a girl.

71. Detective Derek Parker know or should have known that the statements of Alston were false because Terrance Alston was a known liar, and a known criminal who would say anything to lessen his time of incarceration.

72. Detective Luis Agostini knew or should have known that the statements of Alston were false because Terrance Alston was a known liar and a known criminal who would say anything to lessen his time of incarceration.

73. Upon information and belief, Detectives Parker and Agostini promised Alston that he would be released from custody early and/or other valuable consideration in exchange for Alston's agreement to provide false testimony.

74. Detectives Luis Agostini, Shawn Abate and Derek Parker forwarded the statements of Terrance Alston to the Office of the District Attorney for Bronx County, with knowledge that the information provided by Alston was fabricated.

75. On or about March 1, 2001, Detective Agostini coerced Michael Booth, a known criminal, loan shark, bookie and liar to give fabricated evidence including a statement that Plaintiff had approached Booth and asked him to sell Plaintiff a "rod", which is a street term for a gun.

76. At the time Booth gave the aforementioned statement, Agostini knew or should have known that it was false.

77. Upon information and belief, Agostini coerced Booth into giving the statement and/or gave explicit or implicit assurances to Booth that his criminal activities would be

tolerated by the 43rd Precinct in consideration for the fabricated testimony against Plaintiff.

78. At the aforementioned time Agostini improperly suggested facts to Booth and unduly influenced his statements and testimony.

79. Agositini caused the false statements of Booth to be furnished to members of the Bronx County District Attorney's office.

80. Upon information and belief on or about February 27, 2001 Luis Agostini coerced Chris Tartone into stating that he had overheard Plaintiff asking people where he could buy a gun prior to Acosta being murdered.

81. Upon information and belief. Among other things on or about February 27, 2001 Agostini provided Chris Tartone with assurances, either explicitly or implicitly that Terrance Alston, a person with whom Chris Tartone had a family or other relationship, including a business relationship, would benefit by Tartone's statement that he had overheard Plaintiff asking people where he could buy a gun prior to Acosta being murdered.

81. Agostini knew or should have known that the statements provided were false.

82. Agostini forwarded the aforementioned statements of Chris Tartone to the office of the Bronx District Attorney with knowledge that the statements were false.

83. Upon information and belief on or about February 27, 2001 coerced Chris Tartone into stating that he had overheard Plaintiff asking people where he could buy a gun prior to Acosta being murdered.

84. The aforementioned and below mentioned actions by Agostini, Abate and Parker and the

other defendants were done with Malice and to frame Plaintiff for a homicide which he did not commit and to deny him the rights and privileges guaranteed by the U.S. Constitution.

85. Upon information and belief, Agostini, Martinez, Parker and Abate produced Alston and/or Booth for grand jury testimony and pressured them implicitly or explicitly to give perjured testimony, thereby suborning perjury.

86. Detective Derek Parker told Detective Luis Agostini that Terrance Alson was prepared to offer the aforementioned testimony.

87. Detective Luis Agostini knew or should have known that the testimony and statements of Terrance Alston was false.

88. Terrance Alston also told Agostini and Parker that Johnny Baker sold Plaintiff a firearm, and upon interviewing Johnny Baker, Baker stated that Alston was lying and he refused to testify that he had sold Plaintiff a gun.

89. Upon information and belief, either Parker, Martinez or Agostini offered or promised Alston a reduction in his sentence, earlier parole and/or other favorable treatment in exchange for this testimony.

90. By doing the aforementioned, Agostini, Martinez and Parker suborned perjurious testimony and fabricated evidence against Plaintiff.

91. Agostini recruited Chris Tartone to testify that he had overheard Plaintiff asking others if they knew where he could buy a gun.

92. Agostini knew or should have known that said testimony was false.

93. Agostini recruited Mark Damon to testify that he sold a .22 caliber hand gun to Plaintiff.

94. By doing so, Agostini suborned perjurious testimony and fabricated evidence against Plaintiff.

95. Upon information and belief, Agostini threatened to charge Damon with the murder of Acosta or other crimes if he did not testify against Plaintiff.

96. Agostini knew or should have known that said testimony was false.

97. By doing the aforementioned, Agostini suborned perjurious testimony and fabricated evidence against Plaintiff.

98. Agostini recruited Michael Booth, a known loan shark and Bookie to give false testimony that the Plaintiff had tried to buy a gun from him.

99. Upon information and belief, Agostini threatened to charge Booth with the murder of Acosta or other crimes if he did not testify against Plaintiff.

100. Upon information and belief, Agostini promised favorable treatment and noninterference of Booth's criminal activities in cooperation for the aforementioned testimony.

101. Agostini knew or should have known that said testimony was false.

102. By doing so, Agostini suborned perjurious testimony and fabricated evidence against Plaintiff.

103. On or about March 1, 2001, Agositini created a DD5 which contained false information allegedly made by Police officers Ortiz and Rodriguez, which stated in sum and substance that said they responded to dispute at 8:35 a.m., at 1700 Metropolitan Ave., and