285



```
 1   SUPREME COURT OF THE STATE OF NEW YORK
 2   COUNTY OF BRONX : CRIMINAL TERM : PART T-13
 3   ------------------------------------------x
 4   THE PEOPLE OF THE STATE OF NEW YORK,
 5                  -against-
 6   ANTHONY MANGANIELLO,
 7                         Defendant(s).
 8   ------------------------------------------x
 9                         June 30th, 2004
10   B E F O R E:
11            HONORABLE MARTIN MARCUS, Justice & jury.
12            (Same appearances as previously noted.)
13            ----------------------
14            THE CLERK:  Case on trial People verses
15   Anthony Manganiello. Appearances.
16            MR. RICHMAN: Murray Richman for Mr.
17   Anthony Manganiello.
18            MS. HILL:  Renee Hill of counsel to
19   Murray Richman.
20            MS. SCACCIA: Christine Scaccia for the
21   office of the District Attorney.
22            MS. MCELWREATH: Suzanne McElwreath for
23   the office of the District Attorney.
24            THE COURT:  Miss Scaccia, your witnesses
25   are?
```

f/lr           PROCEEDINGS                                  506

1   of me in this and in other cases to know that I do
2   not lean one way or the other. If you believe to
3   the contrary, so be it. I can live with that. I
4   have changed my mind twice in this case. Once
5   because the People presented me with controlling
6   law that clearly indicated that I should change my
7   mind and once now based on a change of circumstance
8   that altered the basis for my ruling.
9          Everyone seems to agree that Mr. Damon
10  is not telling the truth. If Mr. Damon is not
11  telling the truth, evidence that was not relevant
12  becomes relevant. It's part of this circumstantial
13  case. What the jury makes of it is for the jury to
14  decide.
15          MR. RICHMAN: Your Honor --
16          THE COURT:  Not for me. If you have been
17  -- if you have been lead not to prepare for these
18  witnesses adequately, I am telling you -- based on
19  my ruling -- I understand that and I've told you
20  you can have time to prepare. Why that would lead
21  you to accuse me of a lack of impartiality I have
22  no idea.
23          MR. RICHMAN: You know, I'm not accusing
24  you per se --
25          THE COURT: You just said you were.

f/lr           PROCEEDINGS                                507

1              MR. RICHMAN: Hear me.
2              THE COURT: You didn't want me to
3   misunderstand.
4              MR. RICHMAN: I don't want you to
5   misunderstand.
6              THE COURT: You just said you didn't want
7   me to infer it, you weren't -- you weren't implying
8   it, you were saying it.
9              MR. RICHMAN: I don't think you intend to
10  but it ended up that way.
11             THE COURT: Well, I thank you for your
12  psychological review.
13             MR. RICHMAN: I have a degree in it,
14  Judge. Forgive me.
15             THE COURT: Be that as it may, be that as
16  it may, that's my ruling.
17             MR. RICHMAN: Okay.
18             THE COURT: I invite you again if you
19  want an opportunity to have a time to prepare for
20  their testimony to take --
21             MR. RICHMAN: Your Honor, will you permit
22  me to go into the fact of how the prosecution and
23  their minions attempted to secure the information
24  that was untrue -- and should have known it was
25  untrue -- in order to effectuate an illegal end, to

f/lr           PROCEEDINGS                               508

1  wit, the securing of a conviction as against my
2  client by putting a gun in his hand when they know
3  that not to be the truth or should have known it
4  not to be the truth.
5          THE COURT: I don't understand what
6  you're saying.
7          MR. RICHMAN: Well, in view of Mr.
8  Damon's no longer a prosecution witness based upon
9  the falsity of the statement, I would like the
10 opportunity to potentially bring it to the Court's
11 or at least the jury's attention of just that, that
12 he was such a person and he -- the prosecution
13 through auspices in this particular case had
14 proffered him initially as a witness only later to
15 find out that he withdraw it knowing it to be
16 untrue.
17         MS. SCACCIA: If counsel can remember
18 back to this morning when we had this discussion at
19 the bench, I said I don't believe his recantation
20 and I don't know whether he was, in fact, lying
21 then or is lying now, but I know I have an
22 obligation and I'm not going to put a liar on the
23 stand because either way you cut it he's lying.
24         So I don't know where this whole
25 surprise and he didn't know that Booth and

1    Tartarone could potentially be witnesses because in
2    the Court's ruling you said you are going to
3    contradict Mr. Damon's testimony, he said
4    absolutely. Well, if you contradict or controvert
5    Mr. Damon's testimony about the weapon, I'm going
6    to allow her to call these witnesses.
7         So the whole I didn't prepare for them,
8    especially the one guy who he formerly represented,
9    I really find hard to believe. But if he wants to
10   keep saying about how I should of known, you know
11   what, a man who is in custody has no idea what sort
12   of ballistic evidence was recovered at this murder
13   scene, but yet they give information to the cops
14   and to the People that they sold this defendant,
15   the White Italian security guard from Parkchester,
16   a .22 caliber semiautomatic and we just not only
17   happen to have two .22 calibers in the man's brain
18   but we have four .22 caliber shell cases.
19        Now, I don't know what Mr. Damon's
20   issues are and I don't know if he was lying then or
21   he's lying now, but he -- I know he's a liar and
22   that's why he's not on the stand. For counsel to
23   just be able to sit here and say, oh, my minions.
24   You see all my minions, don't you. The 43rd
25   Precinct's on vacation and I'm here with no folder

1  and on trial but my minions made all this happen.
2  That's really just not a fair statement. And
3  counsel does it over and over all day long about
4  all of the stuff I'm trying to pull on his client.
5  Meanwhile, you give rulings and he just disregards
6  them in front of the jury. Not when the jury's not
7  here, only when the jury's here because it's part
8  of his show and it's really not fair.
9          MR. RICHMAN: How come you don't cut her
10 off? Me you cut off like that. Cut her off will
11 you, please.
12         MS. SCACCIA: Why don't we put on the
13 record you're grinning the whole time you make
14 these stupid references.
15         MR. RICHMAN: Stop it. Get a life.
16         THE COURT: Mr. Richman, I wish sometimes
17 you would pay more attention to the seriousness of
18 the formality of the courtroom than you do.
19         I don't quite understand where your
20 offer of proof is, what witnesses you would call to
21 this affect, but what Mr. Damon would of testified
22 to and how it would have been impeached has no
23 bearing on the credibility of any of the witnesses
24 who have testified.
25         MR. RICHMAN: Sir, it is my true belief