**EXHIBIT S**

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------x

ANTHONY MANGANIELLO,

                    Plaintiff,


          -against-


THE CITY OF NEW YORK, ET AL.,

                    Defendants.

------------------------------------------------x


                    January 30, 2008
                    1:25 p.m.


          Deposition of Defendant DERRICK PARKER
pursuant to Notice, at the offices of
CORPORATION COUNSEL, 100 Church Street, New
York, New York 10007, before Stephen Kleinman,
a Notary Public within and for the State of
New York.

58

PARKER

1

2          A.          Yeah, of course.

3          Q.          Okay.  And is that something

4    you commonly did to get somebody, to get

5    people to be witnesses?

6                      MS. FROMMER:  Objection.  You

7          can answer.

8          A.          Again, and I am going to say

9    this for the record, I don't make deals.  The

10   DA's office does.  I can recommend whatever I

11   want, but it is up to the DA to decide what

12   they want to do.

13         Q.          Okay.  During your time in the

14   intelligence unit, did you commonly tell a

15   confidential informant that you would

16   recommend that charges be dropped or

17   overlooked in exchange for testimony?

18                     MS. FROMMER:  Objection.  You

19         can answer.

20         A.          Again, I don't tell -- I don't

21   make deals with people.  The DA's office

22   does.

23         Q.          Listen to the question, sir.  I

24   haven't asked if you made a deal.

25                     I am asking you, if during your

1                              PARKER

2        the ADA -- by the way, did you ever testify

3        in the grand jury concerning the Bronx

4        homicide of the security officer?

5                A.      Not that I recall.

6                Q.      Okay.  Was it your custom and

7        practice to take notes at a meeting with an

8        ADA?

9                        MS. FROMMER:  Objection.  You

10               can answer.

11               A.      In certain cases, yeah.

12               Q.      What would happen to those

13       notes typically?

14               A.      They would go in the DD5.

15               Q.      In the DD5?

16               A.      Yes.

17               Q.      Okay.  Have you looked for any

18       DD5s concerning the investigation and

19       prosecution of Anthony Manganiello?

20               A.      No.

21               Q.      Do you know if you ever made a

22       DD5 concerning the arrest and prosecution of

23       Anthony Manganiello?

24               A.      No.

25               Q.      Can you tell me why you were



111

1                          PARKER

2                  Detective, did you have any

3     involvement at all in arresting Anthony

4     Manganiello?

5          A.    No.

6          Q.    Have you ever met Anthony

7     Manganiello?

8          A.    No.

9          Q.    Did you have any involvement in

10    investigating the homicide that occurred at

11    Parkchester?

12         A.    No.

13         Q.    Did you have any involvement in

14    prosecuting Anthony Manganiello for a

15    homicide?

16         A.    No.

17              MR. JOSEPH:  Note an objection

18        to the last question.

19         Q.    Did you have any conversation

20    with the district attorney's office about its

21    prosecution of Anthony Manganiello?

22         A.    No.

23         Q.    Did you ever offer Terrance

24    Alston a deal or anything of value in

25    exchange for his information about the

1                           PARKER

2          Parkchester homicide?

3                A.      No.

4                Q.      You testified earlier that

5     Terrance Alston gave you information about

6     gang members and hip-hop activity, correct?

7                A.      Correct.

8                Q.      That were unrelated to the

9     information he gave you about the Parkchester

10    homicide, correct?

11               A.      Correct.

12               Q.      Did you investigate the

13    information that he gave you about gang

14    activity and the hip-hop activity?

15               A.      Yes.

16               Q.      And when you investigated that

17    information, did you verify what Terrance

18    Alston told you was accurate?

19               A.      Yes.

20               Q.      Did you ever investigate any

21    information that Terrance Alston told you and

22    found that was inaccurate?

23               A.      No.

24               Q.      Did anyone from the district

25    attorney's office ever request Terrance



113

PARKER                                                                1

Alston's confidential file from you?                                   2

    A.     No.                                                         3

    Q.     Did you make a decision that                             4

Terrance Alston would be a witness for the                            5

prosecution against Anthony Manganiello?                               6

    A.     No.                                                         7

    Q.     Did you ever urge or encourage                           8

the prosecution to use Terrance Alston as a                           9

witness in the homicide investigation?                               10

    A.     No.                                                        11

    Q.     One last question, Detective.                           12

Is it fair to say that some of the comments                          13

in your book contain personal opinions?                              14

    A.     Yes.                                                       15

    Q.     Okay.  Which can be subjective                           16

in nature?                                                           17

           MR. JOSEPH:  Objection.                               18

    A.     Yes.                                                       19

    Q.     Thank you.  Is it fair to say                          20

that some of the statements that were read or                        21

picked out in your examination contain                               22

statements that could be personal or                                 23

subjective in nature?                                                24

           MR. JOSEPH:  Objection.                               25

1                    C E R T I F I C A T E

2

3        STATE OF NEW YORK        )

4                                      :ss

5        COUNTY OF KINGS          )

6

7                    I, STEPHEN KLEINMAN, a Shorthand

8        Reporter and Notary Public within and for

9        the State of New York, do hereby certify:

10                   That DERRICK PARKER, the witness

11       whose deposition is hereinbefore set forth,

12       was duly sworn by me and that such

13       deposition is a true record of the

14       testimony given by such witness.

15                   I further certify that I am not

16       related to any of the parties to this

17       action by Blood or marriage and that I am

18       in no way interested in the outcome of this

19       matter.

20                   In witness whereof, I have hereunto

21       set my hand this 7th day of February 2008.

22

23                              _Stephen Kleinman_

                                STEPHEN KLEINMAN

24

25

# EXHIBIT T

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------x

ANTHONY MANGANIELLO,

                    Plaintiff,


        -against-


THE CITY OF NEW YORK, ET AL.,

                    Defendants.

-----------------------------------------------x


                         February 7, 2008
                         2:20 p.m.


        Deposition of JOHN MCGOVERN to Notice,
at the offices of CORPORATION COUNSEL, 100
Church Street, New York, New York 10007,
before Stephen Kleinman, a Notary Public
within and for the State of New York.



DALCO Reporting, Inc.
court reporting • legal video • videoconferencing
170 Hamilton Avenue, White Plains, NY 10601
914.684.9009  Fax 914.684.6561  212.679.6099
800.DAL.8779  dalcoreporting.com

McGOVERN

1

A.    No, sir.

2

MR. JOSEPH:  That's all I have.

3

MS. FROMMER:  I need to speak

4

to you outside for a second.

5

THE WITNESS:  Sure.

6

(Recess taken.)

7

EXAMINATION BY MR. FROMMER:

8

Q.    Lieutenant McGovern, between

9

February 12, 2001 and the date in April when

10

you took Anthony Manganiello into custody,

11

did you speak with anyone at the district

12

attorney's office about Mr. Manganiello?

13

A.    No.

14

Q.    Did you ever encourage the

15

district attorney's office to decide that Mr.

16

Manganiello should be arrested or prosecuted?

17

A.    No.

18

Q.    Did you ever testify before the

19

grand jury in this case?

20

A.    No, I did not.

21

Q.    Did you give any information to

22

the district attorney's office at all about

23

Anthony Manganiello?

24

A.    No.

25

1                          McGOVERN

2              Q.      Did you ever provide any false

3      information to anyone to give to the district

4      attorney's office?

5              A.      No.

6                      MS. FROMMER:   I have nothing

7              further.

8      FURTHER EXAMINATION BY MR. JOSEPH:

9              Q.      Between February 12, 2001 and

10     the date that you arrested Anthony

11     Manganiello in April of 2001, did you ever

12     review any of the evidence to determine

13     whether there was probable cause to arrest

14     Anthony Manganiello?

15                     MS. FROMMER:   Objection.  You

16             can answer.

17             A.      Sir, like I said, I reviewed

18     several hundred records during that period of

19     time and after.  I don't have any independent

20     recollection of any specific details except

21     what I have discussed here earlier today.

22             Q.      Okay.  Between February 12,

23     2001 and April of 2001, when you arrested

24     Anthony Manganiello, did you take any steps

25     to verify the credibility of any evidence



83

C E R T I F I C A T E

STATE OF NEW YORK    )

                     :ss

COUNTY OF KINGS      )

     I, STEPHEN KLEINMAN, a Shorthand Reporter and Notary Public within and for the State of New York, do hereby certify:

     That JOHN McGOVERN, the witness whose deposition is hereinbefore set forth, was duly sworn by me and that such deposition is a true record of the testimony given by such witness.

     I further certify that I am not related to any of the parties to this action by blood or marriage and that I am in no way interested in the outcome of this matter.

     In witness whereof, I have hereunto set my hand this 18th day of February 12, 2001 2008.

STEPHEN KLEINMAN

# EXHIBIT U

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------x

ANTHONY MANGANIELLO,

                    Plaintiff,


          -against-


THE CITY OF NEW YORK, ET AL.,

                    Defendants.

-------------------------------------------------x


                         February 7, 2008
                         1:18 p.m.


          Deposition of GERYL MCCARTHY pursuant
to Notice, at the offices of CORPORATION
COUNSEL, 100 Church Street, New York, New York
10007, before Stephen Kleinman, a Notary
Public within and for the State of New York.


DALCO Reporting, Inc.
court reporting • legal video • videoconferencing
170 Hamilton Avenue, White Plains, NY 10601
914.684.9009  Fax 914.684.6561  212.679.6091
800.DAL.8779  dalcoreporting.com

60

                                        MCCARTHY

1

2              recollection?

3              A.      No, I don't.

4                      MR. JOSEPH:  That's all I have.

5                      MS. FROMMER:  Can I take her

6              outside for a second?

7                      (Recess taken.)

8    EXAMINATION BY MS. FROMMER:

9              Q.      I have a few questions.  Miss

10   McCarthy, is it required for a witness to

11   write out a statement in his or her own hand?

12             A.      No, it is not required.

13             Q.      Is it proper police procedure

14   for a detective to write out a statement or

15   create a DD5 based on a witness' oral

16   statement?

17             A.      Yes.

18             Q.      Did you testify at the grand

19   jury regarding the homicide of Albert Acosta?

20             A.      No.

21             Q.      Did you speak with any

22   assistant district attorney regarding the

23   homicide of Albert Acosta?

24             A.      No.

25             Q.      Were you asked to speak with an

61

MCCARTHY

assistant district attorney regarding the

homicide investigation?

     A.    No.

     Q.    Did you have any personal

involvement with the prosecution of Anthony

Manganiello?

     A.    No.

     Q.    Did you have any personal

involvement in the actual investigation of

the homicide?

     A.    No.  That would be the

responsibility of the squad commander.

     Q.    Did you personally speak to any

witnesses?

     A.    No.

     Q.    Did you personally gather any

evidence?

     A.    No.

     Q.    Did you make the decision to

have anyone arrested in this case?

     A.    No.

     Q.    Did you make the decision to

have anyone prosecuted in this case?

     A.    No.

MCCARTHY

1

2        Q.      Was it your responsibility as

3    the deputy inspector to review evidence and

4    the details of the police investigation?

5        A.      No.

6        Q.      Would you have reviewed a case

7    file as part of your supervisory

8    responsibilities as deputy inspector?

9        A.      No.

10               MS. FROMMER:  I have no further

11       questions.

12    FURTHER EXAMINATION BY MR. JOSEPH:

13       Q.      At any point did you do

14    anything to stop the prosecution of Anthony

15    Manganiello?

16               MS. FROMMER:  Objection.

17               THE WITNESS:  I can answer

18       that?

19               MS. FROMMER:  Yes.

20       A.      The time I saw Anthony

21    Manganiello -- when I knew that Anthony

22    Manganiello was being interviewed, he was

23    being interviewed as a witness.  I don't know

24    if it escalated at all, but it was not my

25    understanding that he was arrested.

67

                    C E R T I F I C A T E

STATE OF NEW YORK      )

                              :ss

COUNTY OF KINGS        )


          I, STEPHEN KLEINMAN, a Shorthand

Reporter and Notary Public within and for

the State of New York, do hereby certify:

          That GERYL McCARTHY, the witness

whose deposition is hereinbefore set forth,

was duly sworn by me and that such

deposition is a true record of the

testimony given by such witness.

          I further certify that I am not

related to any of the parties to this

action by blood or marriage and that I am

in no way interested in the outcome of this

matter.

          In witness whereof, I have hereunto

set my hand this 18th day of February 2008.

                    _____

                    STEPHEN KLEINMAN