Index No.07 Civ. 3644 (HB)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANTHONY MANGANIELLO,

Plaintiff,

-against-

THE CITY OF NEW YORK, et al.,

Defendants.

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

*MICHAEL A. CARDOZO*
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, N.Y. 10007*

*Of Counsel: Hillary A. Frommer*
*Tel: (212) 788-0823:*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT  AND PROCEDURAL HISTORY................... 1

ARGUMENT.............................................................................. 2

    POINT I

        STANDARD FOR MOTION FOR SUMMARY JUDGMENT........ 2

    POINT II

        PLAINTIFF CANNOT ESTABLISH THE
        REQUISITE ELEMENTS TO SUSTAIN A
        MALICIOUS PROSECUTION CLAIM................................. 4

        A.  None of the Individual Defendants Initiated
            The Prosecution…………………………………………….. 4

        B.  The Grand Jury Indictment Creates  Presumption
            Of Probable Cause That Plaintiff Cannot Overcome……………. 6

        C.  Plaintiff Cannot Establish that Probable Cause was
            So Totally Lacking…………………………………………….. 12

        D.  Plaintiff Cannot Establish that Any of the
            Defendants Acted with Malice……………………………… 14

    POINT III

        PLAINTIFF'S MALICIOUS PROSECUTION CLAIM
        AGAINST DEFENDANTS MCGOVERN, SCOTT,
        MCCARTHY AND PHIPPS FAILS AS A MATTER OF
        LAW BECAUSE PLAINTIFF FAILED TO ALLEGE OR
        ESTABLISH THAT THEY HAD PERSONAL
        INVOLVEMENT WITH PLAINTIFF'S CRIMINAL
        PROSECUTION………………………………………………… 15

    POINT IV

        ALL OF THE INDIVIDUAL DEFENDANTS ARE
        ENTITLED TO QUALIFIED IMMUNITY…………………………17

    POINT V

        PLAINTIFF FAILS TO ESTABLISH
        MUNICIPAL LIABILITY……………………………………….. 19

CONCLUSION…………………………………………………………… 23

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------ x

ANTHONY MANGANIELLO,

                              Plaintiff,

              -against-

THE CITY OF NEW YORK, et al.,

                          Defendants.

**DEFENDANTS'
MEMORANDUM OF LAW
IN SUPPORT OF THEIR
MOTION FOR SUMMARY
JUDGMENT**

07 Civ. 3644 (HB)

------------------------------------------------------------------------ x

       Defendants City of New York, retired Detectives Luis Agostini, Shawn Abate, Derek

Parker, Richard Martinez (sued herein as "Robert Martinez"), retired Lieutenant Harry Scott

(sued herein as "Lt. Henry Scott"), retired Police Officers Alex Perez and Miriam Nieves,

Inspector Michael Phipps, Lieutenant John McGovern, and retired Deputy Inspector Geryl

McCarthy, hereby submit this Memorandum of Law in Support of their Motion for Summary

Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, and respectfully request

that the Court grant their motion and dismiss this matter in its entirety with prejudice.

### Preliminary Statement and Procedural History

       On February 12, 2001, Parkchester Guard Albert Acosta was shot and killed in the

basement of a building located at 1700 Metropolitan Avenue in the Parkchester Condominium

Complex. *(Defs. 56.1 Stmt. ¶ 1).*[1] After an extensive police investigation that lasted over two

months, the Bronx County District Attorney's Office directed members of the New York City

Police Department 43rd Precinct Detective Squad to arrest plaintiff Anthony Manganiello

Acosta's murder. *(Defs. 56.1 Stmt. ¶¶ 19-20).* Plaintiff was subsequently indicted by a Grand

---

[1]    All citations are to Defendants' Statement of Uncontested Material Facts Pursuant to Local Rule 56.1 and the exhibits attached to the April 16, 2008 Declaration of Hillary A. Frommer.

Jury in Supreme Court, Bronx County and he was acquitted at trial in May 2004. *(Defs. 56.1 Stmt. ¶ 71)*. Plaintiff commenced this action on or about May 8, 2007 alleging that defendants violated his constitutional rights. Plaintiff asserts only two claims in this action. Plaintiff alleges the claim of malicious prosecution against each of the individually named defendant officers and a claim of municipal liability against the City of New York.

Defendants now move for summary judgment on both of plaintiff's claims on the following grounds: (1) the malicious prosecution claim against the defendant officers fails because plaintiff cannot satisfy his burden to establish each of the four elements against the defendants; (2) plaintiff failed to allege or establish that defendants Lieutenant McGovern, retired Lieutenant Scott, retired Inspector Phipps, and retired Deputy Inspector McCarthy had any personal involvement in plaintiff's criminal prosecution, (3) the individual defendants are entitled to qualified immunity, and (5) plaintiff cannot establish municipal liability against the City of New York.

### Statement of Facts

Defendants respectfully refer the Court to their Statement Pursuant to Local Rule 56.1, the Declaration of Hillary A. Frommer, and the exhibits attached thereto for a complete recitation of the facts.

### Argument

**POINT I**
**STANDARD FOR SUMMARY JUDGMENT**

Summary judgment is appropriate where no genuine issue of material fact exists. D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998), cert. denied, 524 U.S. 911 (1998). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is 'no genuine issue for trial.'" Matsushita Elect. Indus. Co. v. Zenith

Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986). "There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505 (1987). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anthony v. City of New York, 00 Civ. 4688 (DLC), 2001 U.S. Dist. LEXIS 8923, at *9 (S.D.N.Y. July 2, 2001). Factual disputes that are irrelevant or unnecessary will not be counted…. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." Dukes v. City of New York, 879 F. Supp. 335, 339 (S.D.N.Y. 1995). The Second Circuit has held that a "moving party may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case." Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1223-23 (2d Cir. 1994). The non-movant may not overcome summary judgment by relying on "mere allegations or denials of the adverse party's pleading" or "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." Fed. R. Civ. P. 56(e); Velasquez v. Bankich, 97 Civ. 8424 (AKH), 2000 U.S. Dist. LEXIS 15412, at *4 (S.D.N.Y. Aug. 1, 2000); Phillips v. Eppolito et al., 02 Civ. 5662 (DLC), 2004 U.S. Dist. LEXIS 18565, *5 (S.D.N.Y. Sept. 16, 2004). The moving party is not required to disprove unsupported allegations made by the movant. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Moreover, "evidence that would not be admissible at trial *cannot* provide a basis for a denial of a motion for summary judgment." Abreu v. City of New York, 04 CV 1721 (JBW), 2006 U.S. Dist. LEXIS 6505, at *9 (E.D.N.Y. Feb. 22, 2006) (emphasis added).

## POINT II
## PLAINTIFF CANNOT ESTABLISH THE REQUISITE ELEMENTS TO SUSTAIN A MALICIOUS PROSECUTION CLAIM

To succeed on a claim for malicious prosecution, a plaintiff must establish each of the following four elements for each defendant: "(1) the defendant initiated a prosecution against plaintiff, (2) without probable cause to believe the proceeding can succeed, (3) the proceeding was begun with malice, and (4) the matter terminated in plaintiff's favor." Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 130 (2d Cir. 1997). Here, plaintiff's claim fails and summary judgment must be granted in defendants' favor because the evidence establishes that none of the individual defendants initiated or continued the criminal prosecution against plaintiff, plaintiff cannot establish the total lack of probable cause for the prosecution, and plaintiff cannot present any evidence that any defendant acted with malice.[2]

### A.    None of the Individual Defendants Initiated the Prosecution

The Second Circuit has held that "[i]nitiation' in this context is a term of art," involving more than merely reporting a crime and giving testimony; "it must be shown that defendant played an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act." Rohman v. New York City Transit Auth., 215 F.3d 208, 217 (2d Cir. 2000). That Court further acknowledged that "one who does no more than disclose to a prosecutor all material information within his knowledge is not deemed to be the initiator of the proceeding." Rohman, 215 F.3d at 217 (citing Present v. Avon Products, Inc., 687 N.Y.S.2d 970, 971 (1st Dept. 1999)). Moreover, the Second Circuit has ruled that the independent, discretionary actions of the prosecutor break any causal connection between defendant police

---

[2]    Defendants are not challenging that plaintiff's acquittal at trial constitutes a favorable termination.

officers and the prosecution commenced against plaintiff. <u>Townes v. City of New York</u>, 176 F.3d 138, 147 (2d Cir. 1999). Following this reasoning, courts frequently dismiss malicious prosecution claims against police officers because the prosecutor and not the officer initiated the prosecution. <u>See e.g.</u>, <u>Pierre v. The City of New York</u>, 05 CV 5018 (JFB), 2007 U.S. Dist. LEXIS 60707, at *36 (E.D.N.Y. Aug. 17, 2007) (finding police officer defendants did not initiate or continue prosecution); <u>Middleton v. City of New York</u>, 04 CV 1304 (JFB)(LB), 2006 U.S. Dist. LEXIS 44320, at * 22 (E.D.N.Y. June 19, 2006) (dismissing malicious prosecution claim upon holding that the decision to prosecute was made by the District Attorney's Office).

Here, the uncontested evidence establishes that it was the Bronx County District Attorney's Office that initiated the criminal prosecution of plaintiff, not any of the individual defendants. The prosecution commenced when the District Attorneys' Office determined that plaintiff would be charged with counts of Murder in the Second Degree, Manslaughter in the First Degree, and Criminal Possession of a Weapon in the Second Degree, and prepared and filed the Criminal Complaint to that effect. Detective Agostini signed the Criminal Complaint on April 20, 2001 after reviewing it for accuracy and determining that all of the facts as he knew them to be were accurate. However, Detective Agostini did not prepare that document; he did not determine what charges to prosecute plaintiff; and he did not encourage or urge the Bronx County District Attorney's Office to commence a prosecution against plaintiff. In fact, Detective Agostini was informed that the District Attorney's Office made the independent decision to obtain an arrest warrant for plaintiff and to prosecute plaintiff. Those decisions were not made by Detective Agostini. The mere signing of a Criminal Complaint where the prosecutor independently initiates a prosecution is insufficient to constitute the initiation of a prosecution for purposes of a malicious prosecution claim.

The evidence further demonstrates that none of the other individual defendants had any involvement at all in the initiation of the prosecution. None of the other individual defendants signed any documents regarding plaintiff's prosecution, or ever encouraged or urged the District Attorney's Office to prosecute plaintiff. The Affidavit of Detective Abate establishes that he played no role in the decision to seek an arrest warrant for plaintiff or to prosecute plaintiff. Moreover, the evidence shows that defendants Scott, McGovern, Parker, McCarthy, and Phipps had no personal involvement at all in any stage of plaintiff's prosecution.[3] While plaintiff alleges in the complaint that the defendants initiated the prosecution, those allegations are merely conclusory and unsupported by the evidence of record. Therefore, the Court must conclude that plaintiff, has not met his burden of showing that each individual defendant initiated the criminal prosecution against plaintiff and summary judgment should be granted to each defendant on plaintiff's malicious prosecution claim.

### B.   The Grand Jury Indictment Creates a Presumption of Probable Cause That Plaintiff Cannot Overcome

Plaintiff alleges that each of the defendants has lied in this action. But plaintiff ignores the fact that a Grand Jury heard all of the evidence and returned a true bill. It is well settled that a Grand Jury indictment creates a presumption of probable cause that defeats a malicious prosecution claim. Savino v. City of New York, 331 F.3d 63 (2d Cir. 2003); Obilo v. City Univ. of New York, 01 CV 5118 (DGT), 2003 U.S. Dist. LEXIS 2886, *35 (E.D.N.Y. Feb. 28, 2003). "In New York, a grand jury is authorized to vote to indict when it finds that 'the evidence before it is legally sufficient to establish that the defendant committed such offense, … and competent and admissible evidence before it provides reasonable cause to believe that such person

---

[3]   Point III supra contains a more thorough discussion of why summary judgment should be granted to these defendants based on their lack of personal involvement.

committed such offense." Brogdon v. City of New Rochelle, 200 F. Supp. 2d 411, 421 (S.D.N.Y. 2002) (citing N.Y. Crim. Proc. Law § 190.65 (McKinney 1993)). The conclusive presumption of probable cause "based on a grand jury indictment is 'so strong that it may only be overcome by evidence demonstrating that the defendants engaged in fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith.'" Brogdon, 200 F. Supp. 2d at 421 (citing Bernard v. United States, 25 F.3d 98, 104 (2d Cir. 1994)); Rivas v. Suffolk County, 326 F. Supp. 2d 355, 363 (E.D.N.Y. 2004); (court holding that "in the absence of any evidence that the defendants – or any other officers or prosecutors – acted in bad faith or gave perjured evidence before the grand jury or without any other exculpable evidence, or documentary evidence of any kind, no reasonable juror could find that [the plaintiff] could overcome the presumption of probable cause that arises from the indictment"); Green v. Montgomery, 43 F. Supp. 2d 239, 245 (E.D.N.Y. 1999). Specifically, the plaintiff must "rebut [this] presumption by proving fraud, perjury, suppression of evidence or other misconduct *in the grand jury.*" Rothstein v. Carriere, 373 F.3d 275, 283 (2d Cir. 2004) (emphasis added). It is plaintiff's burden to present admissible evidence to overcome this strong presumption and, if that burden is not met, the malicious prosecution claim fails. Savino v. The City of New York, 331 F.3d 63, 73 (2d Cir. 2003). In Rothstein the Second Circuit held that the district court erred because it did not accord the proper weight to the grand jury's return of an indictment against the plaintiff. The Second Circuit reasoned that "the burden of rebutting the presumption of probable cause requires the plaintiff to establish what occurred in the grand jury, and to further establish that those circumstances warrant a finding of misconduct sufficient to erode the 'premise that the Grand Jury acts judicially[.]'" Id. at 284. Thus, any attempt to imply that a defendant police officer perjured himself before the grand jury without specific evidence supporting the assertion

"amount[s] to rank speculation." Id. Indeed, when a plaintiff has been indicted by the Grand Jury, unsupported conclusions that witnesses perjured themselves in front of the Grand Jury or inadmissible argumentative interpretation of physical evidence that the Grand Jury had before it do not overcome the strong presumption of probable cause and defeat summary judgment on a malicious prosecution claim. Brogdon, 200 F. Supp. 2d at 422. Rather, the plaintiff must present "evidence in admissible form which establishes that those witnesses willfully and corruptly gave false testimony under oath as to a matter material to the issue or point in question." Id. The plaintiff must establish that the officer's conduct "deviated egregiously from statutory requirements or accepted practices applicable in criminal cases." Id.

In the matter at bar, it is uncontested that plaintiff was indicted by the Grand Jury. Thus, probable cause is presumed and plaintiff now bears the burden of establishing that each of the individual defendants engaged in fraud, perjury, or an act of bad faith *against plaintiff in Grand Jury itself* through admissible evidence. The evidence further establishes that the Grand Jury minutes are sealed and, therefore, plaintiff cannot present any admissible evidence to sustain his burden. Furthermore, plaintiff himself testified that he has never seen the minutes of Grand Jury testimony by any defendant in this action. His case rests on nothing more than mere speculation. Defendants, however, have established that, on August 6, 200 the Honorable Patricia Anne Williams, Acting Justice of the Supreme Court, held that there were no improprieties that occurred in the Grand Jury and the integrity of the Grand Jury which voted to indict plaintiff was not impaired.

It is uncontested that defendants Scott, McGovern, McCarthy, Phipps, Martinez, and Parker, never testified before the Grand Jury, never pressured or threatened anyone else to testify before the Grand Jury, and never committed any wrongdoing in the Grand Jury. While

plaintiff's complaint alleges that these defendants maliciously prosecuted plaintiff, the evidence establishes otherwise. Defendants Scott, McGovern, Parker, and McCarthy each testified at depositions that they did not testify before the Grand Jury. Plaintiff has no evidence that defendant Phipps testified before the Grand Jury. All of these defendants further testified at their depositions that they did not provide the District Attorney's Office with any false or fabricated information about the homicide investigation. In fact, defendant Detective Martinez, Lieutenant Scott, Lieutenant McGovern, and Inspector McCarthy never even spoke with anyone at the District Attorney's Office regarding the homicide investigation or plaintiff's criminal prosecution. Similarly, Detective Parker testified that he did not have any involvement in the Grand Jury or any other proceedings in the criminal prosecution. Detective Parker further testified that he did not coerce, threaten, or otherwise entice any witness to testify in connection with plaintiff's criminal prosecution. Plaintiff has no evidence to the contrary. Plaintiff cannot rest on the unsupported conclusory allegations in his complaint to overcome the actual admissible evidence put forth by the defendants.

Therefore, plaintiff's malicious prosecution claim must fail as a matter of law with respect to all of these defendants.

With respect to defendants Agostini and Abate, plaintiff similarly cannot put forth a scintilla of admissible evidence proving that any of those individuals engaged in fraud, perjury, or bad faith in the Grand Jury. In fact, the evidence establishes that they did not. Detective Agostini's deposition testimony and affidavit show that he testified truthfully, did not coerce any witness to lie, and did not withhold any exculpatory evidence from the prosecutors. The affidavit further establishes that Detective Agostini testified before the Grand Jury, but did not testify regarding witness statements made during the police investigation into the homicide. Plaintiff

cannot present any <u>evidence</u> to the contrary. Similarly, the affidavit of Detective Abate reflects that  that the only information he testified about before the Grand Jury related to the fact that he arrested plaintiff on April 20, 2001 pursuant to an arrest warrant obtained by the Bronx County District Attorney's Office. This fact is uncontested and not at issue in this matter as plaintiff does not allege that he was falsely arrested. Plaintiff cannot present any evidence whatsoever to contradict Detective Abate's affidavit which further establishes that he played no role in determining what charges to bring against plaintiff or in the decision to prosecute plaintiff, or to seek an indictment against plaintiff. Nor can plaintiff establish that defendant Abate engaged in any wrongdoing before the Grand Jury. In fact, plaintiff has not and cannot put forth any admissible evidence that contradicts the sworn testimony and statements of Detectives Agostini and Abate, or affirmatively establishes that they engaged in fraud, perjury or acted in bad faith *against plaintiff in the Grand Jury.* Thus, plaintiff cannot overcome the presumption of probable cause or create any issue of fact.

With respect to defendants Perez and Nieves, plaintiff puts forth nothing other than conclusory allegations that these officers lied to the Grand Jury as to radio transmissions they allegedly heard regarding the homicide of Albert Acosta.  According to the complaint, plaintiff alleges that both officers testified that they did not hear any radio transmission identifying the victim of the homicide as a Parkchester security guard.  However, plaintiff cannot present any evidence establishing that either officer did anything but testify truthfully at the Grand Jury. The evidence establishes that both Officers arrived at 1700 Metropolitan Avenue in response to a New York City Police Department radio broadcast for police assistance at 10:15 a.m.  The evidence further shows that the "10-13" radio transmission to which Officer Perez and Nieves responded did not identify the victim as a Parkchester Security Guard.

Further, the record reveals that Parkchester Security provided the police with information establishing that from 10:15 a.m. until 10:21 a.m., Parkchester Security never broadcast over its radio system the identity of the victim or indicated that the victim was a Parkchester Security Guard. The information provided to the District Attorney's Office by Parkchester Security reflects that the Parkchester Security radio system broadcast indicated only that there was a man down in the basement of 1700 Metropolitan Avenue. That evidence is supported by the written statement from Sergeant Ohle, establishing that he never heard any radio transmission from Parkchester identifying the victim. It is also supported by the sworn trial testimony of Matias Colon that, when he transmitted over the Parkchester Security radio that there was a man down in the basement of 1700 Metropolitan Avenue, he did not know the victim's identity. It is also This Court must conclude that plaintiff's unsupported, conclusory allegations that the defendants falsely testified before the Grand Jury are insufficient to overcome the presumption of probable cause for plaintiff's criminal prosecution.

The record also establishes that seven witnesses testified before the Grand Jury, three of whom were civilian witnesses. One civilian witness testified before the Grand Jury that plaintiff was present at the crime scene immediately after the shots that killed the victim were fired. Another civilian witness testified that plaintiff was heard asking another individual if he knew of anyone selling a gun. The third civilian witness testified at the Grand Jury that plaintiff had stated months prior to the homicide that he intended to kill another security officer. Plaintiff simply cannot show that the Grand Jury indictment was obtained through fraud, perjury or bad faith. To the contrary, the Grand Jury heard the evidence and returned a true bill. Moreover, an Acting Justice of the Supreme Court determined that there were no improprieties in the Grand Jury.

Plaintiff also bases his malicious prosecution claim on the theory that the District Attorney's Office did not present all of the details involved in the homicide investigation before the Grand Jury. That argument must fail because the law is clear that an Assistant District Attorney has "the discretion and authority to decide what evidence to present to the grand jury [and is] under no duty to present every item of arguably exculpatory evidence in seeking an indictment." Savino v. The City of New York, 331 F.2d 63, 75 (2d Cir. 2003) (rejecting malicious prosecution claim based on allegations that information not presented to Grand Jury constituted bad faith misconduct); People v. Mitchell, 82 N.Y.2d 509, 515, 605 N.Y.S.2d 655 (1993) ("the People maintain broad discretion in presenting their case to the Grand Jury and need not seek evidence favorable to the defendant or present all of their evidence tending to exculpate the accused"). "The police and prosecutors cannot be said to have improperly concealed evidence every time the plaintiff is able to show that they could have done more or could have disclosed more." Gonzalez v. The City of New York, 02 Civ. 4055 (BSJ)(KNF), 2005 U.S. Dist. LEXIS 20645 (S.D.N.Y. Sept. 16, 2005). Thus, plaintiff cannot establish liability as against the defendant officers for the prosecutorial choices and discretion regarding the Grand Jury presentment.

### C.    Plaintiff Cannot Establish that Probable Cause Was So Totally Lacking

Even if the Court finds that plaintiff can present admissible evidence to create an issue of fact that plaintiff may overcome the presumption of probable cause established by the Grand Jury indictment, plaintiff still cannot sustain his malicious prosecution claim because plaintiff cannot establish the total absence of probable cause for the prosecution. It is plaintiff's burden to show that there was no probable cause at all for the prosecution. Plaintiff cannot satisfy this burden.

When evaluating whether there was probable cause to initiate a prosecution, the Court evaluates the information that existed at the time when the prosecution was initiated. Rounsville v. Zahl, 13 F.3d 625, 630 (2d Cir. 1994). When a prosecution is initiated by an arraignment, the Court then assesses the information that was available at the time of arraignment. Mitchell v. County of Nassau, 05 CV 4957 (SJF) (WDW), 2007 U.S. Dist. LEXIS 38711, at *31 (E.D.N.Y. May 24, 2007). "Probable cause does not require a 'certitude' that a crime has been committed by a suspect. Rather, a malicious prosecution connotes a decision to proceed maliciously with the prosecution of an individual where probable cause is clearly lacking." Brown v. New York, 459 N.Y.S.2d 589, 591 (1st Dept. 1983). Therefore, for plaintiff to succeed on his malicious prosecution claim, he must establish through actual admissible evidence that at the time he was arraigned on April 20, 2001, there was no probable cause for his prosecution. Plaintiff cannot meet his burden.

The uncontested evidence establishes that at the time of plaintiff's arraignment, the District Attorney's Office possessed the documents and materials obtained by the police during the police investigation of the homicide, because Detective Agositini had provided that office with the entire case file. Those materials provided to the prosecutor included witness statements and witness identifications of plaintiff. For example, as of April 20, 2001, the District Attorney's Office was aware that at approximately 10:10 a.m., Walter Cobb observed plaintiff exiting the basement of 1700 Metropolitan Avenue, the crime scene, immediately after Mr. Cobb heard gun shots. As of April 20, 2001, the District Attorney's Office had also been made aware that a man named Michael Booth informed police on March 1, 2001 that plaintiff approached him and told Mr. Booth that he was looking for a gun. Mr. Booth reviewed a photobook at the precinct and identified plaintiff as that very man. Additionally, the prosecutor was aware that a

man named Christopher Tartone stated that plaintiff came into Mr. Tartone's restaurant and asked if anyone was selling a gun. Mr. Tartone reviewed photobooks and identified plaintiff from those books. The District Attorney's Office was also aware that a man named Mark Damon sold a .22 caliber gun to a Parkchester Security Guard who he described as a heavy set Italian male with a thick mustache; a man matching plaintiff's description in 2001. In fact, Mr. Damon provided that information directly to the prosecutor.

The law is clear that the identification of a suspect by a witness or victim through a photographic array provides probable cause to arrest. Bail v. Ramirez, 04 Civ. 5084 (WHP), 2007 U.S. Dist. LEXIS 25232, at *21-22 (S.D.N.Y. Mar. 29, 2007); Gisondi v. Town of Harrison, 72 N.Y.2d 280 (1988) (probable cause established when victim identified perpetrator from photograph). In fact, photographic identifications that are not made with complete certainty provide probable cause to arrest. People v. Rhodes, 488 N.Y.S.2d 821 (2nd Dept. 1985); People v. Dunbar, 19 N.Y.S.2d 356 (4th Dept. 1979) (probable cause existed to arrest a suspect after the victim made a tentative identification from a photograph). Based on the statements provided by civilian witnesses and their positive identifications of plaintiff, plaintiff cannot sustain his burden that, at the time of his arraignment, there was no probable cause for his prosecution. Thus, plaintiff cannot sustain his malicious prosecution claim.

### D. Plaintiff Cannot Establish that Any of the Defendants Acted With Malice

Plaintiff's malicious prosecution claim also fails because plaintiff cannot put forth any evidence that any of the defendants acted with malice—a necessary element to sustain this claim. Malice means "that the defendant must have commenced the criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served." Lowth v. Town of Cheektowaga, 82 F.3d 563, 573 (2d Cir. 1996)). A plaintiff must present admissible evidence of malice and may not merely ask the Court to infer where there are no facts upon which to base that

assumption. Fulton v. Robinson, 289 F.2d 188 (2d Cir. 2002) (finding no facts on which to infer malice existed for prosecution). Only where probable cause to initiate a proceeding is "so totally lacking" may malice reasonably be inferred. Sulkowska v. City of New York, 129 F. Supp. 2d 274, 295 (S.D.N.Y. 2001) (quoting Martin v. City of Albany, 42 N.Y.2d 13, 17 (1977)).

Here, plaintiff cannot establish that the actions of any of the defendant officers amounted to anything other than to see the ends of justice served and the perpetrator of a homicide prosecuted. As the evidence establishes, the District Attorney's Office was aware of facts and identifications of plaintiff that established probable cause for plaintiff's prosecution. Plaintiff must present actual admissible evidence that the individual defendants themselves acted with malice and not merely ask the Court to infer malice existed. Because plaintiff cannot present such proof, he cannot establish all of the elements necessary to sustain his malicious prosecution claim. Thus, plaintiff's malicious prosecution claim against defendants Agostini, Abate, Martinez, Scott, Parker, McGovern, Perez, Nieves, McCarthy, and Phipps must fail.

## POINT III

**PLAINTIFF'S MALICIOUS PROSECUTION CLAIM AGAINST DEFENDANTS MCGOVERN, SCOTT MCCARTHY, AND PHIPPS FAILS AS A MATTER OF LAW BECAUSE PLAINTIFF FAILED TO ALLEGE OR ESTABLISH THAT THEY HAD PERSONAL INVOLVEMENT WITH PLAINTIFF'S CRIMINAL PROSECUTION**

"It is well settled in the [Second] Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (quoting Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991)). Absent any personal involvement, an individually named defendant cannot be held liable for plaintiff's alleged civil rights violations. See Williams v.

Smith, 781 F.2d 319, 323 – 24 (2d Cir. 1985); Purcell v. Coughlin, 790 F.2d 263, 265 (2d Cir. 1986).

In the matter at bar, plaintiff' complaint does not contain a single factual allegation that defendants Lieutenant Scott, Lieutenant McGovern, Inspector McCarthy, and Inspector Phipps were personally involved in plaintiff's criminal prosecution. The only allegations against these defendants is that each individual allegedly: (a) "conspired, aided, abetted and acted in concert with the other defendants in maliciously prosecuting the plaintiff"; and (b) "was aware of the aforementioned civil rights violations and wrongful acts being done by the detectives and officers under his command, and he had the duty and the opportunity to protect the plaintiff from the unlawful actions of the other defendant, but failed to do so thereby proximately causing plaintiff's injuries." (Complaint, ¶¶ 182-189).    However, these unsupported conclusory allegations are insufficient to establish that each individual was personally involved in plaintiff's prosecution.

Moreover, based on the allegations in the pleadings, plaintiff attempts to hold each of these defendants liable under a theory that they conspired with detectives and officers of the New York City Police Department.  As a matter of law, plaintiff cannot state such a claim under the intracorporate conspiracy doctrine. Under the intracorporate conspiracy doctrine, "officers, agents, and employees of a single corporate or municipal entity, each acting within the scope of his or her employment, are legally incapable of conspiring with each other." Little v. City of New York, 487 F. Supp. 2d 426, 442-42 (S.D.N.Y. 2006) (dismissing conspiracy claim under intracorproate conspiracy doctrine); Crews v. County of Nassau, 06 CV 2610 (JBW), 2007 U.S. Dist. LEXIS 94597, at *41-42 (E.D.N.Y. Dec, 27, 2007) (dismissing a conspiracy claim alleged against employees of Nassau County acting within the scope of their employment).

The intracorporate conspiracy doctrine may only be pierced by showing actual evidence that the employees were not acting within the scope of their employment, but rather, were "acting in their personal interests." <u>Crews</u>. at 42.   However, where, as here, the plaintiff specifically alleges that the defendant police officers acted within the scope of their employment, he cannot avoid the intracorporate conspiracy doctrine to argue that they conspired against him. <u>Crews</u>. at 43. Moreover, absent any evidence to establish that the officers acted with their personal interests at stake, rather than within the scope of their employment, a plaintiff cannot sustain a claim for conspiracy.

Additionally, based on the broad-sweeping allegations in the complaint, plaintiff attempts to hold each of these individuals liable under a theory of supervisory liability. Such a claim equally fails because even under that theory, a plaintiff must establish through actual evidence that the supervisor had personal involvement in the actual criminal prosecution. <u>Hayut v. State Univ. of New York</u>, 352 F.3d 733, 753 (2d Cir. 2003).   Here, defendants Scott, McGovern, and McCarthy gave deposition testimony stating that they never testified before the Grand Jury regarding plaintiff. Nor had they ever spoken to anyone at the District Attorney's Office or provided the prosecutor with any information about plaintiff in connection with plaintiff's prosecution.  Plaintiff cannot put forth any evidence to the contrary.  Thus, as a matter of law, summary judgment must be granted in their favor and plaintiff's sole claim of malicious prosecution against each of them must be dismissed.

### POINT IV
### ALL OF THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY

Qualified immunity is "an immunity from suit rather than the mere defense to liability and is effectively lost if the case is erroneously permitted to go to trial." <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 526, 105 S. Ct. 2806  (1985).  This doctrine is "an entitlement not to stand trial or face

the other burdens of litigation." <u>Saucier v. Katz</u>, 533 U.S. 194, 200, 121 S. Ct. 2151 (2001) (quoting <u>Mitchell</u>, 472 U.S. at 526). "Government officials such as police officers are entitled to qualified immunity for discretionary acts performed in the scope of their employment." <u>Thomas v. Culberg</u>, 741 F. Supp. 77, 80 (S.D.N.Y. 1990). A police officer "is entitled to qualified immunity as a matter of law if the undisputed facts and all permissible inferences favorable to the plaintiff show either (a) that it was objectively reasonable for the officer to believe that probable cause existed, or (b) that officers of reasonable competence could disagree on whether the probable cause test was met." <u>Robinson v. Via</u>, 821 F.2d 913, 921 (2d Cir. 1987) (defendant officer was entitled to qualified immunity because decision to arrest plaintiff based on information defendant received from witnesses). "Probable cause does not require absolute certainty ... if police officers of reasonable competence could disagree as to whether there was sufficient probable cause, there is 'arguable' probable cause sufficient to warrant qualified immunity for the defendant officers." <u>Boyd v. City of New York</u>, 336 F.3d 72, 76 (2d Cir. 2003) (upholding district court's dismissal of false arrest claim on summary judgment).

In fact, with a false arrest claim "an officer is immune if he has 'arguable probable cause,' and is subject to suit only if his 'judgment was so flawed that no reasonable officer would have made a similar choice.'" <u>Williams v. City of New York</u>, 02 Civ. 3693 (CBM), 2003 U.S. Dist. LEXIS 19078, at *25 (S.D.N.Y. Oct. 23, 2003) (quoting <u>Provost v. City of Newburgh</u>, 262 F.3d 146, 169 (2d Cir. 2001)). The application of qualified immunity is important since it is inevitable that "officials will, in some cases, reasonably but mistakenly [take actions that are later found to be illegal]; in such cases those officials . . . who act in ways they reasonably believe to be lawful, should not be held personally liable." <u>Anderson v. Creighton</u>, 483 U.S.

635, 107 S. Ct. 3034 (1987); Oliveira v. Mayer, 23 F.3d 642, 648 (2d Cir. 1994), cert. denied, 513 U.S. 1076 (1995).

Here plaintiff is not alleging that he was falsely arrested, but rather, that he was maliciously prosecuted. The individual defendants are entitled to qualified immunity with respect to plaintiff's malicious prosecution claim. First. with respect to Detective Agostini, the evidence shows that he merely provided the District Attorney's Office with information obtained during the course of the police homicide investigation and that he signed the Criminal Complaint. However, there is no clearly established case law that performing those duties constitutes the initiation of a prosecution. Thus, Detective Agostini should be entitled to qualified immunity for his role as the case detective. Second, it has already been established that plaintiff cannot present any evidence showing that any individual defendant engaged in fraud, perjury or bad faith misconduct in the Grand Jury. Those defendants that did testify before the Grand Jury did so truthfully and to the best of their abilities. Plaintiff cannot produce any evidence that any defendant officer intentioanlly lied to or misled the District Attorney's Office. To the contrary, the District Attorney called upon certain of officers to testify at the Grand Jury and the officers did so. Thus, the individual defendants who allegedly testified before the Gand Jury, Detective Agostini, Detective Abate, Officer Nieves, and Officer Perez, had no reason to know that by testifying, they were initiating or continuing a criminal prosecution against plaintiff. Accordingly, the defendant officers are entitled to qualified immunity.

### POINT V
### PLAINTIFF FAILS TO ESTABLISH MUNICIPAL LIABILITY

Plaintiff's claims against defendant City must be dismissed because plaintiff cannot prove any facts to establish municipal liability. In Monell v. Dep't. of Soc. Servs., 436 U.S. 658, 690-91, 98 S. Ct. 2018 (1978), the Supreme Court held that in order to hold a municipality liable

as a "person" under the meaning of section 1983, the plaintiff must show that a policy or custom of the City of New York caused the deprivation of his federal constitutional rights. "A municipality cannot be held liable under § 1983 on a respondeat superior theory." Id. at 691. "Rather, the plaintiff must demonstrate that the alleged constitutional deprivation resulted from a municipal policy or custom and that there is a causal connection between the policy and the deprivation." Vercillo v. Town/Vill. of Harrison, 01 Civ. 4734 (RCC), 2002 U.S. Dist. LEXIS 5029, at *2-3 (S.D.N.Y. Mar. 26, 2002) (citing Monell 436 U.S. at 694). "The plaintiff must establish that the municipality either authorized the employee to act in violation of the plaintiff's rights, or was the 'moving force' behind the violation." Vercillo, 2002 U.S. Dist. LEXIS 5029, at *4.

The complaint in the instant matter alleges that the City of New York "had a custom, policy and practice of improper training, improper supervision, allowing and permitting constitutional violations, tacitly permitting the subordination of perjury, tacitly permitting the fabrication of evidence, tacitly permitting the destruction and withholding of exculpatory evidence and the commencing and continuation of criminal prosecutions without probable cause and of other improper police practices at the 43rd Precinct, which amounted to a deliberate indifference to plaintiff's rights." (Complaint ¶ 195). It is well settled, however, that a plaintiff must do more than simply state that a municipal policy or custom exists. The "mere assertion that a municipality has such a policy is insufficient to establish Monell liability." Perez v. City of New York  97 CV 2915 (FB), 2002 U.S. Dist. LEXIS 4297, *4 (E.D.N.Y. Mar. 14, 2002); Dwares v. City of New York, 985 F.2d 94, 100 (2d Cir. 1993) (court holding that "the mere assertion … that a municipality has … a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference"). The plaintiff

must produce actual, admissible evidence. Additionally, "a single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy." Ricciuti v. N.Y.C. Transit Auth., 941 F.2d 119, 123 (2d Cir. 1991); Bowles v. N.Y. City Transit Auth., 00 Civ. 4213 (BSJ)(MHD), 2006 U.S. Dist. LEXIS 32915, at *57-58 (S.D.N.Y. May 23, 2006) (granting summary judgment where plaintiff provided evidence of only a single incident); Dupree v. City of New York, 418 F. Supp. 2d 555, 558 (S.D.N.Y. 2006) (noting plaintiff only pointed to single incident of his case and holding it did not constitute proof of a municipal policy); Brodeur v. City of New York, 99 Civ. 661 (WP), 2002 U.S. Dist. LEXIS 4500, at *7 (S.D.N.Y. Mar. 18, 2002) (court dismissing complaint against City where complaint "flatly asserts a policy but contains no factual allegations sufficient to establish a municipal policy or custom"); George v. Burton, 00 Civ. 143 (NRB), 2001 U.S. Dist. LEXIS 24, at *5-6 (S.D.N.Y. Jan 4, 2001) (court dismissing complaint with prejudice where plaintiff "failed to proffer any facts in his complaint from which we can infer such a pattern or practice"). A plaintiff must not only allege specific facts regarding the existence of a policy or custom, but also make a causal connection between that policy and the police conduct towards him. Perez, 2002 U.S. Dist. LEXIS 4297, at *5.

Here, it is abundantly clear that, not only does plaintiff have no factual allegations sufficient to establish an actual municipal policy, but the only allegations he can present in support of his allegations are the facts of his own arrest. That is insufficient to sustain his claim. Moreover, it is clear that each of the individual defendants is not a policy-maker of the New York City Police Department. The defendants hold (or held for those who have since retired) police officer, detective, lieutenant, and inspector. However, to establish municipal liability, it is not enough that there be an individual from the municipality who implemented the allegedly

unconstitutional "policy." Rather, the challenged action must have been undertaken by an authorized "final policymaker." City of St. Louis v. Praprotnik, 485 U.S. 112, 123, 108 S. Ct. 915 (1988) ("only those municipal officials who have 'final policymaking authority' may by their actions subject the government to § 1983 liability"). Not every high-ranking official will be deemed a policy maker, even those who "remained accountable to department and city policy in the area in which the unconstitutional violation is said to have occurred." Allen v. The City of New York, 03 Civ. 2829 (KMW), 2007 U.S. Dist. LEXIS 15, at *62 (S.D.N.Y. Jan. 3, 2007). The only policy maker of the New York City Police Department is the Police Commissioner. Id. at *61-65. Therefore, the defendants cannot be deemed final policy makers of the Police Department for purposes of establishing Monell liability against the City. Thus, the Court must find that plaintiff's claim against the City must fail.

Additionally, if liability is based on a claim of failure to train plaintiff must establish through admissible evidence that "the failure to train amounts to deliberate indifference to the rights of those whom municipal employees will come into contact." City of Canton v. Harris, 489 U.S. 378, 388, 109 S. Ct. 1197 (1989). Moreover, where the basis for the claim of municipal liability is a failure to train employees, "only where a failure … reflects a deliberate or conscious choice by a municipality … can a city be liable for such failure under § 1983." City of Canton, 489 U.S. at 389; Mahan et al. v. City of New York et al., 00 CV 6645 (DGT), 2005 U.S. Dist. LEXIS 14322, at *12 (E.D.N.Y. July 19, 2005). The inquiry focuses on "whether the actions of the employee in question may be said to represent the conscious choices of the municipality itself." Amnesty America v. Town of West Hartford, 361 F.3d 113, 126 (2d Cir. 2004). In a "failure to train" context, a plaintiff must establish that the officials "consciously disregarded a *risk* of future violations of clearly established constitutional rights by badly trained employees."

Id. at 127, n8. Moreover, a plaintiff's evidence must establish "that a policymaking official had notice of a potentially serious problem of unconstitutional conduct, such that the need for corrective action or supervision was 'obvious,' and the policymaker's failure to investigate or rectify the situation evidences deliberate indifference, rather than mere negligence or bureaucratic inaction." Id. at 128 (internal citations omitted).

Plaintiff in this case has to support a claim for negligent training or supervision. Consequently, the Court must conclude that plaintiff failed to meet his burden and that his claim against the City must be dismissed.

## **Conclusion**

For the foregoing reasons, defendants respectfully request that the Court grant their motion for summary judgment in its entirety and dismiss this action with prejudice.

Dated: New York, New York
     April 17, 2008

          MICHAEL A. CARDOZO
          Corporation Counsel of the City of New York
          Attorney for Defendants
          100 Church Street, Room 3-212
          New York, New York 10007
          (212) 788-0823

          By: _____
             Hillary A. Frommer (HF 9286)
             Senior Counsel