Index No.07 Civ. 3644 (HB)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANTHONY MANGANIELLO,

Plaintiff,

-against-

THE CITY OF NEW YORK, et al.,

Defendants.

## DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

*MICHAEL A. CARDOZO*
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, N.Y.  10007*

*Of Counsel:  Hillary A. Frommer*
*Tel:  (212) 788-0823:*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES...................................................................... i

PRELIMINARY STATEMENT.................................................................1

THE UNCONTESTED FACTS...............................................................2

ARGUMENT.......................................................................................3

POINT I

THE COURT MUST REJECT PLAINTFF'S CLAIM THAT
HIS CONSTITUTIONAL RIGHTS WERE VIOLATED ON
FEBRUARY 12, 2001 BECAUSE PLAINTIFF IS
TIME-BARRED AS A MATTER OF LAW FROM
ASSERTING SUCH CLAIM............................................ 3

POINT II

PLAINTIFF FAILED TO PRESENT ANY EVIDENCE
THAT THE DEFENDANTS WERE PERSONALLY
INVOLVED IN PLAINTIFF'S CRIMIAL PROSECUTION...........4

A.  The Uncontested Evidence Establishes that None of
the Individual Defendants Had the Requisite
Personal Involvement in the Initiation or Continuation
Of the Criminal Prosecution to be liable for
Malicious Prosecution.................................................... 5

B.  Plaintiff Cannot Present Any evidence that any of
the Individual Defendants Acted with Malice........................7

C.  Plaintiff's Claim that Defendants Scott, McGovern, and
McCarthy are Liable Because they Allegedly Failed
to Intervene Must Fail as a Matter of Law............................8

D.  Plaintiff Cannot Present Any Admissible Evidence to
Overcome the Presumption of Probable Cause by the
Grand Jury Indictment.................................................... 9

    i.    The Uncontested Evidence Establishing that
          Defendants Did Not Testify Before the Grand
          Jury Requires Dismissal of this Action......................9

    ii.   Plaintiff Failed to Present Any Evidence
          of Bad Faith.................................................... 10

E.  The Police Officer Witnesses Who Testified Before
the Grand Jury Are Entitled to Absolute Immunity

for Their testimony…………………………………………… 11

    F.  Plaintiff's Reliance on Judge Williams' Opinion to
Defeat Summary Judgment is Without Merit and
Must be Rejected……………………………………………12

POINT III

PLAINTIFF FAILED TO PRESENT ANY EVIDENCE TO
SUPPORT HIS <u>MONELL</u> CLAIM AGAINST THE
CITY OF NEW YORK……………………………………………13

CONCLUSION……………………………………………………16

# TABLE OF AUTHORITIES

<u>**Authority**</u>                                                          <u>**Page**</u>

## Case Law

<u>Alfaro v. City of New York</u>,
    03 Civ. 8246 (LTS), 2007 U.S. Dist. LEXIS 6408
    (S.D.N.Y. Jan. 29, 2007)……………………………………………….. 8, 9

<u>Allen v. The City of New York</u>,
    03 Civ. 2829 (KMW), 2007 U.S. Dist. LEXIS 15
    (S.D.N.Y. Jan. 3, 2007)………………………………………………… 14, 15

<u>Anderson v. City of New York</u>,
    99 CV 418 (JBW), 2000 U.S. Dist. LEXIS 10222
    (E.D.N.Y. July 19, 2000)……………………………………………….. 15

<u>Amnesty America v. Town of West Hartford</u>,
    361 F.3d 113 (2d Cir. 2004)…………………………………………….. 14

<u>Anthony v. The City of New York</u>,
    00 Civ. 4688 (DLC), 2001 U.S. Dist. LEXIS 8923          15
    (S.D.N.Y. July 2, 2001)……………………………………………….

<u>Back v. Hastings on Hudson Union Free Sch. Dist.</u>,
    368 F.3d 107 (2d Cir. 2004)…………………………………………….. 5

<u>Batista v. The City of New York</u>,
    05 Civ. 8444 (KMK), 2007 U.S. Dist. LEXIS 71905
    (S.D.N.Y. Sept. 25, 2007)……………………………………………… 14, 15

<u>Bernard v. United States</u>,
    25 F.3d 98 (2d Cir. 1994)………………………………………………. 7

<u>Briscoe v. LaHue</u>,
    460 U.S. 325 (1983)…………………………………………………….. 11

<u>Brock v. Wright</u>,
    315 F.3d 158 (2d Cir. 2003)…………………………………………….. 5

<u>Burt v. Aleman</u>,
    05 CV 4493 (NGG), 2008 U.S. Dist. LEXIS 35846
    (E.D.N.Y. Apr. 30, 2008)………………………………………………. 6, 7, 12

<u>Collins v. City of Harker Heights</u>,
    583 U.S. 115, 112 S. Ct. 1061 (1992)…………………………………... 15

Dale v. Bartels,
      552 F. Supp. 1253 (S.D.N.Y. 1982)……………………………………… 11

Damato v. The City of New York,
      06 Civ. 3030 (DC), 2008 U.S. Dist. LEXIS 31942
      (S.D.N.Y. May 12, 2008)……………………………………………… 14

Feutado v. Gillespie,
      04 CV 3405 (NGG)(LB), 2005 U.S. Dist. LEXIS 30310
      (E.D.N.Y. Nov. 17, 2005)……………………………………………… 11

Foy v. City of New York,
      03 Civ. 7318 (HB), 2004 U.S. Dist. LEXIS 18274
      (S.D.N.Y. Sept. 10, 2004)……………………………………………… 8

Hickey v. The City of New York,
      01 Civ. 6506 (GEL), 2004 U.S. Dist. LEXIS 23941
      (S.D.N.Y. Nov. 29, 2004)……………………………………………… 8

Jeffes v. Barnes
      208 F.3d 40 (2d Cir. 2000)……………………………………………… 15

Jeffreys v. City of New York,
      426 F.3d 549 (2d Cir. 2005)……………………………………………… 8

Jenkins v. City of New York,
      98 Civ. 7170 (JGK)(DFE), 1999 U.S. Dist. LEXIS 15353
      (S.D.N.Y. Sept. 30, 1999)……………………………………………… 7

Kaufman v. The City of New York,
      87 Civ. 4492 (RO), 1992 U.S. Dist. LEXIS 14049
      (S.D.N.Y Sept. 17, 1992)……………………………………………… 15

Kincaid v. Eberle,
      712 F.2d 1023 (7th Cir. 1983)………………………………………….. 11

Kinzer v. Jackson,
      316 F.3d 130 (2d Cir. 2003)……………………………………………… 7

Monroe v. Pape,
      365 U.S. 167, 81 S. Ct. 473 (1971)…………………………………… 5

Ricciuti v. N.Y.C. Transit Auth.,
      124 F.3d 123 (2d Cir. 1997)……………………………………………… 5,6

Rivera v. The City of New York,
      392 F. Supp. 2d 644 (S.D.N.Y. 2005)………………………………… 15

Rothstein v. Carriere,
    373 F.3d 275 (2d Cir. 2004)…………………………………………… 9

San Filipo v. U.S. Trust Company of New York, Inc.,
    737 F.2d 246 (2d Cir. 1984)…………………………………………… 11

Sargent v. The County of Nassau,
    04 CV 4264 (DRH)(AKT), 2007 U.S. Dist. LEXSI 17474
    (E.D.N.Y. Mar. 26, 2007)……………………………………………… 10

Savino v. City of New York,
    331 F.3d 73 (2d Cir. 2003)…………………………………………… 13

Snider v. Dylag,
    188 F.3d 51 (2d Cir. 1999)…………………………………………… 5

Townes v. City of New York,
    176 F.3d 138 (2d Cir. 1999)…………………………………………… 11

Walker v. City of New York,
    974 F.2d 293 (2d Cir. 1993)…………………………………………… 14

Wallace v. Kato,
    127 S. Ct. 1091( 2007)………………………………………………… 3, 4, 8

White v. Frank,
    855 F.2d 956 (2d Cir. 1988)…………………………………………… 11

Williams v. The City of New York,
    05 Civ. 10230 (SAS), 2007 U.S. Dist. LEXIS 55654
    (S.D.N.Y. July 26, 2007)……………………………………………… 14

Wright v. Smith,
    21 F.3d 496 (2d Cir. 1994)…………………………………………… 5, 10

Zahrey v. Coffey,
    221 F.3d 342 (2d Cir. 2000)…………………………………………… 11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------- x

ANTHONY MANGANIELLO,

                              Plaintiff,

           -against-

THE CITY OF NEW YORK, et al.,

                         Defendants.

------------------------------------------------------------------------- x

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

07 Civ. 3644 (HB)

## <u>Preliminary Statement</u>

On April 17, 2008, defendants moved this Court for summary judgment seeking dismissal of this complaint in its entirety.  As stated in the complaint, plaintiff alleges only two claims in this action; malicious prosecution against each of the individual defendants and municipal liability against the City of New York. Defendants established in their original moving papers that both claims fail as a matter of law. First, plaintiff failed to establish all of the required four elements of a malicious prosecution claim against each of the individual defendants. Importantly, defendants put forth uncontested evidenced that none of the individual defendants had the requisite personal involvement to render each of them liable for malicious prosecution. Second, defendants established that plaintiff failed to present any evidence to support his claim that the City of New York maintained an unconstitutional policy, practice, or custom of negligently training the police officer defendants that directly resulted in a violation of plaintiff's constitutional rights.

Plaintiff's opposition to defendants' motion is rife with deliberate and glaring misstatements of the documentary and testimony evidence in this case, as well as gross misstatements of the law. Defendants suggest that plaintiff's deliberate false submissions were made in bad faith and constitute a violate on of plaintiff's obligations under Rule 11 of the Federal Rules of Civil Procedure, for which the Court should consider an appropriate sanction against plaintiff. Specifically, plaintiff seeks to overcome summary judgment by arguing two points.: (1) that plaintiff's constitutional rights were violated February 12, 2001 when he was allegedly arrested; and (2) plaintiff is not required to establish that each of the individuals were personally involved in his alleged malicious prosecution. Both of these arguments are irrelevant and must be rejected.

**The Uncontested Facts**

Because plaintiff put forth so many irrelevant and unsupported conclusory allegations in opposing summary judgment, defendants believe it is necessary to set forth in a narrow fashion, those material facts that are relevant to plaintiff's malicious prosecution claim to which plaintiff does not present contrary evidence. The majority of these facts were succinctly set forth in defendants' Statement of Uncontested Facts Pursuant to Local Rule 56.1. Each of the facts herein is supported by actual admissible evidence.

On February 12, 2001 at approximately 10:10 a.m., Albert Acosta was shot and killed in the basement of 1700 Metropolitan Avenue. The police conducted an investigation from February 12, 2001 until April 20, 2001, at which time the Bronx County District Attorney's Office authorized and requested the New York City Police Department arrest plaintiff for the murder of Albert Acosta. Assistant District Attorney Christine Scaccia was assigned to prosecute plaintiff. As of April 20, 2001, she had reviewed the entire police file and all documents that were prepared in connection with the police investigation of the Acosta homicide. Ms. Scaccia was aware of several civilian witnesses who claimed to have information regarding the Acosta homicide. In assessing whether probable cause existed to prosecute plaintiff, the District Attorney's Office did not rely on any documents generated by the police, but rather it relied on statements the civilian witnesses gave directly to the prosecutor herself. In fact, Assistant District Attorney Scaccia testified under oath that the police reports generated played no role in the probable cause assessment. (See Defs. Ex. BB). Prior to April 20, 2001, Assistant District Attorney Scaccia was aware that a gun shot residue test performed on plaintiff's hands yielded negative results.

Prior to April 20, 2001 Ms. Scaccia personally interviewed Walter Cobb, Christopher Tartone, Michael Booth, Terrance Alston, and Mark Damon to ascertain the information they each possessed and whether they were credible. (See Ex. BB). Specifically, Walter Cobb told the Assistant District Attorney that he claimed to be outside the basement of 1700 Metropolitan Avenue at approximately 10:10 a.m. on February 12, 2001 when he heard gun shots coming from inside. Mr. Cobb further stated that immediately after hearing the gun shots, he saw plaintiff burst through the basement door to 1700 Metropolitan Avenue. The District Attorney's Office learned from Mr. Cobb that he discovered a body in the basement and called 911 stating that he did not know whether the victim was a police officer or a security guard. Assistant District Attorney also spoke to Christopher Tartone and Michael Booth who stated that prior to February 2001, plaintiff was asking to purchase an illegal gun. The District Attorney's Office also interviewed Terrance Alston, who told Ms. Scaccia that plaintiff had given him a set of keys to the Parkchester complex and asked plaintiff to kill a security guard for him. Mr. Alston informed Ms. Scaccia that he could not carry out the murder and that he arranged for another individual to sell plaintiff a gun. Based on her interview with Mr. Alston, the District Attorney's Office entered into an agreement with Mr. Alston to secure his testimony. Ms. Scaccia personally interviewed Mark Damon who told

her that he sold plaintiff a .22 caliber gun. Assistant District Attorney Scaccia was aware of the background checks performed on those witnesses and, where existing, their criminal histories. Based on her personal interviews with each witness, Assistant District Attorney Scaccia believed they were credible and were providing her with truthful information.

The District Attorney's Office was also provided documents from the Parkchester South Condominium Security Department which indicated to her that the victim's identity was never broadcast over the Parkchester Security radio and thus was not known to any Parkchester Security Guard. Additionally, prior to April 20, 2001, the District Attorney's Office received information directly from Parkchester Security that plaintiff and the victim had been in a physical fight prior to February 12, 2001.

After speaking directly to those witnesses and obtaining that information from Parkchester Security, the District Attorney's Office determined that there was probable cause to prosecute plaintiff. The District Attorney's Office requested the police arrest plaintiff and, on April 20, 2001, the prosecutor prepared the criminal court complaint and decided to charge plaintiff with murder in the second degree. The District Attorney's Office then made the sole decision to seek a Grand Jury indictment against plaintiff and had the sole discretion of what evidence to present to the Grand Jury. After hearing the truthful testimony of Walter Cobb, Terrance Alston, and Christopher Tartone, the Grand Jury returned an indictment against plaintiff. Defendants Shawn Abate, Derek Parker, Richard Martinez, Harry Scott, John McGovern, Geryl McCarthy, and Michael Phipps did not testify before the Grand Jury. Detective Luis Agostini, Officer Alex Perez, and Officer Miriam Nieves testified truthfully before the Grand Jury. None of the individual defendant officers ever urged or insisted on the prosecution of plaintiff.

## **Argument**

## **POINT I**
### **THE COURT MUST REJECT PLAINTIFF'S CLAIM THAT HIS CONSTITUTIONAL RIGHTS WERE VIOLATED ON FEBRUARY 12, 2001 BECAUSE PLAINTIFF IS TIME-BARRED AS A MATTER OF LAW FROM ASSERTING SUCH CLAIM**

It is evident from plaintiff's various submissions in opposition to defendants' motion for summary judgment, including plaintiff's memorandum of law, response to Defendants' Statement of Uncontested Facts Pursuant to Local Rule 56.1, and plaintiff's statement of contested facts pursuant to Local Rule 56.1, that plaintiff believes that he has stated a claim against each of the individual defendants for violating his constitutional rights on February 12, 2001 when plaintiff was detained at the 43rd Precinct during the initial stages of the police investigation of the homicide of Albert Acosta. Plaintiff argues that there was no probable cause to arrest him on February 12, 2001 and attempts to support his flawed argument by misrepresenting the clear testimony of the witnesses. Plaintiff's attempt is futile. Under Wallace v. Kato, 127 S. Ct. 1091 (2007), plaintiff is barred a matter of law from stating any claim that his constitutional rights were violated by any of

the individual defendants on February 12, 2001. In <u>Wallace</u>, the Supreme Court held that the statute of limitations on a claim for false arrest or false imprisonment claim brought under 42 U.S.C. §1983 begins to run "when the alleged false imprisonment ends … Reflective of the fact that false imprisonment consists of detention without legal process." <u>Id</u>. at 1096.  Therefore, the claim for false arrest accrues once the criminal defendant becomes held pursuant to legal process "when, for example, he is bound over by a magistrate or arraigned on charges." <u>Id</u>. In that case, the Court held that the statute of limitations began to run on the date when the criminal defendant appeared before the magistrate and was bound over for trial, and expressly stated that a false arrest claim <u>does not</u> accrue when the criminal charges are dropped and the defendant is released from custody. The Court found that because the plaintiff in <u>Wallace</u> commenced his action for false arrest more than two years after the date on which he appeared before the magistrate, which was the date his "false imprisonment" ended, his claim was time-barred.

The majority of plaintiff's opposition to summary judgment is that plaintiff claims that he was arrested or detained without probable cause on February 12, 2001 but released that same day.  Plaintiff's proposed statement of contested facts, which contains more than 300 paragraphs is rife with allegations that the police did not have probable cause to arrest plaintiff on February 12, 2001. (See ¶¶ 92-106, 109-148, 157, 163, 167-174). These allegations are both unsupported by the evidence on which plaintiff relies, but are immaterial. The statute of limitations for such claim accrued on February 12, 2001 and expired on February 12, 2004.  However, plaintiff did not commence this action until May 8, 2007, more than three years after the statute of limitations expired. Thus, any claim that plaintiff was falsely arrested on February 12, 2001 must be rejected as a matter of law.  Moreover, plaintiff simply ignores the fact and asks this Court to ignore the fact that the complaint clearly and unambiguously states the single claim of malicious prosecution against each of the individual defendants. However, plaintiff himself admits that there was no prosecution initiated against him on February 12, 2001. By his own admission, he was released from the 43rd Precinct on that day and was not presented for arraignment on February 12, 2001. There was no Criminal Court Complaint signed or filed on February 12, 2001.  As there was no prosecution that commenced on February 12, 2001, plaintiff simply cannot assert a claim of malicious prosecution, or any claim for that matter that accrued on February 12, 2001. For these reasons, the Court must find that plaintiff has failed to state any claim for that his constitutional rights were violated on February 12, 2001.

### POINT II
### PLAINTIFF FAILED TO PRESENT ANY EVIDENCE THAT THE DEFENDANTS WERE PERSONALLY INVOLVED IN PLAINTIFF'S CRIMINAL PROSECUTION

In opposing summary judgment, plaintiff asks this Court to believe that plaintiff is not required to establish the personal involvement of each of the individual defendants in plaintiff's criminal prosecution. Rather, plaintiff argues that so long one defendant signed the criminal court complaint, the Court may, in

conclusory fashion, simply accept that the alleged conduct of every other defendant was an act that continued the prosecution. Quite simply, plaintiff's theory misses the mark and his argument is fatally flawed. "In order to establish liability under § 1983, a plaintiff must show (a) that the defendant is a 'person' acting 'under color of state law,' and (b) that the defendant caused the plaintiff to be deprived of a federal right." Back v. Hastings on Hudson Union Free Sch. Dist., 368 F.3d 107, 122 (2d Cir. 2004) (citing Monroe v. Pape, 365 U.S. 167, 81 S. Ct. 473 (1971)). It is well established in the Second Circuit that personal involvement of each defendant is a prerequisite to establishing liability under Section 1983. Brock v. Wright, 315 F.3d 158, 164 (2d Cir. 2003) (holding the plaintiff failed to show each particular defendant was personally involved in the alleged constitutional violation); Snider v. Dylag, 188 F.3d 51, 54 (2d Cir. 1999) (holding the personal involvement of each defendant in the conduct that allegedly violated the plaintiff's constitutional rights is a prerequisite for § 1983 liability); Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (each defendant must be personally involved in the alleged constitutional violation).

It is uncontroverted that the sole claim plaintiff alleges in this action is that his constitutional rights were violated because plaintiff was maliciously prosecuted. Plaintiff asserted this malicious prosecution claim against each of the ten individually named defendants. Consequently, plaintiff is required to establish actual evidence that each defendant caused plaintiff to be maliciously prosecuted. Moreover, where as here, plaintiff was indicted by a Grand Jury, plaintiff must present the Court with actual evidence that each defendant engaged in fraud, perjury or bad faith misconduct in the Grand Jury in order to overcome the presumption of probable cause. Rothstein v. Carriere, 373 F.3d 275, 283 (2d Cir. 2004). Here, defendants presented evidence that clearly demonstrates that none of the individual defendants initiated the prosecution, acted with malice, or engaged in any misconduct in the Grand Jury. Plaintiff wholly failed to rebut that evidence. Thus, the Court must grant summary judgment to defendants.

A.    **The Uncontested Evidence Establishes that None of the Individual Defendants Had the Requisite Personal Involvement in the Initiation or Continuation of the Criminal Prosecution to be Liable for Malicious Prosecution**

It is uncontested that the criminal prosecution against plaintiff commenced on April 20, 2001. However, plaintiff cannot simply rely on the general concept that plaintiff was criminally prosecuted to defeat summary judgment. Nor can plaintiff rely on his conjecture and rank speculation that a defendant initiated or continued the prosecution, where the evidence clearly demonstrates otherwise. Plaintiff must present actual admissible evidence proving that each individual defendant personally and definitively acted to initiate the prosecution against plaintiff. Plaintiff's reliance on 9th Circuit case law to rebut this well-settled principle is without merit because the Second Circuit requires a plaintiff to show that each defendant initiated the prosecution against plaintiff, that each defendant acted with malice, that probable cause for the prosecution was so totally lacking for the prosecution, and that the prosecution terminated in plaintiff's favor. Ricciuti v. N.Y.C. Transit Auth.,

124 F.3d 123, 130 (2d Cir. 1997); see also Rohman v. New York City Transit Auth., 215 F.3d 208, 217 (2d Cir. 2000).

Based on all of the evidence, the only defendant who plaintiff can even argue had any tenuous connection at all to plaintiff's prosecution was Detective Agostini, who signed the criminal court complaint prepared by the District Attorney's Office. However, the mere act of signing a criminal court complaint is not enough to confer liability for malicious prosecution. Where the evidence establishes that the prosecutor was responsible for drafting the criminal court complaint and making the initial decision to commence a prosecution, and the plaintiff cannot present any evidence to the contrary, the police officer cannot be held liable for malicious prosecution. Burt v. Aleman, 05 CV 4493 (NGG), 2008 U.S. Dist. LEXIS 35846 (E.D.N.Y. Apr. 30, 2008) (dismissing malicious prosecution claim where plaintiff failed to present any evidence to rebut affidavit stating that the District Attorney's Office made decision to prosecute plaintiff, and drafted the criminal court complaint).

Here, the Affidavit of Shawn Abate establishes that the District Attorney's Office authorized the arrest of plaintiff. (See Defs. Ex. J). Detective Abate's affidavit along with the Affidavit of Luis Agostini, and the sworn testimony of Derek Parker, John McGovern, and Geryl McCarthy establish that the District Attorney's Office drafted the Criminal Court Complaint on April 20, 2001 and made the decision to initiate the prosecution against plaintiff. (See Defs. Ex. J; Ex. R; Ex. S; Ex. T; Ex. U). The uncontested evidence demonstrates that defendants Richard Martinez, Derek Parker, Harry Scott, John McGovern, and Geryl McCarthy had no personal involvement whatsoever with the District Attorney's Office regarding the prosecution of plaintiff. (See Defs. Ex. G; Ex. S; Ex. T; Ex. W; Ex. U). Indeed, the clear and unambiguous evidence establishes that defendants Agostini, Abate, Parker, Martinez, McCarthy, Scott, McGovern, Perez, and Nieves had no personal involvement whatsoever in the initial decision by the District Attorney's Office to prosecute plaintiff. Plaintiff failed to present this Court with any evidence to contradict these facts. Moreover, the sworn testimony of Assistant District Attorney Scaccia establishes that the District Attorney's Office independently made the decision to prosecute plaintiff after Ms. Scaccia personally interviewed all of the civilian witnesses. (See Defs. Ex. BB). In fact, the uncontested testimony of Assistant District Attorney Scaccia establishes that the District Attorney's Office did not rely on the police report, DD5s or any other information forwarded by the police in assessing whether probable cause existed to prosecute plaintiff. Rather, the decision that probable cause existed was based specifically and directly on what the civilian witnesses independently told the District Attorney's Office when those witnesses were independently interviewed by the prosecutor. (See Defs. Ex. BB). Plaintiff's failure is fatal to plaintiff's claim and requires dismissal of the malicious prosecution claim against all of the defendants because the uncontested evidence establishes that they did not initiate the criminal prosecution against plaintiff.

A police officer who does not initiate the criminal prosecution may only be held liable for malicious prosecution under a theory that the officer maliciously continued the prosecution of a plaintiff after learning that there was no longer probable cause to believe that the plaintiff committed a crime. Kinzer v. Jackson, 316 F.3d 139, 143-44 (2d Cir. 2003). However, this requires the plaintiff to show through actual admissible evidence that after the prosecution passed to the hands of the District Attorney's Office, the police officer urged or insisted on the continuation of the prosecution. Bernard v. United States, 25 F.3d 98, 104 (2d Cir. 1994); Jenkins v. City of New York, 98 Civ. 7170 (JGK)(DFE), 1999 U.S. Dist. LEXIS 15353, at * 32 n.3 (S.D.N.Y. Sept. 30, 1999); Burt, 2008 U.S. Dist. LEXIS 35846, at *15.

There is no evidence demonstrating that any of the individual defendants continued the prosecution after April 20, 2001. First, plaintiff presents no evidence whatsoever that any of the defendants knew that there was no probable cause for plaintiff's criminal prosecution.[1] Second, plaintiff failed to rebut the affidavits and sworn testimony establishing that none of these individuals encouraged or urged the District Attorney's Office of prosecute plaintiff.  As this very evidence is required in order to overcome summary judgment, plaintiff's complete failure to present such evidence warrants dismissal of the malicious prosecution claim against each of the defendants.

**B.**          **Plaintiff Cannot Present Any Evidence that any of the Individual Defendants Acted with Malice**

Contrary to plaintiff's flawed understanding of the law, he must establish that each of the ten individual defendants acted with malice in order to hold them liable for malicious prosecution. The Court must conclude that because plaintiff failed to present any evidence that the individual defendants had any personal involvement in the initiation or continuation of plaintiff's criminal prosecution, he similarly failed to present any evidence that each individual acted with malice.

Plaintiff has failed to present any specific facts or evidence supporting that any of the individual defendants acted with malice. To support his claims, plaintiff turns solely to the alleged interaction between plaintiff and defendants Agostini, Abate, Scott, and McGovern on February 12, 2001 when plaintiff was being interviewed in the 43rd Precinct. The Court should reject this argument for two reasons. First, this is not evidence that defendants Parker, Martinez, Nieves, Perez, Phipps, or McCarthy acted with malice. Indeed, plaintiff fails to even argue any facts with respect to those individuals. The total absence of any facts or evidence indicating actual malice on the part of defendants Parker, Martinez, Nieves, Perez, Phipps or

---

[1]          Defendants note that plaintiff attempts to argue this by claiming that none of the individual defendants believed there was probable cause to arrest plaintiff on February 12, 2001. Not only is plaintiff's allegation wholly contrary to the evidence relied on by plaintiff to support that bad faith contention, but it is irrelevant. As set forth in Part I supra, the existing of probable cause to arrest on February 12, 2001 is irrelevant because plaintiff was not prosecuted by the District Attorney's Office until April 20, 2001.

McCarthy requires dismissal of this action. Alfaro v. City of New York, 03 Civ. 8246 (LTS), 2007 U.S. Dist. LEXIS 6408 (S.D.N.Y. Jan. 29, 2007).

Second, plaintiff again fails to recognize that he cannot litigate plaintiff's alleged detention on February 12, 2001, as such claim is time-barred. Plaintiff must present evidence that the defendants acted with malice in connection with plaintiff's April 20, 2001 prosecution. However, plaintiff argues only that defendants Agostini, Abate, Scott, and McGovern treated plaintiff "rashly" on February 12, 2001. Contrary to plaintiff's flawed assertion, that allegation is not evidence that any of those individuals acted with malice when the District Attorney's Office began the prosecution on April 20, 2001. Notably, plaintiff cannot present a scintilla of evidence to support that claim, as is required.    The only thing plaintiff presents are unsupported conclusory allegations that the police officers coerced witnesses and fabricated statements. The law is clear that to satisfy the element of malice, a plaintiff must point to specific evidence supporting his claims. Where, as here, there is no evidence whatsoever to support a claim that a witness was coerced or a statement fabricated, plaintiff cannot simply make such conclusory allegations, knowing there is simply no evidence to support them, to defeat summary judgment. Jeffreys v. City of New York, 426 F.3d 549, 554 (2d Cir. 2005).

C.      **Plaintiff's Claim that Defendants Scott, McGovern, and McCarthy are Liable Because They Allegedly Failed to Intervene Must Fail as a Matter of Law**

Recognizing that all of the evidence establishes that defendants Lieutenant Scott, Lieutenant McGovern, and Inspector McCarthy had absolutely no personal involvement in plaintiff's criminal prosecution, plaintiff attempts to hold them liable on a theory that they failed to intervene to stop the detectives subordinate to them from arresting plaintiff.  Again, plaintiff fails to comprehend his legal burden and the Court must reject this argument and hold that alleging that plaintiff cannot skirt around the personal involvement requirement to hold the defendants liable for malicious prosecution.

As a threshold matter, plaintiff's claims that defendants Scott, McGovern, and McCarthy are liable for failing to intervene are time-barred as a matter of law. This Court has held that there must first exist an underlying constitutional violation before a plaintiff may state a viable failure to intervene claim. Foy v. City of New York, 03 Civ. 7318 (HB), 2004 U.S. Dist. LEXIS 18274, at *10 (S.D.N.Y. Sept. 10, 2004); see also Hickey v. The City of New York, 01 Civ. 6506 (GEL), 2004 U.S. Dist. LEXIS 23941, at *56 (S.D.N.Y. Nov. 29, 2004).  Here, plaintiff alleges solely that defendants Scott, McCarthy, and McGovern failed to reprimand detectives when plaintiff was allegedly falsely arrested on February 12, 2001. (See Pl. Mem. P. 26). As already set forth in Part I supra, plaintiff's claim that he was falsely arrested on February 12, 2001 is barred by the three year statute of limitations pursuant to Wallace v. Kato. Therefore, as plaintiff cannot state a claim that his constitutional rights were violated when he was allegedly arrested on February 12, 2001, he cannot assert that defendants Scott, McCarthy or McGovern failed to intervene to prevent that alleged arrest.

Moreover, the statute of limitations on the failure to intervene claim itself is time-barred. The statute of limitations for a failure to intervene claim brought pursuant to federal law is three years from the date when the alleged conduct caused the harm. Alfaro, 2007 U.S. Dist. LEXIS 6408, at * 15-16. Plaintiff claims that the alleged conduct by defendants Scott, McCarthy, and McGovern occurred on February 12, 2001 because that is when plaintiff allegedly was harmed by being detained. Thus, plaintiff's failure to intervene claim accrued on February 12, 2001 and expired on February 12, 2004. Plaintiff's failure to commence this action until May 8, 2007 requires dismissal of his claims against defendants Scott, McGovern, and McCarthy.[2]

**D.**      **Plaintiff Cannot Present Any Admissible Evidence to Overcome the Presumption of Probable Cause Created by the Grand Jury Indictment**

It is uncontested that a Grand Jury indicted plaintiff for the crime of Murder in the Second Degree after civilian witnesses Christopher Tartone, Walter Cobb, and Terrance Alston testified before the Grand Jury. (See Pl. Ex. 28; Defs. Ex. Y). It is well settled that a Grand Jury indictment creates a presumption that probable cause existed for a prosecution that may only be overcome by showing actual evidence that a police officer engaged in fraud, perjury, or bad faith conduct in the Grand Jury itself. Rothstein v. Carriere, 373 F.3d 275, 283 (2d Cir. 2004). It is not sufficient to simply allege that witnesses gave false testimony before the Grand Jury or were coerced or threatened to testify before the Grand Jury in order to establish the required showing of fraud, perjury or bad faith. Rather, the plaintiff must put forth concrete evidence establishing that each defendant personally engaged in fraud, perjury or bad faith in the Grand Jury.

Plaintiff's malicious prosecution claim fails against each defendant because plaintiff cannot establish perjury in the Grand Jury or bad faith misconduct.

**i.**      **The Uncontested Evidence Establishing that Defendants Did Not Testify Before the Grand Jury Requires Dismissal of this Action**

In opposing summary judgment, plaintiff presented the Court with the complete minutes of the Grand Jury proceedings which ultimately returned an indictment against plaintiff. (See Pl. Ex. 28). That evidence establishes that defendants Parker, Scott, McGovern, McCarthy, and Phipps[3] did not testify before the Grand Jury. Additionally, the unrebutted sworn testimony of those individuals further establishes that they had no personally involvement whatsoever in the Grand Jury proceedings, as they did not coerce or threaten any individual to testify, nor did they have any contact with the District Attorneys' Office at all regarding plaintiff's

---

[2]      Defendants respectfully submit that plaintiff's consistent attempt to assert claims that clearly are precluded by law and that are not alleged in the complaint, rather than to address the relevant facts and legal issues in this action, are actions undertaken in bad faith in violation of Rule 11.

[3]      Notably, plaintiff failed to present this Court with any evidence that defendant Phipps was involved in any way with the prosecution. In fact, plaintiff appears to concede that Inspector Phipps played no role in the prosecution. Thus, this action should be dismissed against him in its entirety.

prosecution. Where the record on the motion clearly demonstrates that police officers were not involved in the underlying criminal proceedings, on that basis alone, the officers are entitled to summary judgment. Sargent v. The County of Nassau, 04 CV 4264 (DRH)(AKT), 2007 U.S. Dist. LEXIS 17474, at *26, n.6 (E.D.N.Y. Mar. 26, 2007) (citing Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994)). Plaintiff's complete failure to present any evidence that those defendants participated in any way in the Grand Jury, or in any of the criminal proceedings, warrants dismissal of this action against them.

### ii.    Plaintiff Failed to Present Any Evidence of Bad Faith

Plaintiff's claim against defendants Agostini, Abate, Parker, and Martinez equally fail on because plaintiff has no evidence whatsoever that these defendants engaged in bad faith.  Where a police officer discloses witness statements to the District Attorney's Office, that officer cannot be said to have acted in bad faith. Sargent, 2007 U.S. Dist. LEXIS 17474, at *26. The uncontested sworn testimony, affidavit, and declaration of Luis Agostini and Assistant District Attorney Scaccia clearly established that prior to April 20, 2001, when the District Attorney's Office initiated the prosecution against plaintiff, Detective Agostini had provided the entire case file to the District Attorney's Office and the prosecutor was aware of all information and statements obtained during the course of the investigation.

Plaintiff also cannot rely on his unsupported conclusions that civilian witnesses Walter Cobb, Terrance Alston, Christopher Tartone, and Michael Booth were all coerced or threatened by either defendants Agostini, Abate, Parker or Martinez to provide statements, or gave false testimony before the Grand Jury.  Again, the sworn testimony of defendants Agostini, Abate, and Martinez clearly establish that none of those police defendants ever coerced or threatened any witness. Further, and more importantly, plaintiff does not present any sworn statements from Mr. Cobb, Mr. Alston, Mr. Tartone, or Mr. Booth attesting that they were ever coerced, threatened, or gave false testimony by any police officer, let alone defendants Agostini, Abate or Martinez. Plaintiff's failure to do so is fatal to his malicious prosecution claim because the record establishes solely that Mr. Cobb, Mr. Tartone, Mr. Alston, Mr. Booth, and indeed every other witness, testified voluntarily and truthfully before the Grand Jury.

Finally, plaintiff ignores the uncontested sworn testimony from Assistant District Attorney Scaccia that the District Attorney's Office interviewed those civilian witnesses, determined them to be credible, and called them to testify before the Grand Jury based on the statements each of those witnesses gave during their interviews with the District Attorney's Office.  It is very clear that not only the decision to prosecute, but also the information to present to the Grand Jury was made by the District Attorney's Office solely on the direct statements of the civilian witnesses—not information relayed by the police officers.  This evidence is fatal to plaintiff's malicious prosecution claim because it is well settled in the Second Circuit that where, as here, the police provide the prosecutor with the witness statements, the chain of causation is broken by the District

Attorney's exercise of independent judgment regarding what information to present to the Grand Jury. Townes v. City of New York, 176 F.3d 138, 147 (2d Cir. 1999); Zahrey v. Coffey, 221 F.3d 342, 351 (2d Cir. 2000). Moreover, while plaintiff attempts to argue that Terrance Alston was offered a deal in exchange for his testimony against plaintiff, the District Attorney's Office decided to enter into an agreement with Terrance Alston. Detective Parker played no role in that decision. Plaintiff's rank speculation as to Detective Parker's alleged yet nonexistent involvement in plaintiff's prosecution is without basis and must be rejected. Thus, the Court must conclude that there is no material issue of fact and summary judgment is warranted.

**E.        The Police Officer Witnesses Who Testified Before the Grand Jury Are Entitled to Absolute Immunity for Their Testimony**

Plaintiff's malicious prosecution claim also fails against Detective Agostini and Officers Perez and Nieves because, although those witnesses testified before the Grand Jury, they are each entitled to absolute immunity for that testimony. In a conclusory manner and without alleging any specific facts, plaintiffs claim that Detective Agostini, Officer Perez, and Officer Nieves misrepresented or falsified facts to the grand jury. However, any claims against these defendants based solely upon their Grand Jury testimony must be dismissed because they are each are entitled to absolute immunity for testimony given to the Grand Jury. It is well settled by the Supreme Court and the Second Circuit that a police officer has absolute immunity from § 1983 liability based on the substance of his trial testimony. Briscoe v. LaHue, 460 U.S. 325 (1983); San Filipo v. U.S. Trust Company of New York, Inc., 737 F.2d 246, 254 (2d Cir. 1984). Moreover, the Second Circuit held that police officers are entitled to the same protection for testimony they give to a Grand Jury. White v. Frank, 855 F.2d 956 (2d Cir. 1988); San Filipo, 737 F.2d at 254, (citing Kincaid v. Eberle, 712 F.2d 1023 (7th Cir. 1983)); Dale v. Bartels, 552 F. Supp. 1253, 1267-73 (S.D.N.Y. 1982); see also Feurtado v. Gillespie, 04 CV 3405 (NGG)(LB), 2005 U.S. Dist. LEXIS 30310, at * 31-32 (E.D.N.Y. Nov. 17, 2005).

Moreover, plaintiff has wholly failed to put forth any credible evidence to support his allegation that the testimony of defendants Agostini, Perez, Nieves was false. With respect to Officer Perez, he testified that he heard a radio transmission at 10:16 a.m. on February 12, 2001 stating that an officer had been shot at 1700 Metropolitan Avenue and that he did not know whether the victim was a police officer or security guard. That testimony was wholly consistent with Walter Cobb's 911 call at approximately 10:15 a.m. when he stated that there was a man down in the basement of 1700 Metropolitan Avenue, but he did not know whether he was a security guard or police officer. (See Defs. Ex. BB, p. 102). That is consistent with Lieutenant's Scott's testimony that he heard a "10-13" radio transmission that did not identify the victim as a security guard. Plaintiff has wholly failed to present this Court with evidence establishing that the initial police radio call transmitted and received by Officer Perez at 10:15 a.m. regarding the events at 1700 Metropolitan Avenue ever

identified the victim as a Parkchester Security Guard. That very evidence is necessary for plaintiff to prove that Officer Perez falsely testified at the Grand Jury. Plaintiff's failure to present such evidence is fatal to his claim.

Additionally, Officer Perez testified that he observed plaintiff at the scene and described plaintiff's physical appearance. Plaintiff's assertion that such testimony was false is made in bad faith as plaintiff himself admits that he was at the scene and had that very demeanor. Thus, plaintiff's allegation that Officer Perez testified falsely is nothing more than speculation which is contrary to all the other evidence. (Pl. Ex. 28). Similarly, plaintiff cannot present any actual evidence to support his claim that Officer Nieves testified falsely in the Grand Jury, as her testimony established that she arrived at 1700 Metropolitan Avenue, observed plaintiff at the scene, and learned the identify of the victim only after she personally saw him lying face down in the basement. (Pl. Ex. 28).

Finally, with respect to Detective Agostini, plaintiff himself presented the Court with his Grand Jury testimony, which demonstrated that Detective Agostini testified that he learned that Albert Acosta had been shot and killed with a .22 caliber bullet and that he learned that Parkchester Security guards are not permitted to carry firearms on duty. (Pl. Ex. 28). Plaintiff's assertion that such testimony was false is patently made in bad faith as plaintiff has admitted that all of those facts are indeed true.

Moreover, defendants Agostini, Perez, and Nieves, cannot be held liable for malicious prosecution based on the substance of their Grand Jury testimony because the substance of that testimony is not evidence that any of them urged or insisted upon the prosecution. Burt, 2008 U.S. Dist. LEXIS 35846, at *18. Therefore, based upon this clearly established Supreme Court and Second Circuit precedent, defendants Agostini, Perez, and Nieves are entitled to absolute immunity for the testimony they gave to the grand jury.

**F.      Plaintiff's Reliance on Judge Williams' Opinion to Defeat Summary Judgment is Without Merit and Must Be Rejected**

Plaintiff also seeks to overcome summary judgment by arguing that the Honorable Patricia Anne Williams, Acting Justice of the Supreme Court, concluded that information was not disclosed to the Grand Jury regarding the agreement the District Attorneys' Office entered into the Terrance Alston. This argument is both irrelevant and without merit. First, plaintiff unfortunately fails to understand Judge Williams' decisions. It is unclear from plaintiff's opposition papers what plaintiff believes Judge Williams ordered, but it is clear from the face of the opinion itself that Judge Williams directed the District Attorney's Office, not any police officer, to provide the court with information concerning the agreement the District Attorney's Office entered into with civilian Witness Terrance Alston. That opinion, however, is not relevant to the claim that the police officer defendants maliciously prosecuted plaintiff, as it does not show that any of the individual defendants initiated or continued the prosecution, that they acted with malice, or that probable cause was lacking for the prosecution. Notably, plaintiff asks this Court to ignore the prosecutor's diligent response to that direction, as the prosecutor

disclosed to the Court the details of the prosecutor's agreement with Mr. Alston. Subsequently, Judge Williams issued a follow-up opinion on August 6, 2001, finding that as a matter of fact, that there were no improprieties before the Grand Jury that indicted plaintiff and that the integrity of the Grand Jury was not impaired in any way. The court also ruled that there was sufficient evidence presented to the Grand Jury to support the charges contained in the indictment. (See Defs. Ex. Z). Thus, even if this Court were to rely on Judge Williams' opinions, based on the judge's August 6, 2001 finding, it would have to conclude that there was probable cause for the prosecution which requires dismissal of the malicious prosecution claim.

Plaintiff also seeks to argue that the police officer defendants are liable for malicious prosecution because the prosecutor did not present the Grand Jury with each and every fact uncovered during the police investigation. This argument is simply absurd and unsupported by any evidence. The Second Circuit has well established that the District Attorney has the discretion and authority to decide what evidence to present to the Grand Jury and is "under no duty to present every item of arguably exculpatory evidence in seeking an indictment." Savino v. City of New York, 331 F.3d 63, 75 (2d Cir. 2003). In fact, a decision to not to present the Grand Jury with even arguably exculpatory evidence does not constitute conduct undertaken in bad faith by the police. Id.

Here, the uncontested evidence set forth in the affidavits of Luis Agostini, Shawn Abate, and the Declaration of Assistant District Attorney Christine Scaccia demonstrates that the District Attorney's Office made all decisiona regarding what evidence to present to the Grand Jury, including what witnesses should testify and the substance of each witness's testimony. (See Defs. Ex. J; Ex. R; Ex. DD). Assistant District Attorney Scaccia's declaration further indicates that no police officer had any involvement in those decisions. (See Defs. Ex. DD). Therefore, plaintiff has no evidence to support his theory that any of the police officer defendants can be liable for what evidence was or was not presented to the Grand Jury.

For these reasons, the Court must conclude that plaintiff has failed to present this Court with any evidence to create an issue of fact supporting his claim that defendants Agostini, Abate, Martinez, Parker, Perez, Nieves, Scott, McGovern, McCartthy or Phipps may be liable for malicious prosecution.

## POINT III
## PLAINTIFF FAILED TO PRESENT ANY EVIDENCE TO SUPPORT HIS MONELL CLAIM AGAINST THE CITY OF NEW YORK

Plaintiff's purported Monell claim against the City fails in several respects and must be dismissed. First, it amounts to nothing more than rank speculation. While plaintiff alleges that the City "had a custom, policy and practice of improper training, improper supervision, allowing and permitting constitutional violations, tacitly permitting the subordination of perjury, tacitly permitting the fabrication of evidence, tacitly permitting the destruction and withholding of exculpatory evidence and the commencing and continuation of criminal prosecutions without probable cause and of other improper police practices at the 43rd Precinct, which amounted

to a deliberate indifference to plaintiff's rights." (Complaint ¶ 195), plaintiff presents no evidence to support that conclusion.  Despite the clear and unambiguous testimony of Detective Agostini, Lieutenant Scott, and Assistant District Attorney Scaccia that the clearly marked box containing the original case file that was properly maintained in the 43rd Precinct Detective Squad was missing in January 2003, almost two years after plaintiff was indicted by the Grand Jury, and after Detective Agostini was no longer assigned to that command, plaintiff asserts with absolutely no evidence that the evidence was purposefully destroyed pursuant to a lack of training.  The Court must conclude that plaintiff's assertion is made in bad faith as it is patently contrary to the record, but also is not evidence of any policy regarding training.[4]

Additionally, plaintiff put forth no evidence that his criminal prosecution was a direct result of the City's alleged failure to train the officer defendants.  Those failures alone warrants dismissal of the Monell claim because where a plaintiff fails to present actual evidence that the alleged constitutional violation was a direct result of that purported policy, a Monell claim must be dismissed. Williams v. The City of New York, 05 Civ. 10230 (SAS), 2007 U.S. Dist. LEXIS 55654, at * 54 (S.D.N.Y. July 26, 2007) (dismissing Monell claim where plaintiff did not present any evidence of training and only evidence presented regarding failure to train was plaintiff's own allegation that his constitutional rights were violated); Batista v. The City of New York, 05 Civ. 8444 (KNK), 2007 U.S. Dist. LEXIS 71905, at *15 (S.D.N.Y. Sept. 25, 2007) (dismissing Monell claim where plaintiffs failed to present actual evidence that his alleged false arrest was in fact the result of a municipal policy of failing to train employees). Damato v. The City of New York, 06 Civ. 3030 (DC), 2008 U.S. Dist. LEXIS 39142, at *7 (S.D.N.Y. May 12, 2008). In fact, the uncontested declaration of Assistant District Attorney Christine Scaccia clearly proves that plaintiff's criminal prosecution was not the result of any purported deficient training of the police officers, but rather, was the result of the decision of the District Attorney's Office that witnesses were credible and had provided information giving rise to probable cause.

Second, plaintiff fails to present any evidence establishing that a final policy-maker of the New York City Police Department knew to a moral certainty that police officers would confront a given situation and that the official had notice of a potentially serious problem of constitutional conduct such that the need for corrective action was obvious.  The Second Circuit mandates that a plaintiff present such evidence when alleging that a municipality maintains a policy of failing to train its employees. Amnesty America v. Town of West Hartford, 361 F.3d 113, 126 (2d Cir. 2004); Walker v. City of New York, 974 F.2d 293, 297 (2d Cir. 1993). The law is clear that the only final policy maker of the New York City Police Department is the Police Commissioner. Allen v. The City of New York, 03 Civ. 2829 (KMW), 2007 U.S. Dist. LEXIS 15, at *62 (S.D.N.Y. Jan. 3, 2007).  Plaintiff as not presented any contrary law or fact and plaintiff has not presented any

---

[4]    Defendants note that once again, plaintiff has presented an argument in bad faith and in violation of Rule 11 as plaintiff has deliberately misrepresented the clear record in order to assert a theory for which the record establishes is without any evidentiary support.

evidence whatsoever that the Police Commissioner had any knowledge or notice required under <u>Amnesty America</u> or <u>Walker</u>. Rather, plaintiff attempts to claim that defendants Lieutenant Scott, Sergeant McGovern, and Deputy Inspector McCarthy were "final policy-makers" for the purposes of his purported <u>Monell</u> claim based on their presence as supervisors or individual decisions they made.[5] It is evident, however, that plaintiff fails to understand the difference between a decision maker and a policy-maker. "When a plaintiff asserts that unconstitutional acts 'were taken or caused by an official whose actions represent official policy,' the plaintiff must establish that, as a matter of state law, the official in question 'had final policymaking authority in the particular area involved.'" <u>Anthony v. The City of New York</u>, 00 Civ. 4688 (DLC), 2001 U.S. Dist. LEXIS 8923, at * 26 (S.D.N.Y. July 2, 2001) (citing <u>Jeffes v. Barnes</u>, 208 F.3d 49, 57 (2d Cir. 2000)). In this case, plaintiff must establish that Lieutenant Scott, Sergeant McGovern, and Deputy Inspector McCarthy were each final policy-makers for training purpose. However, there is simply no authority supporting the allegation that either a lieutenant, sergeant, or deputy inspector with the New York City Police Department is a final policy-maker. In fact, they are not. In <u>Kaufman v. The City of New York</u>, 87 Civ. 4492 (RO),1992 U.S. Dist. LEXIS 14049 (S.D.N.Y. Sept. 17, 1992), the Court held that decisions made by lieutenants do not constitute policy decisions for purposes of a <u>Monell</u> claim. Similarly, in <u>Anthony</u>, the Court held that a police sergeant was not a policy maker for purposes of <u>Monell</u> liability under § 1983.

Third, plaintiff's <u>Monell</u> claim must fail because the only evidence plaintiff relies on to support a claim that there exists a policy, custom or practice is plaintiff's own allegations of his criminal prosecution. Allegations amounting to "little more than a recitation of the facts surrounding his own [prosecution]" are exactly the type of conclusory statements that are insufficient to "establish a finding of an unconstitutional municipal policy." <u>Batista</u>, 2007 U.S. Dist. LEXIS 71905, at *15.

Finally, as the evidence clearly shows that plaintiff cannot sustain his malicious prosecution claim against any of the individual defendants, his <u>Monell</u> claim must be dismissed. "If there is no underlying constitutional violation by a municipal official, the municipality may not be held liable." <u>Anderson v. City of New York</u>, 99 CV 418 (JBW), 2000 U.S. Dist. LEXIS 10222, at *8 (E.D.N.Y. July 19, 2000) (citing <u>Collins v. City of Harker Heights</u>, 583 U.S. 115, 121, 112 S. Ct. 1061 (1992)); <u>Rivera v. The City of New York</u>, 392 F. Supp. 2d 644, (S.D.N.Y. 2005) (finding no <u>Monell</u> liability where there was no underlying constitutional violation). The Court must conclude that the record is barren of any evidence supporting plaintiff's claim against the City.

---

[5]     Plaintiff's sole argument that Deputy Inspector McCarthy is a "final policy-maker" is that she was the highest ranking member of the Police Department who responded to the scene of the homicide on February 12, 2001. However, that is not evidence that defendant McCarthy was a policy-maker.

## **Conclusion**

For the reasons set forth above and in defendants' initial moving papers, defendants respectfully request that the Court grant summary judgment in favor of the defendants and dismiss this action in its entirety with prejudice.

Dated: New York, New York
      May 21, 2008

MICHAEL A. CARDOZO
Corporation Counsel of the City of New York
Attorney for Defendants
100 Church Street
Room 3-212
New York, New York 10007
(212) 788-0823

By: _____
      Hillary A. Frommer (HF 9286)
      Senior Counsel