Index No.  07Civ.3644 (HB)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANTHONY MANGANIELLO,

Plaintiff,

-against-

THE CITY OF NEW YORK, et al.,

Defendants

# DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTIONS IN LIMINE

***MICHAEL A. CARDOZO***
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, N.Y.  10007*
*Of Counsel:  Mark Zuckerman*
*Tel:  (212) 4428248*
*Case No. 2007-016404*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .............................................................................. iv

POINT I

      PLAINTIFF'S EVIDENCE MUST BE LIMITED
      TO THE ISSUE OF WHETHER THERE WAS
      FRAUD IN CONNECTION WITH EVIDENCE
      PRESENTED TO THE GRAND JURY .................................................. 1

POINT II

      THE SO-CALLED MISSING BOX IS
      IRRELEVANT TO THE ISSUE OF WHETHER
      THERE WAS FRAUD IN CONNECTION WITH
      THE GRAND JURY PROCEEDINGS ....................................................... 5

POINT III

      PLAINTIFF'S TREATMENT BY DEFENDANTS
      WHEN HE WAS INITIALLY QUESTIONED BY
      THE NYPD MUST BE EXCLUDED ....................................................... 5

POINT IV

      TESTIMONY BY PLAINTIFF'S BROTHER,
      MARIO MANGANIELLO, MUST BE
      EXCLUDED PURSUANT TO F.R.E. 402, 403
      AND 408 ...................................................................................................... 6

POINT V

      EVIDENCE OF PLAINTIFF'S MOTHER'S AND
      SISTER'S PRESENCE WHEN HE WAS
      ARRESTED MUST BE EXCLUDED ....................................................... 7

POINT VI

      PLAINTIFF'S ASSERTIONS THAT WALTER
      COBB IS A DRUNK, LIAR AND THIEF MUST
      BE EXCLUDED ......................................................................................... 8

**Page**

POINT VII

       THE AUDIOTAPE OF 911 TRANSMISSIONS
       AND NYPD SPRINT REPORT MUST BE
       EXCLUDED ............................................................................................. 8

POINT VIII

       COMMENTS BY SUPREME COURT JUSTICE
       WILLIAMS IN THE CRIMINAL PRETRIAL
       PROCEEDINGS AS TO WHETHER THE
       PEOPLE COULD MAKE OUT A PRIMA FACIE
       CASE MUST BE EXCLUDED.................................................................. 9

POINT IX

       EVIDENCE OF THE AGREEMENT BETWEEN
       THE BRONX DISTRICT ATTORNEY'S OFFICE
       AND CONFIDENTIAL INFORMANT
       TERRENCE ALSTON MUST BE EXCLUDED ................................... 11

POINT X

       EVIDENCE OF WHY TERRENCE ALSTON
       AND MICHAEL BOOTH WERE NOT
       ARRESTED AND CHARGED WITH CRIMES
       MUST BE EXCLUDED.......................................................................... 13

POINT XI

       SAL MIRO MUST BE EXCLUDED AS A
       WITNESS .............................................................................................. 14

POINT XII

       "NOTORIOUS COP," WRITTEN BY DERRICK
       PARKER SHOULD BE EXCLUDED FROM
       EVIDENCE............................................................................................ 14

POINT XIII

       ANY REFERENCE OR EVIDENCE OF
       CIVILIAN COMPLAINTS, INTERNAL AFFAIRS
       INVESTIGATIONS OR PRIOR LAWSUITS
       MADE AGAINST THE DEFENDANT OFFICERS
       MUST BE EXCLUDED.......................................................................... 15

**Page**

POINT XIV

      PLAINTIFF'S EXPERT STEVE COLANGELO
      MUST BE EXCLUDED FROM TESTIFYING_ ................................... 16

POINT XV

      THE ISSUES OF LIABILITY AND DAMAGES
      SHOULD BE BIFURCATED ................................................. 18

POINT XVI

      PLAINTIFF'S EXPERT WITNESSES LATIF
      AND TINARI SHOULD BE PRECLUDED FROM
      TESTIFYING BASED ON PLAINTIFF'S
      FAILURE TO COMPLY WITH F.R.C.P. 26(A)(2) ............................... 20

POINT XVII

      PLAINTIFF'S NOTICE TO ADMIT MUST BE
      EXCLUDED ............................................................... 22

POINT XVIII

      PLAINTIFF'S DESIGNATIONS OF
      TESTIMONY DURING THE CRIMINAL COURT
      TRIAL MUST BE EXCLUDED ............................................. 23

POINT XIX

      THE PARKCHESTER EMPLOYMENT AND
      DISCIPLINARY RECORDS RELATING TO
      PLAINTIFF ARE ADMISSIBLE............................................. 24

CONCLUSION.......................................................................... 27

## TABLE OF AUTHORITIES

**Cases**                                                                                    **Pages**

Bazile v. The City of New York,
    02-7868, 2003 U.S. App. LEXIS 8439 (2d Cir. 2003) ..........................................17

Berkovich v. Hicks,
    922 F.2d 1018 (2d Cir. 1991)...............................................................................15, 16

Brogdon v. City of New Rochelle,
    200 F. Supp. 2d 411 (S.D.N.Y. 2002)....................................................................1, 2

Carter v. District of Columbia,
    795 F.2d 116 (D.C. Cir. 1986) ...................................................................................16

Cobb v. Pozzi,
    363 F.3d 89 (2d Cir. 2003)..........................................................................................12

Dallas v. Goldenberg,
    143 F. Supp. 2d 312 (S.D.N.Y. 2001).......................................................................18

Expert Electric, Inc. v. Hendrix Electric, Inc.,
    554 F.2d 1227 (2d Cir. 1977)......................................................................................12

Gree v. Manchester,
    No. 98-7007, 1999 U.S. App. LEXIS 11971 (2d Cir. 1999) ....................................17

Green v. Montgomery,
    43 F. Supp. 2d 239 (E.D.N.Y. 1999) ..........................................................................2

Guidi v. Inter-Continental Hotels Corp.,
    95 Civ. 9006 2003 U.S. Dist. LEXIS 5739 (S.D.N.Y. Apr. 8, 2003) .....................18

Huddleston v. United States,
    485 U.S. 681 (1988)...................................................................................................16

Joseph L. v. Department of Children and Families,
    225 F.R.D. 400 (D. Conn. 2005)................................................................................22

Katasaros v. Cody,
    744 F.2d 270 (2nd Cir. 1984).....................................................................................18

Lewis v. Triborough Bridge & Tunnel Auth.,
    97 Civ. 0607 2000 U.S. Dist. LEXIS 4982 (S.D.N.Y. Apr. 19, 2000) ....................18

**Cases**                                                                                              **Pages**

Lombardo v. Stone,
    99 Civ. 4603  2002 U.S. Dist. LEXIS 1268 (S.D.NY. Jan. 28, 2002)..............................15, 16

McCullock v. H.B. Fuller Co.,
    981 F.2d 656 (2d Cir. 1992)..........................................................................................17

Monroe-Trice v. Unum Employee Short-Term Disability Plan,
    2003 U.S. Dist. LEXIS 152 (S.D.N.Y. Jan. 8, 2003)..............................................20

Obilo v. City Univ. of New York,
    01 CV 5118  2003 U.S. Dist. LEXIS 2886 (E.D.N.Y. Feb. 28, 2003) .......................1

People v. Mitchell,
    82 N.Y.2d 509, 605 N.Y.S.2d 655 (1993) .................................................................2

Rivas v. Suffolk County,
    326 F. Supp. 2d 355 (E.D.N.Y. 2004) .......................................................................2

Rothstein v. Carriere,
    373 F.3d 275 (2d Cir. 2004)........................................................................................2

Ryan v. New York Tel. Co.,
    62 N.Y.2d 494 (1984) ...............................................................................................12

Savino v. City of New York,
    331 F.3d 63 (2d Cir. 2003)......................................................................................1, 2

Shaw v. City of New York, et al.,
    95 Civ. 9325  1997 U.S. Dist. LEXIS 4901 (S.D.N.Y. Apr. 15, 1997).................15

Toporoff Eng'rs, P.C. v. Fireman's Fund Ins. Co.,
    371 F.3d 105 (2d Cir. 2004).....................................................................................22

United States v. Dukagjini,
    326 F.3d 45 (2d Cir. 2002).......................................................................................17

Vitale v. Marlborough Gallery,
    93 Civ. 6276  1994 U.S. Dist. LEXIS 9006 (S.D.N.Y. July 1, 1994) .....................22

Wechsler v. Hunt Health Sys.,
    94 Civ. 8294  2003 U.S. Dist. LEXIS 13775 (S.D.N.Y. Aug. 8, 2003) .................19

Zanowic v. Ashcroft,
    52 Fed. R. Serv. 3d 702 (S.D.N.Y. 2002).................................................................20

**Cases**                                                                  **Pages**

**Statutes**

F.R.C.P. 26(a)(2) .................................................................................................17

Fed. R. Civ. P. 42(b) ............................................................................................18

N.Y. Crim. Proc. Law § 190.65 (McKinney 1993) ...............................................2

F.R.E. 402 AD 403 ...................................................................................... passim

F.R.E. 404 ..............................................................................................................8

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------- x

ANTHONY MANGANIELLO,

                                          Plaintiff,

                  -against-

THE CITY OF NEW YORK, et al.,

                                  Defendants.

---------------------------------------------------------------------- x

**DEFENDANTS'
MEMORANDUM OF LAW
IN SUPPORT OF THEIR
MOTIONS IN LIMINE**

07 Civ. 3644 (HB)

(oral argument requested)

        Defendants Det. Luis Agostini (Ret.), Det. Shawn Abate (Ret.), Det. Derek Parker (Ret.), Det. Richard Martinez (Ret.)(sued herein as "Robert Martinez"), Police Officer Alex Perez (Ret.) and Police Officer Miriam Nieves (Ret.) hereby respectfully submit their Memorandum of Law in support of their omnibus Motion in Limine.

## POINT I

**PLAINTIFF'S EVIDENCE MUST BE LIMITED TO THE ISSUE OF WHETHER THERE WAS FRAUD IN CONNECTION WITH EVIDENCE PRESENTED TO THE GRAND JURY**

        As set forth in defendants' motion for summary judgment, it is well settled that a Grand Jury indictment creates a presumption of probable cause that defeats a malicious prosecution claim. Savino v. City of New York, 331 F.3d 63 (2d Cir. 2003); Obilo v. City Univ. of New York, 01 CV 5118 (DGT), 2003 U.S. Dist. LEXIS 2886, *35 (E.D.N.Y. Feb. 28, 2003). "In New York, a grand jury is authorized to vote to indict when it finds that 'the evidence before it is legally sufficient to establish that the defendant committed such offense, ... and competent and admissible evidence before it provides reasonable cause to believe that such person committed such offense." Brogdon v. City of New Rochelle, 200 F. Supp. 2d 411, 421

(S.D.N.Y. 2002) (citing N.Y. Crim. Proc. Law § 190.65 (McKinney 1993)). The conclusive presumption of probable cause "based on a grand jury indictment is 'so strong that it may only be overcome by evidence demonstrating that the defendants engaged in fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith.'" Brogdon, 200 F. Supp. 2d at 421 (citing Bernard v. United States, 25 F.3d 98, 104 (2d Cir. 1994)); Rivas v. Suffolk County, 326 F. Supp. 2d 355, 363 (E.D.N.Y. 2004); (court holding that "in the absence of any evidence that the defendants – or any other officers or prosecutors – acted in bad faith or gave perjured evidence before the grand jury or without any other exculpable evidence, or documentary evidence of any kind, no reasonable juror could find that [the plaintiff] could overcome the presumption of probable cause that arises from the indictment"); Green v. Montgomery, 43 F. Supp. 2d 239, 245 (E.D.N.Y. 1999). Specifically, the plaintiff must "rebut [this] presumption by proving fraud, perjury, suppression of evidence or other misconduct *in the grand jury*." Rothstein v. Carriere, 373 F.3d 275, 283 (2d Cir. 2004) (emphasis added). It is plaintiff's burden to present admissible evidence to overcome this strong presumption and, if that burden is not met, the malicious prosecution claim fails. Savino v. The City of New York, 331 F.3d 63, 73 (2d Cir. 2003).

An Assistant District Attorney has "the discretion and authority to decide what evidence to present to the grand jury [and is] under no duty to present every item of arguably exculpatory evidence in seeking an indictment." Savino v. The City of New York, 331 F.2d 63, 75 (2d Cir. 2003) (rejecting malicious prosecution claim based on allegations that information not presented to Grand Jury constituted bad faith misconduct); People v. Mitchell, 82 N.Y.2d 509, 515, 605 N.Y.S.2d 655 (1993) ("the People maintain broad discretion in presenting their case to the Grand Jury and need not seek evidence favorable to the defendant or present all of

2

their evidence tending to exculpate the accused"). "The police and prosecutors cannot be said to have improperly concealed evidence every time the plaintiff is able to show that they could have done more or could have disclosed more." Gonzalez v. The City of New York, 02 Civ. 4055 (BSJ)(KNF), 2005 U.S. Dist. LEXIS 20645 (S.D.N.Y. Sept. 16, 2005).

Seven witnesses were presented to the Grand Jury by ADA Christine Scaccia. The seven witnesses were Terrence Alston, Walter Cobb, defendant Police Officer Perez, defendant Police Officer Nieves, Christopher Tartone, Police Officer Casiano and defendant Det. Agostini. The Grand Jury minutes (plaintiff's Exhibit 38 and defendants' Exhibit C) are provided herewith to the Court for the Court's inspection. Plaintiff has listed numerous witnesses in the Joint Pretrial Order who did not testify before the Grand Jury, including plaintiff's brother Mario Manganiello, Richard Huello, Sal Miro, Rolf Ohle, Matias Colon, Police Officer Eric Rodriguez and Police Officer Jaime Ortiz. Based on plaintiff's witness list and his opposition to defendant's motion for summary judgment, it appears that plaintiff will attempt to relitigate the criminal trial at which he was acquitted, instead of focusing on the issue of whether there was fraud or other actionable wrongdoing during the Grand Jury proceedings. To the extent that the witnesses that plaintiff examines are asked questions unrelated to the allegation of fraud in connection with the Grand Jury, they are simply irrelevant and barred by F.R.E. 402 and 403. Plaintiff must not be allowed to obfuscate the limited issue that is being tried in this case by eliciting evidence beyond what is relevant to whether there was fraud in connection with the Grand Jury presentation. Additionally, questions that elicit evidence as to whether additional testimony could have been presented to the Grand Jury should not be allowed, as ADA Scaccia was certainly afforded broad discretion in her presentation and need

not present arguable exculpable evidence. Allowing this type of evidence will be prejudicial to defendants and confuse and mislead the jury.

During depositions in this matter, plaintiff's counsel frequently posed questions to witnesses seeking to elicit arguable exculpatory evidence that was not presented to the Grand Jury by ADA Scaccia or whether additional evidence could have been presented. Plaintiff's counsel must not be allowed to ask these types of questions at trial. It will give the Jury the impression that ADA Scaccia was duty bound to present arguable exculpatory or additional evidence to the Grand Jury when, as seen above, she was not. This trial must not become a contest as to the discretion that ADA Scaccia used in presenting the case to the Grand Jury, but rather must focus on whether there was actionable misconduct by the police officer defendants in connection therewith.

Likewise, the reasons why plaintiff was acquitted at the criminal trial are irrelevant and evidence on such must be excluded. Again, the focus must be on the Grand Jury presentation, not why plaintiff was subsequently acquitted at a trial years later.

Furthermore, as the Monell claim against the City of New York has been dismissed, any mention of the City as a prior defendant and/or a responsible party for plaintiff's allegations must not be allowed. Likewise, plaintiff should not be allowed to mention that the four officers that were dismissed from the case upon summary judgment, McGovern, Scott, Phipps and McCarthy, were previously defendants in this lawsuit. Again, the trial must be limited to whether there was fraud by any police officer defendant in connection with ADA Scaccia's Grand Jury presentation.

Likewise, plaintiff proposes to call as witnesses Parkchester Sgt. Rolf Ohle (Ret.), Richard Huello (Verizon worker) and Parkchester Officer Matias Colon (Ret.). None of these

witnesses testified before the Grand Jury so there could not be fraud presented to the Grand Jury in connection with their testimony. As such, they should be excluded from testifying in accordance with F.R.E. 402 and 403.

## POINT II

**THE SO-CALLED MISSING BOX IS IRRELEVANT TO THE ISSUE OF WHETHER THERE WAS FRAUD IN CONNECTION WITH THE GRAND JURY PROCEEDINGS**

As the Court is aware, Detective Agostini's box containing the case file concerning the subject homicide went missing before the criminal trial of plaintiff. However, there is no dispute that the box only went missing <u>after</u> the Grand Jury presentation and the Grand Jury's indictment. There is no dispute that ADA Scaccia had full access to the entire contents of the box that subsequently went missing when she presented the case to the Grand Jury. As such, the fact that the box later went missing is irrelevant in accordance with F.R.E. 402 to the issue of whether there was fraud in connection with the Grand Jury presentation by ADA Scaccia. Eliciting evidence of the missing box would al so be unduly prejudicial to defendants under F.R.E. 403 since it has no bearing on the issue that the jury must decide at the upcoming trial, fraud in connection with the Grand Jury presentation. It would also confuse and mislead the jury. As such, evidence of same must be excluded under F.R.E. 402 and 403.

## POINT III

**PLAINTIFF'S TREATMENT BY DEFENDANTS WHEN HE WAS INITIALLY QUESTIONED BY THE NYPD MUST BE EXCLUDED**

It is undisputed that the evidence in dispute in this case was presented by ADA Scaccia to the Grand Jury in April, 2001. It is also undisputed that plaintiff was questioned by

defendant Agostini the same day Albert Acosta was murdered on February 12, 2001 at the 43rd

Precinct stationhouse.  Plaintiff must be precluded from presenting evidence as to his allegations

of improper verbal treatment by NYPD detectives during the questioning, his being placed into a

holding cell and/or medical treatment he requested/received when he allegedly complained of

heart palpatations and shortness of breath during the questioning.  The only claim in this case for

the jury to decide is malicious prosecution.  As there was a Grand Jury Indictment, the focus of

this case must be what occurred in April, 2001, when the evidence was presented by ADA

Scaccia to the Grand Jury.  As there is no false arrest claim and the questioning of plaintiff took

place months before the Grand Jury indictment, how plaintiff was treated when he was

questioned on February 12, 2001 has no relevance, and is prejudicial, confusing and misleading.

Similarly, any testimony by plaintiff regarding how his brother and father may have been treated

at the stationhouse on February 12, 2001 is not relevant.  Simply, there is no claim for which the

testimony is relevant and thus the proposed testimony must be excluded under F.R.E. 402 and

403.

   Additionally, evidence of damage to plaintiff's vehicle as a result of a search

pursuant to a valid search warrant, including photographs in plaintiff's Exhibit 15, must be

excluded under F.R.E. 402 and 403.  Such evidence would be inflammatory and is irrelevant to

the issue that is being tried.

## POINT IV

### TESTIMONY BY PLAINTIFF'S BROTHER, MARIO MANGANIELLO, MUST BE EXCLUDED PURSUANT TO F.R.E. 402, 403 AND 408

   Plaintiff has listed his brother, Mario Manganiello, as a witness he intends to call

at trial.  Mario Manganiello must be excluded as  a witness because he has no knowledge as to

whether or not there was fraud in connection with ADA Scaccia's presentation to the Grand Jury in April, 2001. When plaintiff was being questioned at the 43rd Precinct following the homicide, Mario Manganiello, with his father, came to the police station. He subsequently contacted the Manganiello family attorney and the questioning of plaintiff was stopped.

Thereafter, Mario Manganiello and his father drove to the location where plaintiff's car was parked. He was stopped and brought to the precinct stationhouse for questioning. Mario Manganiello brought his own civil action against the City of New York and various police officers arising out of the events that day. His lawsuit, which was settled, made allegations of improper detention and mistreatment by the police. Simply, Mario Manganiello asserts that he has no knowledge of whether there was fraud in connection with ADA Scaccia's Grand Jury presentation, as he has disclaimed all knowledge of who was responsible for the Acosta homicide. His testimony, therefore, which purports to discuss his treatment by the police that day is irrelevant, overly prejudicial, confusing and misleading. Such testimony is thus barred by F.R.E. 402 and 403. Additionally, evidence of the settlement of the civil suit with the City is obviously barred by Rule 408, Federal Rules of Evidence.

## POINT V

### EVIDENCE OF PLAINTIFF'S MOTHER'S AND SISTER'S PRESENCE WHEN HE WAS ARRESTED MUST BE EXCLUDED

It is expected that plaintiff will attempt to testify that when he was arrested in April, 2001, that his mother and sister were in the car that he was driving. He will attempt to testify to this fact for the shock value that he wants to create that he was arrested in front of his elderly mother and sister. Aside from the fact that this is not a false arrest case, evidence of whether his mother and sister were present at the time of his arrest is irrelevant, prejudicial and inflammatory. Obviously, evidence of same has no bearing on whether there was fraud by

defendants in connection with ADA Scaccia's Grand Jury presentation. Likewise, there is nothing improper about arresting plaintiff in the presence of his mother and sister and plaintiff can recover no damage as a result thereof. As such, any mention of his mother's and sister's presence at the time of plaintiff's arrest must be excluded under F.R.E. 402 and 403.

## POINT VI

### PLAINTIFF'S ASSERTIONS THAT WALTER COBB IS A DRUNK, LIAR AND THIEF MUST BE EXCLUDED

Plaintiff testified at deposition that the witness who saw him leaving the scene of the murder shortly thereafter, Walter Cobb (a Parkchester maintenance man), is a drunk, thief and liar. Walter Cobb is not on either party's witness list. Under F.R.E. 404, plaintiff's unfounded opinions of Walter Cobb's character are not admissible. As such, plaintiff must not be allowed to testify to same.

## POINT VII

### THE AUDIOTAPE OF 911 TRANSMISSIONS AND NYPD SPRINT REPORT MUST BE EXCLUDED

Plaintiff has listed a series of 911 telephone call recordings as his proposed Exhibit 47 and an NYPD Sprint report as Exhibit 11. Upon information and belief, plaintiff will attempt to use such evidence to attempt to demonstrate that he heard the identity of the victim from his radio when he arrived at the scene of the homicide, instead of telling defendant Officer Nieves that he knew that the victim was his (plaintiff's) partner (Acosta) even before seeing the body. Although not presented to the Grand Jury, plaintiff proposes to play for the jury a series of 911 audiotapes that he contends show that the identity of the victim was transmitted over a radio

he had access to before he arrived. He also proposes to admit the NYPD Sprint report that he contends reflects the same.

With respect to the audiotape, it is inaudible and any attempted playing of it in front of the jury will be confusing and misleading as it is impossible to decipher. It should therefore be excluded under F.R.E. 402 and 403.

With respect to the Sprint Report, this is a very technical document that requires someone qualified to explain it. Plaintiff has never developed in this case or listed any witness with the technical understanding of Sprint reports in general or this particular Sprint report that would allow the document to be understood by the jury. Without such testimony, it would be prejudicial, confusing and misleading. As such, it should be excluded as well under F.R.E. 402 and 403.

## POINT VIII

### COMMENTS BY SUPREME COURT JUSTICE WILLIAMS IN THE CRIMINAL PRETRIAL PROCEEDINGS AS TO WHETHER THE PEOPLE COULD MAKE OUT A PRIMA FACIE CASE MUST BE EXCLUDED

Plaintiff intends to offer, as Exhibit 45, a decision of Acting Supreme Court Justice Patricia Anne Williams in certain of the pretrial criminal proceedings to the effect that if the Grand Jury testimony of confidential informant Terrence Alston was not taken into consideration, the People had not made out a prima facie case against Anthony Manganiello for murder. Justice Williams further ordered in her decision that the People were to provide what the agreement was with confidential informant Alston so that she could consider whether the Grand Jury indictment was legally sufficient. Plaintiff is not attempting to introduce the

9

subsequent decision by Justice Williams where she found that the Grand Jury Indictment was legally sufficient after her review of the agreement with Alston. (Exhibit A hereto)

What a criminal court judge's initial decision was on the issue of whether the People could make out a prima facie case in the criminal proceedings is not evidence, and even if it was, would be irrelevant, confusing, misleading and overly prejudicial in this case. Obviously, the issue of whether there was fraud in connection with ADA Scaccia's presentation to the Grand Jury is for this jury to decide, not what a criminal court judge thought as to whether the People could establish a prima facie case in certain of the pretrial proceedings in the criminal matter when she eventually found that the Grand Jury Indictment <u>was</u> <u>sufficient</u>. Justice Williams did not even pass on whether there was fraud in connection therewith.

The Court should also be aware that at the end of the criminal court trial, plaintiff's criminal defense attorney moved for a directed verdict on the basis that there was a lack of evidence to convict. Justice Martin Marcus, who presided over the trial, denied the motion by defense counsel, and found on the record that, based on the preponderance of the evidence standard that is to be applied in circumstantial cases upon a motion for a directed verdict, that the People had provided sufficient evidence such that the jury could convict. As such, Justice Marcus submitted the case to the jury to decide plaintiff's guilt or innocence. (Exhibit B hereto)

The ruling of Justice Williams in the criminal court proceedings is not evidence in accordance with F.R.E. 401 and any presentation of what Judge Williams found, at the very least, would be prejudicial and confusing to this jury in light of the fact it was not even a final decision on the sufficiency of the Grand Jury indictment and that the trial judge found that the determination of guilt or innocence was for the jury to decide. The jury will hear proper

evidence related to whether there was fraud by defendants in connection with ADA Scaccia's presentation of evidence to the Grand Jury and will be able to reach their own conclusion. As such, what Judge Williams thought, as set forth in plaintiff's proposed Exhibit 45 must be excluded under Rules 401, 402 and 403, Federal Rules of Evidence.

## POINT IX

### EVIDENCE OF THE AGREEMENT BETWEEN THE BRONX DISTRICT ATTORNEY'S OFFICE AND CONFIDENTIAL INFORMANT TERRENCE ALSTON MUST BE EXCLUDED

Plaintiff's counsel asked witnesses during depositions, and presumably intends to ask the same question of witnesses at trial, whether the agreement between confidential informant Terrence Alston and the Bronx District Attorney's Office was disclosed to the Grand Jury. Plaintiff's counsel also intends to introduce into evidence what the nature of the agreement was. For a number of reasons, this evidence must be excluded.

This exact issue was decided by Justice Williams in the criminal proceedings. She expressly found, upon plaintiff's challenge to the Grand Jury Indictment, that the People were not required to provide the fact or terms of the agreement between the Bronx District Attorney's Office and confidential informant Alston to the Grand Jury. "Under New York law, collateral estoppel 'precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior proceeding and decided against that party or those in privity, whether or not tribunals or causes of action are the same.'" Cobb v. Pozzi, 363 F.3d 89, 113 (2d Cir. 2003)(quoting Ryan v. New York Tel. Co., 62 N.Y.2d 494, 500 (1984)). "New York courts will invoke the doctrine of collateral estoppel 'if the issue in the second action is identical to an issue which was raised, necessarily decided and material in the first action, and the [party against whom preclusion is sought] had a full and fair opportunity to litigate the issue in the earlier

action.'" <u>Cobb</u>, 363 F.3d at 113 (quoting <u>Parker v. Blauvelt Volunteer Fire Co.</u>, 93 N.Y.2d 343, 349 (1999)). The purpose of issue preclusion is primarily to avoid repetitive litigation. <u>Expert Electric, Inc. v. Hendrix Electric, Inc.</u>, 554 F.2d 1227, 1232-33 (2d Cir. 1977)). Plaintiff is attempting to relitigate the issue of whether the agreement between Alston and the Bronx District Attorney's Office had to be disclosed to the Grand Jury. This issue was decided against plaintiff and should not be revisited once again as claim/issue preclusion should be applied by the Court.

There are further reasons why this agreement should not be admitted. The evidence is undisputed that the agreement was made between the Bronx District Attorney's Office and Terrence Alston, not any of the police officer defendants. Such agreements are completely legal and are not unusual in any way. Evidence regarding what the agreement between Alston and the Bronx District Attorney was will give the impression that the defendant police officers can be liable for an agreement they indisputably did not make or that such agreements are illegal. Such evidence would therefore be irrelevant, highly prejudicial and misleading and confusing to a jury that is charged with the responsibility of determining the officers' liability only. The Bronx District Attorney's Office enjoys absolute immunity and is not a defendant in this matter. As such, such evidence cannot be used against the defendant officers pursuant to F.R.E. 402 and 403.

Plaintiff has listed Bronx ADA Mary D'Andrea as a witness. Since, upon information and belief, ADA D'Andrea is being called by plaintiff solely to present testimony on the agreement reached with Terrence Alston, her testimony should be excluded for the reasons set forth herein.

## POINT X

## EVIDENCE OF WHY TERRENCE ALSTON AND MICHAEL BOOTH WERE NOT ARRESTED AND CHARGED WITH CRIMES MUST BE EXCLUDED

Plaintiff's counsel asked a number of police witnesses during depositions why Terrence Alston (the confidential informant) and Michael Booth were not arrested for certain crimes at the time that they were interviewed by certain of the defendants and/or the Bronx District Attorney's Office. In the case of Alston, plaintiff intends to elicit evidence on why Alston was not arrested for certain crimes in connection with an alleged agreement with plaintiff to attempt to murder Albert Acosta. In the case of Michael Booth, plaintiff intends to elicit information on why Booth was not arrested in connection with his alleged possession of illegal gambling paraphanalia at the time he was interviewed by certain of the defendants.

The reason for the exclusion of the above evidence to be offered by plaintiff is that such evidence is irrelevant to whether there was fraud in connection with ADA Scaccia's presentation to the Grand Jury and would be highly prejudicial and confusing and misleading to a jury. The issue to be decided in this case is whether the defendant officers suborned perjury or acted fraudulently in connection with the development of these witnesses' testimony. In the case of Michael Booth, he did not even testify before the Grand Jury. Most importantly, if this evidence is allowed, it would require mini-trials as to why factually and legally these persons were not arrested and/or charged with crimes. This trial is about whether or not there was fraud by any defendant in connection with ADA Scaccia's presentation of evidence to the Grand Jury. This trial is not about whether Terrence Alston and Michael Booth committed crimes that they should have been arrested and/or prosecuted for. Allowing this evidence to come in would

require full presentations as to why these persons were not arrested/charged, evidence that would take this trial far afield and would cause meaningless confusion to the jury. As such, this evidence is barred by F.R.E. 402 and 403.

## POINT XI

### SAL MIRO MUST BE EXCLUDED AS A WITNESS

Plaintiff has listed Sal Miro as a trial witness. Although he was not been deposed, Mr. Miro submitted a declaration (Exhibit C hereto) in connection with the summary judgment proceedings in this case that he never told certain NYPD detectives that plaintiff had .22 caliber gun, the type of gun that was used to murder Acosta. This statement directly conflicts with two DD5s (written police reports) prepared by NYPD detectives that reflect that Miro twice said that plaintiff had told him that he did carry a .22 caliber weapon. Mr. Miro did not testify before the Grand Jury. As such, his testimony had no effect on the indictment that the Grand Jury ually handed down. Plaintiff therefore suffered no damage by anything in connection with Sal Miro's statements or lack thereof to NYPD detectives. As such, his testimony is barred by F.R.E. 402 and 403.

## POINT XII

### "NOTORIOUS COP," WRITTEN BY DERRICK PARKER SHOULD BE EXCLUDED FROM EVIDENCE

Plaintiff's proposed Exhibit 31, "Notorious Cop," is a book written by defendant Det. Derrick Parker (Ret.) after he left the NYPD. It is the "inside story of the Tupac, Biggie, and Jam Master Jay Investigations." It deals exclusively with investigations of "hip hop crime." Obviously, a book about "hip hop crime" has no relevance to the subject homicide investigation and introduction of the book into evidence would require the trial of this matter to turn to "hip

hop crime," an area that is far afield. As such, Detective Parker's book must be excluded from evidence under Rules 402 and 403 of the Federal Rules of Evidence.

## POINT XIII

### ANY REFERENCE OR EVIDENCE OF CIVILIAN COMPLAINTS, INTERNAL AFFAIRS INVESTIGATIONS OR PRIOR LAWSUITS MADE AGAINST THE DEFENDANT OFFICERS MUST BE EXCLUDED

Plaintiff should be precluded from mentioning any Internal Affairs Bureau (hereinafter "IAB") investigations, complaints, or evidence of prior civil rights lawsuits against any of the defendants under Federal Rules of Evidence 403 and 404(b).

Any attempt by plaintiff to question defendants about prior complaints in order to prove an alleged propensity to violate plaintiff's constitutional rights is irrelevant and, therefore, inadmissible under Rule 404(b). See Shaw v. City of New York, et al., 95 Civ. 9325 (AJP), U.S. Dist. LEXIS 4901 (S.D.N.Y. Apr. 15, 1997) (finding that plaintiff did not establish that IAB report showed motive, opportunity, intent and it was inadmissible under Rule 404(b)); Lombardo v. Stone, 99 Civ. 4603 (SAS), 2002 U.S.Dist. LEXIS 1268, at *9 (S.D.NY. Jan. 28, 2002) (holding that disciplinary records are inadmissible); and Berkovich v. Hicks, 922 F.2d 1018 (2d Cir. 1991) (upholding the exclusion at trial of all references to the defendant police officers' history of prior civilian complaints pursuant to 403 and 404(b) of the Federal Rules of Evidence). Similarly, evidence of unrelated lawsuits against any of the defendants in this matter is inadmissible and should be excluded. In accordance with Rule 404(b), plaintiff is not permitted to introduce evidence of prior, and certainly not of subsequent, lawsuits against defendants in order to prove an alleged propensity to violate an individual's constitutional rights.

See Berkovich, 922 F.2d 1018; see also Carter v. District of Columbia, 795 F.2d 116, 123 (D.C. Cir. 1986).

Finally, even if any of the IAB complaints or unrelated lawsuits were probative of some factual dispute in the present case, whatever value they might have is substantially outweighed by the prejudicial effect of parading such innuendo before the jury. See Huddleston v. United States, 485 U.S. 681, 686 (1988) ("The [offering party] may not parade before the jury a litany of potentially prejudicial similar acts that have been established or connected to the defendant only by unsubstantiated innuendo"). Indeed, Rule 403 provides that relevant evidence "may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." F.R.E. 403. The fact that evidence of any prior complaints or lawsuits will prejudice a jury cannot be doubted, and the probative value of such information is limited at best. Consequently, any information regarding these prior complaints and lawsuits is inadmissible pursuant to Rule 403. See Lombardo, 2002 U.S.Dist. LEXIS 1267, at *11-12 ("Rule 403 prohibits the introduction of similar act evidence, even when offered for a proper purpose, where its prejudicial effect, tendency to confuse the jury or to delay the trial outweighs its probative value."). As such, plaintiff should be precluded from mentioning any evidence regarding prior lawsuits, IAB investigations, or other complaints made against defendants.

## POINT XIV

### PLAINTIFF'S EXPERT STEVE COLANGELO MUST BE EXCLUDED FROM TESTIFYING

A proposed expert must have "particular expertise" in the field he is testifying about in order to be qualified. See Bazile v. The City of New York, 02-7868, 2003 U.S. App. LEXIS 8439 at *8 (2d Cir. 2003) (proffered expert had no "particular experience that would

qualify him" to assess the issue he was called to testify about, and as a result, his testimony was properly excluded). "When an expert is no longer applying his extensive experience and a reliable methodology, Daubert teaches that this proffered expert's testimony should be excluded." United States v. Dukagjini, 326 F.3d 45, 58 (2d Cir. 2002); see also Fulfree v. Manchester, No. 98-7007, 1999 U.S. App. LEXIS 11971 at *6 (2d Cir. 1999) (finding no error in the lower court's determination to preclude an expert from testifying because his qualifications as an expert on the pertinent issues in the case were "debatable"); McCullock v. H.B. Fuller Co., 981 F.2d 656, 657 (2d Cir. 1992)(Court upheld disqualification of an expert witness when the expert lacked training or experience in the particular issue in dispute).

　　　　Plaintiff proffers Mr. Colangelo as an expert on gunshot residue. He, if allowed to testify, will apparently conclude that because no gunshot residue was found on plaintiff's person following the homicide of Albert Acosta, that he could not have committed the murder.[1] Having prepared no report in accordance with the Federal Rule of Civil Procedure, defendants can only speculate on what methodology, if any, Mr. Colangelo would use to support his opinion. However, what is certain is that Mr. Colangelo is not qualified to discuss gunshot residue as an expert. His curriculum vitae, annexed hereto as Exhibit D, reflects that his sole experience in the NYPD, his only employer, was as a member of the Ballistics Unit. Obviously, an expertise in ballistics does not establish any expertise whatsoever in gunshot residue. Having failed to prepare a report, provide a methodology for his conclusion that can be tested, and

---

[1] Mr. Colangelo has never prepared a report for this case in violation of F.R.C.P. 26(a)(2) and his testimony should be precluded from testifying on this basis. The three sentence "report" that he did issue does not comply with Rule 26(a)(2)'s requirements. (See Exhibit F hereto) Defendants' only knowledge of what Mr. Colangelo proposes to testify on is the criminal court proceedings where Mr. Colangelo testified as well.

establish his qualifications in anything other than ballistics, Mr. Colangelo must be excluded

under Rule 26(a)(2), Federal Rules of Civil Procedure and the foregoing authorities.

## POINT XV

## THE ISSUES OF LIABILITY AND DAMAGES
## SHOULD BE BIFURCATED

Fed. R. Civ. P. 42(b) allows the Court to bifurcate a trial where doing so would be

"conducive to expedition and economy." The decision to bifurcate is "firmly within the

discretion of the trial court." <u>Katasaros v. Cody</u>, 744 F.2d 270, 278 (2nd Cir. 1984). When

considering the issue of bifurcation of a trial into a liability phase and a damages phase, "courts

use a case-by-case approach and consider myriad factors in determining whether bifurcation is

appropriate…Those factors include, but are not limited to[:] (1) whether the issues are

significantly different from one another; (2) whether the issues are to be tried before a jury or to

the court; (3) whether the posture of discovery on the issues favors a single trial or bifurcation;

whether the documentary and testimonial evidence on the issues overlap; and (5) whether the

party opposing bifurcation will be prejudiced if it is granted." <u>Guidi v. Inter-Continental Hotels</u>

<u>Corp.</u>, 95 Civ. 9006 (LAP), 2003 U.S. Dist. LEXIS 5739 at *2 (S.D.N.Y. Apr. 8, 2003)(citing

<u>Dallas v. Goldenberg</u>, 143 F. Supp. 2d 312, 315 (S.D.N.Y. 2001); <u>Lewis v. Triborough Bridge &</u>

<u>Tunnel Auth.</u>, 97 Civ. 0607 (PKL), 2000 U.S. Dist. LEXIS 4982, at *4-5 (S.D.N.Y. Apr. 19,

2000)(finding bifurcation appropriate considering all factors). Moreover, in this determination,

the moving party bears the burden of establishing that separate trials are necessary to prevent

prejudice or confusion and serve the ends of justice. <u>Wechsler v. Hunt Health Sys.</u>, 94 Civ. 8294

(PKL), 2003 U.S. Dist. LEXIS 13775, *19-20 (S.D.N.Y. Aug. 8, 2003)(internal citations

omitted).

The prejudice to defendants if the trial was not bifurcated would be substantial. Plaintiff is planning to call as expert witnesses a licensed psychiatrist and economist. Taken in sum, these experts would apparently testify that plaintiff suffers from post-traumatic stress disorder resulting from the criminal prosecution, is and will continue to be unable to function and has economic losses greater than $1,000,000. The presentation of this evidence, in the absence of a finding of liability, is prejudicial to defendants in that plaintiff's alleged injuries are being presented before there is any finding of wrongdoing by defendants of any type. As such, bifurcation is appropriate to avoid the prejudice that would otherwise result from the presentation of plaintiff's alleged injuries before a finding of liability.

In fact, the issues that would be tried during the liability and damages phases are significantly different from one another. The issue to be considered during the liability phase is whether plaintiff was maliciously prosecuted, which will include evidence of whether the defendant officers initiated the criminal proceedings, whether there was fraud perpetrated by the defendants in connection with the presentation to the Grand Jury by ADA Scaccia and whether there was malice by defendants. Damage evidence, to the contrary, would include presentations by plaintiff's experts as to alleged emotional issues that plaintiff has suffered and alleged economic losses. The issues between liability and damages could not be any more different and such supports bifurcation.

Both issues would be tried to a jury, but perhaps the same jury could hear the damages evidence if liability is found.

Discovery is complete as to both issues. As such, this factor should not be determinative on the issue of bifurcation.

The evidence and testimony does not overlap.  Plaintiff's damages case consists of plaintiff's testimony as to what effect the criminal prosecution has had on his life, the emotional illness that he allegedly suffers from and alleged economic losses.  None of this evidence would be heard with respect to liability.  As such, this factor supports bifurcation as well.

There would be no prejudice to plaintiff if the trial was bifurcated.

### POINT XVI

**PLAINTIFF'S EXPERT WITNESSES LATIF AND TINARI SHOULD BE PRECLUDED FROM TESTIFYING BASED ON PLAINTIFF'S FAILURE TO COMPLY WITH F.R.C.P. 26(A)(2)**

Pursuant to Rule 26(a)(2), expert witnesses are individuals who are "retained or specially employed to provide expert testimony in the case."  Rule 26(a)(2) specifically sets forth disclosure requirements for expert witnesses.  While courts have noted that the expert disclosure requirement does not apply to treating physicians to the extent that they seek to testify about the course of treatment rendered to the plaintiff, courts have been equally emphatic that this exception does not permit a treating doctor to offer expert opinions at the time of trial.  Monroe-Trice v. Unum Employee Short-Term Disability Plan, 2003 U.S. Dist. LEXIS 152 (S.D.N.Y. Jan. 8, 2003) (precluding expert testimony where treating physician did not proffer expert report, permitting testimony only as to his evaluation and treatment of plaintiff, and his condition and prognosis at time of treatment); accord Zanowic v. Ashcroft, 52 Fed. R. Serv. 3d 702 (S.D.N.Y. 2002) (denying motion to preclude the testimony from doctor, but noting the limitations on the use and extent of treating physician's testimony at trial absent expert report).

Plaintiff never complied with Rule 26(a)(2) with respect to Dr. Rehana Latif.  She has been plaintiff's treating psychiatrist since the incident that is the subject of this lawsuit.  As

Dr. Latif was deposed as plaintiff's treating psychiatrist in this matter, she can testify as to her treatment of plaintiff. However, what plaintiff is attempting to do is to seek over $1,000,000 in economic losses based on a prognosis that plaintiff will be unable to work again due to his suffering from post-traumatic stress disorder. No expert report has ever been prepared for this case by Dr. Latif setting forth her opinions and bases therefore on at least two critical assumptions necessary for the damages claim that plaintiff wishes to make: that the prosecution of plaintiff caused his emotional injury and that his prognosis is that he will likely never work again.[2] The problem is compounded in this case by the fact that plaintiff's economist, Dr. Frank Tinari, relies on said assumptions for his $1,207,121 damage calculation when plaintiff has proffered no expert to opine on the issues of causation and future prognosis in compliance with Rule 26(a)(2), Federal Rules of Civil Procedure. Having failed to comply with the Federal Rules of Civil Procedure in failing to have an expert report prepared on two critical assumptions that would have to be proven in order to prove the alleged $1,207,121 in economic losses, Dr. Tinari's damage calculation is worthless and neither Dr. Ratif nor Tinari should be allowed to testify as experts.

Dr. Tinari's proposed testimony must also be excluded because it is speculative. New York law, "proscribes the recovery of uncertain and speculative damages applies where the fact of damages is uncertain ..." Toporoff Eng'rs, P.C. v. Fireman's Fund Ins. Co., 371 F.3d 105, 109 (2d Cir. 2004)(citations omitted); Vitale v. Marlborough Gallery, 93 Civ. 6276 (PKL) 1994

---

[2] Dr. Latif did provide certain information to the Social Security Administration that eventually resulted in plaintiff receiving social security benefits. As that entire process would be irrelevant, prejudicial, misleading and confusing, any mention of that process and the results thereof must be excluded under F.R.E. 402 and 403. It simply has no bearing on the issues to be decided by this jury. Additionally, plaintiff has never produced the entire Social Security Administration file to defendants to inspect. As, upon information and belief, plaintiff's Exhibit 56 contains documents in connection with this process, this portion of Exhibit 56 must be excluded.

U.S. Dist. LEXIS 9006, at *21 (S.D.N.Y. July 1, 1994)  Dr. Tinari's opinion that plaintiff will never work again or would have maintained his employment at Parkchester for essentially the remainder of his working life, but for this incident, is entirely speculative and without support. As seen, Dr. Latif has never issued a report concluding that plaintiff's emotional state was caused by the prosecution at issue in this case nor has issued an expert opinion in a report as to plaintiff's prognosis.  Additionally, Dr. Tinari has never even analyzed plaintiff's disciplinary records at Parkchester to be able to state with any certainty that plaintiff would have been able to maintain his employment there for such an extended period of time.

## POINT XVII

### PLAINTIFF'S NOTICE TO ADMIT MUST BE EXCLUDED

Plaintiff's Exhibit 48 is a Notice to Admit that defendants objected to on timeliness grounds.  Upon serving the Notice to Admit upon defendants on or about March 10, 3, defendants' counsel timely objected to same on timeliness grounds.  (Exhibit E hereto). Joseph L. v. Department of Children and Families, 225 F.R.D. 400 (D. Conn. 2005).  Plaintiff never attempted to compel responses thereto, but instead now wants the requests contained therein deemed admitted.  Without having moved to compel answers thereto, plaintiff must not be allowed to have the requests deemed admitted since a legitimate objection was raised and never pursued by plaintiff.  Essentially, plaintiff waived his right to dispute the legitimate objection defendants made.

Additionally, in any event, Requests 4-10 are barred by F.R.E. 402 and 403, as they do not bear on what was presented by ADA Scaccia to the Grand Jury in April, 2001.

## POINT XVIII

**PLAINTIFF'S DESIGNATIONS OF TESTIMONY DURING THE CRIMINAL COURT TRIAL MUST BE EXCLUDED**

Shortly before the JPTO was due, plaintiff provided defendants a list of designations from the criminal trial transcript that plaintiff proposes to read into evidence at the upcoming trial. Defendants first object on the grounds that such testimony is hearsay under F.R.E. 801, et. seq. for which there is no exception that makes it admissible. Although plaintiff has not yet identified a hearsay exception that makes portions of the criminal trial transcript admissible, other than for impeachment, certainly F.R.E. 804(b)(1), Former Testimony, does not provide a basis for admission of the portions of the criminal court transcript that plaintiff wishes to read into evidence as counsel for the defendant police officers did not have the opportunity to cross-examine the witnesses during the criminal court proceedings.

Additionally, the portions of the criminal court transcript that plaintiff wishes to read into evidence are barred by F.R.E. 402 and 403. Plaintiff's criminal trial took place over three years after the Grand Jury Indictment. As such, the issue in this case is not what evidence existed in July, 2004, but rather what existed in April, 2001. As such, for this reason as well, plaintiff should not be allowed to read into evidence the portions of the criminal trial transcript that he has designated.

23

## POINT XIX

## THE PARKCHESTER EMPLOYMENT AND DISCIPLINARY RECORDS RELATING TO PLAINTIFF ARE ADMISSIBLE

Defendants' Exhibit A is a business record of Parkchester of April 17, 2004, where plaintiff worked, and contains a complaint by fellow security officer about plaintiff's "very drastic mood swings."

Defendants' Exhibit WWWWWWWW is a business record of Parkchester concerning a complaint by fellow security officer that plaintiff punched him in face and a disciplinary warning given to him by Parkchester Chief of Security Dennis Cowan, who will testify for defendants, based on "sometimes uncontrolled behavior."

Defendants' Exhibit XXXXXXXX is a complaint by the victim, Albert Acosta, dated October 11, 1996 that because of plaintiff's temper, he "refuse(d) to work with someone who (is) a danger to myself and the patrol unit."

Defendants' Exhibit YYYYYYYY is a memo by one of plaintiffs' superiors at Parkchester, Sgt. Pilos of October 14, 1996 describing plaintiff's overreactions in certain job related duties.

Defendants' Exhibit ZZZZZZZZ is a memorandum of Parkchester Security Chief Dennis Cowan of November 30, 1994 warning plaintiff that carrying a pistol at Parkchester would result in his termination.

Defendants' Exhibit AAAAAAAAA is a complaint by a supervisor at Parkchester of the improper temper of plaintiff and insubordination that resulted in discipline of a suspension of one day on January 14, 1999.

Defendants' Exhibit BBBBBBBBB is a complaint by a supervisor at Parkchester of attempted intimidation and insubordination that resulted in a 5 day suspension and 6 months of probation on December 22, 1992.

Defendants' Exhibits CCCCCCCCC, DDDDDDDDD and EEEEEEEEE are statements by plaintiff and Acosta concerning a physical altercation with another officer where plaintiff complains that "Acosta grabbed (him) in a bear hug from behind," as well as discipline by Parkchester of a suspension of two days on March 29, 1999. Plaintiff therein complains that he was hit by an Officer Hicks several more times as a result thereof.

Defendants' Exhibit FFFFFFFFF is a Parkchester "Corrective Interview" of January 25, 1991, wherein plaintiff was given a final warning for having unauthorized persons in the "area car."

Defendants' Exhibit GGGGGGGGG is an order of Parkchester Chief of Security Dennis Cowan of December 22, 1992 placing plaintiff on probation for overall performance.

Defendants' Exhibit HHHHHHHHH is a statement by Sgt. Johnson of October 11, 1996, kept as a business record of Parkchester complaining of plaintiff's dangerous "uncontrollable temper and aggressive attitude."

The foregoing exhibits are admissible for several reasons. First, the foregoing exhibits demonstrate[3] that plaintiff and Acosta did not get along and had physical altercations, at the very least calling into credibility and refuting plaintiff's statements made during his deposition that he is expected to testify to at trial that he and Acosta had a good working

---

[3] There was another fight between plaintiff and Acosta that although not reported to Parkchester supervisors but was revealed in an interview of Parkchester Officer Harry Plaza by NYPD detectives.

relationship, socialized together, were friendly and that he was distraught at the scene of the homicide as a result of Acosta's death and thereafter.

The foregoing physical altercations involving plaintiff and exhibits reflecting plaintiff's temper, as well as Chief Cowan's expected testimony concerning plaintiff's temper while employed at Parkchester, make such evidence admissible under F.R.E. 404(b) for plaintiff's "motive, opportunity, intent, preparation, plan, knowledge, identify, or absence of mistake or accident...." After all, it was the People's theory in the criminal proceedings that plaintiff and Acosta had bad blood between them, went to the basement Carriage Room at 1700 Metropolitan Ave. where plaintiff expected no one else to be, were prepared to fight and plaintiff lost his temper again and shot Acosta. Plaintiff must not be allowed to get away with arguing to the jury that he had a friendly and cordial relationship with Acosta, when just the opposite is true.

The foregoing also affects damages. Dr. Tinari's economic report reflects alleged economic losses based on continuous employment by Parkchester for the rest of plaintiff's working life. However, the disciplinary history of plaintiff would call into doubt whether that is true. It is also relevant, therefore, for that reason.

## CONCLUSION

For the foregoing reasons, defendants' motion in limine should be granted in its entirety.

Dated: New York, New York
June 5, 2008

MICHAEL A. CARDOZO
Corporation Counsel of the
City of New York
Attorney for Defendants
100 Church Street
New York, N.Y. 10007
Tel: (212) 442-8248
Case No. 2007-016404

By: _____
MARK ZUCKERMAN
AMY OKEREKE