opB                              Proceedings

Practically speaking, we're barely getting started until 2:30 any way, and by the time we get --

THE COURT: All right. All right. We'll do it Thursday.

MS. SCACCIA: Your Honor, how about just to save further delay, I'll rest on the record here and then I'll approach and I'll say People rest.

(Whereupon, there was a pause in the proceedings.)

MR. RICHMAN: Your Honor, I most respectfully move for a directed verdict of the Court based on the evidence in this particular case. In fact, I would even go so far as based upon the non-evidence in this case.

There's no indication whatsoever to perceive that a crime was committed and the defendant may have committed the crime.

Viewing the evidence most favorable to the People, let's look at it entirely from their point of view. What here in this case points in any direction that the defendant, Anthony Manganiello, shot and killed Mr. Acosta? What? A mere fact that even circumstantially

cp3                           Proceedings

of such a tangential nature, they argued strongly that he came out of the building in the approximate time, heard a gunshot.

Then we heard from Mr. Ohle that Mr. Cobb himself thought that the gunshot came from outside, that's clear.

Now, then we have a situation where they tried to argue and lean heavily on the fact that how did he know that it was his partner that was down there? Never went out over the air at any time that it was a Parkchester police officer.

We know that that's not the truth, because it came in on the tapes, you heard that. You heard the situation that he talked about Parkchester police officer.

You also see that which is marked Defendant's A in evidence. The first thing says "Security officer down. Shot in the head."

You also have the information from Mr. Colon that he, who was dispatching for the Parkchester police, say that there are other officers with him. And we know that the other officers were with him at the time the call was made to 911. So the first persons who knew about it were Parkchester police.

cp3                     Proceedings

1           One does not have to infer or argue,
2  that's what came out from the prosecution's case.
3  So how then is there any indication of criminal
4  action on the part of Mr. Manganiello? What here,
5  what one scintilla, what one thing that connects
6  him to this particular crime? A footprint,
7  fingerprint, a hair fiber, anything? Anything?
8           A fair appraisal of the facts here
9  clearly comes in the conclusion that there's
10 insufficient evidence to go to the jury and
11 consider the elements and all the facts in this
12 particular case.
13          Can you state, through any
14 preponderance of the evidence, that even, even a
15 mere preponderance of the evidence, that it was
16 this -- there's evidence here that Mr. Manganiello
17 did it? And the answer would have to come out no.
18          This is the strongest case I've ever
19 seen of non-guilt ever established in a
20 prosecution's case.
21          Forget about the negative inferences.
22 Forget about the evidence that's been lost. Don't
23 even mention that. That comes later on the
24 People's own case, that which they were willing
25 and able to introduce.

       There is nothing here to establish any criminal conduct on the part of Mr. Manganiello. Nothing. Where do we go with that? Can we trust it to a jury? Can we trust this fact to a particular case. I would submit that it would be highly improper to do so.

       MS. SCACCIA: Your Honor, I believe the People have met their burden in putting a prima facie case before this jury. I believe all questions that remain are questions of fact for which this jury should be able to decide.

       THE COURT: The standard for viewing circumstantial evidence cases is not whether there is a preponderance of the evidence, it's not whether there is proof beyond a reasonable doubt, it's not whether -- it's not for me to take the place of the jury in deciding whether the only inference that can be drawn from the evidence is the inference of guilt.

       The standard is whether any valid line of reasoning and permissible inferences can lead rational persons to the conclusion reached by the fact finder on the basis of the evidence at trial viewed in the light most favorable to the People.

       And while you have arguments to present

to the jury concerning the credibility, for example, of Mr. Cobb concerning whether he heard shots coming from inside or coming from outside, while you have arguments to present to the jury about whether or not they should believe the testimony of the two witnesses who say that they heard him solicit or were solicited by him for where he could purchase a gun, while you have arguments to present to the jury about whether he had reason to know or to believe that the person in the basement, the officer down was his partner, while there are arguments about all of those things, leaving the questions of credibility to the jury and leaving to them the alternate question of whether or not the only inference that could be drawn from all this evidence is the inference of guilt, I find that the evidence does meet the standards set forth by the Court of Appeals, that there is a valid line of reasoning. The inferences that could lead a rational person to the conclusion reached by the fact finder based on the evidence viewed in light most favorable to the People.

On that standard, I find that the motion to dismiss is denied.