UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
ANTHONY MANGANIELLO,

                  Plaintiff,        CIVIL ACTION No.: 07 CV 3644 (HB)

   - Against-

THE CITY OF NEW YORK, et. al.

                Defendants
-----------------------------------------------------------------X

## DECLARATION OF COUNSEL

Pursuant to 28 USC §1746, I hereby declare, under penalty of perjury under the laws of the United States of that the following is true and correct.

1. My name is Michael H. Joseph.

2. I am an attorney duly licensed to practice law in the State of New York, and before the United States District Court for the Southern District of New York.

3. I represent the plaintiff in the above captioned matter, as such I am fully familiar with the facts and circumstances of this case.

4. I offer this Declaration in Reply to defendants' opposition to Plaintiff's Counter claim.

5. I attach hereto true copies of the following exhibits:

    - The DD5 concerning Hicks statement is attached as Exhibit 1.
    - The decision of Judge Marcus concerning the evidence at issue here is attached as Exhibit 2.

6. For the reasons more fully stated in the attached Memorandum of Law, the relief sought in Plaintiff's Motion In Limine should be granted.

Dated: White Plains, New York
       June 11, 2008                      Respectfully submitted,

                                      OSORIO & ASSOCIATES, LLC
                     BY:   _____
                                      Michael H. Joseph, Esq. (MJ8838)
                                      184 Martine Avenue
                                      White Plains, New York 10601
                                      (914) 761-3168

| | | | | | | |
|---|---|---|---|---|---|---|
| COMPLAINT - FOLLOW UP INFORMATIONAL 13-081A (Rev. 4-89)-31 | Crime: HOMICIDE | Pct. 43 | OCCB No. | Complaint No. 2412 | Date of This Report 02-16-01 | PAGE ___ OF ___ PAGE |
| Date Assigned 02-12-01 | Case No. 624 | Unit Reporting: BRONX HOMICIDE TASK FORCE | | | Follow-Up No. | |

Name - Last, First, M.I.: FOR ALBERT ACOSTA

[Form fields for perpetrator/arrested person descriptions - mostly blank]

- Arrested | Last Name, First, M.I. | Address | Apt. No | Res. Pct.
- Race | Date of Birth | Age | Height | Weight | Eye Color | Hair Color | Hair Length | Facial Hair | NYSID No.
- Eyeglasses / Sunglasses | Clothing Description | Scars, Marks, M.O., Etc. (Continue In "Details")

[Box for Detective/Latent Fingerprint Officer - interview/phone/photos checkboxes, all blank]

Crime Scene Visited: ☐ Yes  ☒ No
Crime Scene Photos: ☐ Yes  ☐ No

Case "No Results," Check Appropriate Box and State Justification in Details:
Improper Referral ☐  C-2 Inaccurate Facts ☐  C-3 No Evidence / Can't ID ☐  C-4 Uncooperative Complainant ☐  C-5 "Leads" Exhausted ☐

---

INVESTIGATION: HOMICIDE
SUBJECT: INTERVIEW OF ERIC HICKS
PARKCHESTER SECURITY OFFICER

On 02/16/01, the undersigned was present with Det Agostini of the 43rd Precinct Detectives at Parkchester Security Office located at 62 Metropolitan Oval, roll call office. At this time an interview was conducted with ERIC HICKS, and he relates the following in sum and Substance:

He has worked for Parkchester Security as an SPO for the last 6 years and would work the evening 4X12 tour and he just recently went to work from 6pm to 2am. was off on Monday. But he states he was very good friends with Albert Acosta both on duty and socially off duty. They had just spent last Saturday evening together at a house warming for Albert. He states Albert had been working days now 8X4 for approximately (6) months. He knows AL to be quick tempered. He also had his own incident with Officer Mansaniello in th...

2

d/lr        PROCEEDINGS

THE CLERK: Number one on the calendar, case on trial. All party are present with the exception of the jury.

THE COURT: Miss Scaccia, you don't know how you want to proceed at this point. I understand you gave a packet of material to Mr. Richman, you gave a copy of it to me.

MS. SCACCIA: Yeah, I wanted you to see -- I don't know if Mr. Richman, since we left off yesterday when I informed everyone that Sergeant Ohle was going to be one of the witnesses and that he was actually present for an altercation that officer Manganiello and Acosta were involved in. The altercation was between Hicks and Manganiello. Acosta grabbed Manganiello from behind kind of in a bear hug, Hicks continued to hit him. I made inquiry as to whether there were any reports generated by Parkchester regarding defendant's employment record because I did not have any. Counsel said he did not have any. We had some question as to then subpoenaing the defendant's employment record. This morning I had conversations with counsel they said there was nothing in their information that indicated any kind of altercation between Manganiello and Hicks. I had asked Sergeant

Ohle to bring any reports that did pertain to the incident. He did that. When we broke for lunch he was here with them. I made cops for Miss Hill at the start of our lunch hour and I wanted the Court to know what counsel was given because I think I made it clear yesterday that I had plans to elicit testimony through the sergeant about this prior incident.

MR. RICHMAN: Your Honor, not only is this rather remote in time and place but the circumstances don't seem to be directed as against --

THE COURT: I'm sorry this is March of '99, right?

MR. RICHMAN: Two years before the event. Two years. And the participation of Mr. Acosta even if following what occurred is of such a minimal nature as to not to rise to anything other than more source of confusion for the jury to draw any proper confusion. There's no basis to form any believe that there was bad blood between Acosta and Manganiello certainly not based on these reports.

MS. SCACCIA: Your Honor, I'd like to call counsel's attention to the one report that is in Mr. Acosta's hand saying that he refuses to work

with the defendant. That was that even predates the incident because he felt that the defendant was a danger to himself and other security officers.

MR. RICHMAN: Which report was that? What year?

MS. SCACCIA: I believe it was '96.

MR. RICHMAN: 1996. How remote is that, Your Honor. How far do we go back for that thing?

THE COURT: Well, if I understand this correctly, regardless of what is in here there are a variety of things referred to in the documents you provided me. The immediate question relates to this incident with Officer Hicks.

MS. SCACCIA: Yes.

THE COURT: That is what you intend to elicit --

MS. SCACCIA: Through this witness, yes.

THE COURT: Through this witness who is an eyewitness to it?

MS. SCACCIA: Yes.

THE COURT: So let's limit our discussion to that question.

MR. RICHMAN: Most respectfully submit and I believe I have and I submit that it's really too remote, to tangential an event to create

something of a nature in which the prosecution can arguably rely upon as being bad blood between the parties. To suggest that to a jury as the basis for a homicide, there's no hostile words, there's no difficult situations. It is apparently the person who one should be angry with would be Hicks, if that were the case. It's two years ago. Tremendous amount of water has passed under the bridge since that time and as such I would most respectfully point out to you that it would be highly inappropriate and improper to allow this to go before a jury as a basis or at least as a motive.

      MS. SCACCIA: Your Honor, I think the testimony is relevant in nature. It establishes the type of interaction that these two gentlemen had predating the homicide.

      Counsel can make as many arguments as he want about the strength of the People's motive or what his thoughts are as to the view of the People's motive but I think it's become clear that these two people did not get along together and I think one of -- he's saying that he should have been mad at Hicks well it seems to me from the reports and the accounts that I'm getting is that officer Acosta is the one that prevented officer

228

d/lr         PROCEEDINGS

Manganiello from even attempt to go fight back but rather he was restraining him while Officer Hicks hits him.

Now, he may have feelings as to whether or not that caused the defendant to be angry with Officer Acosta but think it is appropriate and I think it is relevant and I think since this witness is an eyewitness to that event that that testimony should be admissible.

MR. RICHMAN: This is pure speculation. Not only is it pure speculation but this witness told the Detective the following: He did not observe any problems between the suspect, and the victim.

THE COURT: You're reading from some different report?

MR. RICHMAN: Yes, here's a report contemporaneously with the event underlined in yellow.

THE COURT: This report is about the incident with Hicks is that what you're saying?

MR. RICHMAN: No.

THE COURT: No.

MR. RICHMAN: That report is a report to the police on the date of the event February 12th.

THE COURT:  This event?  Yeah, yeah.

MR. RICHMAN:  And here we have the officer who purportedly viewed this event and he did not perceive that there was any difficulty between the deceased and Mr. Manganiello and yet he is being asked to testify on the speculations of the part of the prosecution on a motive created entirely out of smoke by the prosecution that this is the basis for the alleged homicide.

THE COURT:  I do have a concern about the remoteness of this incident. And singling this out as a motive for the crime I'm also concerned because I went back and looked at my notes and I looked at the transcript of the hearing when we talked about both Sandoval and Ventimiglia.  You made mention of the Hicks incident then and as I looked at my notes and the transcript, as I recall it was your position at the time that there were things -- you had nothing by way of Ventimiglia other than the purchase of the gun and you had nothing as to Sandoval and you left open the door -- left open the question as to whether should the defendant open the door to incidents like the Hicks incident that you would want to cross examine him about that but not based on simply credibility but

d/lr        PROCEEDINGS

in response to some testimony that he might give. It would as I said open the door to this kind of cross examination and as I read this report or these reports, it suggests not what I heard from you off the record yesterday, not just what I heard from you off the record yesterday about this being an incident in which Hicks was attacking the defendant but there are accounts -- I'm not sure what the witness you intend to call Ohle would say about this incident but there are descriptions about the incident in this report that make the defendant out to be the aggressor. What would make it more Ventimiglia than just evidence of motive it doesn't establish a bad act or even a criminal act on the defendant's behalf, so I'm troubled by both those grounds by allowing the testimony in now.' Understanding still that if the defendant testifies and gives testimony, you can go in if opens the door to this to this cross examination on this subject. I'm not sure what's changed now that would lead you to make this application.

MS. SCACCIA: What changes now is I have Acosta being involved in the Hicks Manganiello incident which until I spoke to Sergeant Ohle yesterday I did not know he was present and if I

was to put Officer Hicks on the stand, we'd see what his version -- Officer Hicks has a DD5. According to officer Manganiello Officer Hicks is the aggressor.

THE COURT: Right.

MS. SCACCIA: According to what Sergeant Ohle say is I was present in the locker room. I don't know what precipitated the defendant when I walked in I see Manganiello in a bear hug by Acosta and Hicks is hitting Manganiello, that is not attributing a bad act to the defendant but that is giving some sort of dynamic to the relationship of the deceased and the defendant.

THE COURT:  It's three years old.

MS. SCACCIA: I understand.

THE COURT:  I think we should go back to where we were.

MS. SCACCIA: Go back to where we were?

THE COURT: To where we were. If the defendant's testimony opens the door to this so be it. But to suggest that an incident three years before establishes a motive with nothing in between that you're offering I think is as Mr. Richman says it's too speculative.

MS. SCACCIA: Then before we bring the