UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ANTHONY MANGANIELLO,

                              Plaintiff,        CIVIL ACTION No.: 07 CV 3644(HB)

  - Against-

THE CITY OF NEW YORK, et. Al
                          DEFENDANTS
------------------------------------------------------------X

## PLAINTIFF'S MEMORANDUM OF LAW IN REPLY

Plaintiff offers this Memorandum of Law in Reply to Defendants' opposition to Plaintiff's Motion in Limine.

## DISCUSSION

Contrary to defendants' contentions, the documents they proffer as exhibits do not establish that Plaintiff had a strained relationship with Albert Acosta on February 12, 2001. Even if there was some marginal value to these exhibits they are not probative on the issues involved in this case because the defendants were not aware of the Parkchester records when they initiated and commenced the prosecution.

Defendants' claim that Plaintiff will put his relationship with Acosta in issue is nonsensical. In Plaintiff's deposition, he answered the questions that were asked of him. Here, Plaintiff does not claim that he didn't kill Acosta because they were the best of friends, rather he asserts that he did not kill Acosta and there was no probable cause to believe he did.

Defendants Exhibit Z7 should be excluded because it is rank hearsay and evidence only of a rumor. The document attributes a statement to Sal Miro that he "heard" that Plaintiff and Mr. Acosta had a beef. However, Mr. Miro will testify at trial, and numerous statements have been attributed to him that were never made. Nevertheless, even if Mr. Miro did make the statement, it would still be inadmissible because the statement is pure hearsay, ie, he heard it. Here, Mr.

Miro swore that he never spoke with Plaintiff, as such, it is not an admission. Therefore, a hearsay statement that Sal Miro heard a rumor, which in all likelihood he never made should not be admitted.

Defendants' Exhibit C9, D9, E9 are Parkchester memos concerning an incident which occurred in March of 1999, almost two years prior to the events at issue here. This involved an incident where Plaintiff sat down on a bench, was elbowed by officer Hicks, words were exchanged and Hicks punched Plaintiff in the jaw. Plaintiff was the victim and was punched in the face by Hicks, as a result he received stitches. Mr. Acosta broke up the altercation by grabbing Plaintiff from behind and along with other officers separated the two. Mr. Acosta was not otherwise involved in the incident. Both Plaintiff and Hicks were suspended for two days. There was no finding that Plaintiff was the aggressor, rather he was suspended for being involved in the altercation. Even Mr. Hicks stated that he figured that he and Plaintiff had to work together and he and Plaintiff let bygones be bygones after the incident. (Ex. 1). The remoteness of the incidents and Mr. Acosta's tangential involvement shows that they are not relevant to motive. As a result of this fight, if Plaintiff had a motive to harm anyone, it would have been Hicks, who injured him badly enough to need stitches. However, Mr. Hicks was never harmed. Further, Mr. Hicks, Mr. Acosta and Plaintiff continued to work together for two years without any reported incidents or problems. As such, there is no probative value to these exhibits and they are an attempt to introduce negative character traits of the Plaintiff to cause prejudice.

Defendants' Exhibit R8 is likewise speculative because Officer Plaza states that a shoving match occurred, but he does not state when. The only indication is that a mere shoving match occurred sometime after the Hicks incident, which was in 1999. A shoving match that may have

allegedly occurred about two years prior to the date of Mr. Acosta's death has no probative value to establish that Plaintiff had a motive to kill Mr. Acosta on February 12, 2001. Under Rule 404(b), evidence of other acts may be admitted when it shows that the other act is similar enough and close enough in time to be relevant to the matter in issue, the evidence is sufficient to support a jury finding that the party committed the similar act and the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice. See United States v. Prevatte, 16 F.3d 767 (7th Cir. 1994). To determine the probative value of prior bad act evidence, the Court must consider the remoteness in time of the other act and the degree of resemblance to the act charged. United States v. Varoudakis, 233 F.3d 113, 119 (1st Cir. 2000). Here, a shoving match is not even remotely similar to a murder. Further to assert that a shoving match that occurred two years prior is a motive for murder is so speculative that it is of no probative value and is likely to cause confusion.

    While defendants claim that Chief Cowan was aware of the relationship between Plaintiff and Mr. Acosta, there is no evidence attached to defendants' papers which in any way establishes that Chief Cowan has any relevant knowledge.

    Defendants' Exhibit A is a memo dated April 17, 1994, almost seven years prior to the events at issue here. It is written by a co-worker (not Mr. Acosta) complaining that Plaintiff gave him a cold shoulder after Plaintiff's time card was torn up. Further, the co-worker complains that Plaintiff had a mood swing following an event where Plaintiff was taking pictures and the co-worker decided to give him the middle finger. The co-worker admitted that he acted in an unprofessional manner. Mr. Acosta was not involved in the matter. As such, it has no relevance to the issues in this case.

Defendants' Exhibit W7 is a civilian complaint form filed against Plaintiff by a non-parkchester employee dated October 17, 1996, almost five years prior to the events at issue here. As such, it is not a business record because it was not created by a parkchester employee. Therefore, it is hearsay within hearsay and barred by F.R.E. 804. Further, a portion of the exhibit which is created by Chief Cowan, did not make any finding that Plaintiff punched anyone, but merely found that he "over reatacted to the situation".

Defendants' Exhibit X8 is a memo dated October 10, 1996, almost five years prior to the incidents in question here, prepared by Mr. Acosta. Mr. Acosta stated his observations concerning the complaint in exhibit W8. Mr. Acosta confirms that the Plaintiff did not hit the cab driver and that the plaintiff banged on the window of a cab, which almost hit him as he was crossing a street. While Mr. Acosta expressed he did not want to work with Plaintiff, it was not because of any personal animosity that arose between Plaintiff and Acosta. Further, this document is not a business record because it is not Parkchester business, rather, it is Mr. Acosta's personal opinion (five years prior to the incident herein). Therefore, it is hearsay within hearsay and barred by F.R.E. 804. Further, while Mr. Acosta simply felt (in 1996) that Plaintiff was unprofessional, Plaintiff was not aware that Acosta had made this statement. As such, a document which Plaintiff does not know about cannot have any bearing on his state of mind. To qualify under F.R.E. 807 the document must guarantees of trustworthiness and be probative, as such this document does not qualify.

Defendants' Exhibit Y8 is a memo dated October 14, 1996, almost five years prior to the incidents in question here, which states there were instances where Plaintiff _may_ have overreacted.

Defendants' Exhibit Z8 is a memo dated November 30, 1994, almost seven years prior to the incidents at issue here. This memo acknowledges that Mr. Manganiello advised his superiors that he had a pistol permit. Plaintiff was also employed part time as a State Parks Police Officer. The memo merely directs him not to bring a firearm onto Parkchester property. There is no evidence that he ever did so either before or after this memo. As such, any insinuation that he did is mere innuendo.

Defendants' Exhibit A9 is a Parkchester Disciplinary Report, dated November 19 1998, almost three years prior to the incidents at issue here. This memo arises out of Plaintiff improperly parking his car. It reflects that Plaintiff wanted to speak with his supervisor, who simply wanted to ignore him. The supervisor acknowledges that in trying to apologize Plaintiff spoke in a loud voice and was allegedly disrespectful. Mr. Acosta was not involved in this incident at all.

Defendants' Exhibit B9 is a disciplinary report dated December 10, 1992, almost nine years prior to the events at issue here out of an incident in which it was alleged that Plaintiff was disrespectful. This was a he said, she said situation in which Plaintiff complained he did not receive back up on a call. The alleged intimidation was speaking with other employees to find out what they saw. Mr. Acosta was not involved in this incident.

Defendants' Exhibit F9 is dated January 25, 1991, over ten years prior to the events at issue here. Plaintiff while on duty gave a ride to a fellow officer and was warned not to have people in a car while he was on patrol.

Defendants' Exhibit G9 is from December, 1992 over eight years prior to the events at issue here and there is not evidence that Plaintiff was involved in any violent altercation or that

5

Acosta was involved in any way.

Defendants' Exhibit H9 was created almost five years prior to the incidents at issue here and it is largely illegible. It contains a summary of a statement given by a non-parkchester employee, as such it is not a business record, thus hearsay. Further Mr. Acosta was not involved in this report. These documents should all be excluded because they are not probative of any issue in this litigation, they are extremely prejudicial and an attempt to introduce propensity and character evidence.

None of these documents are admissible. For bad act evidence to be admissible under 404(b), the evidence must have a proper purpose under Rule 404(b); it must be relevant under Rule 402; its probative value must outweigh its potential for unfair prejudicial effect under Rule 403. U.S. v. Moore, 375 F.3d 259 (3d Cir. 2004).

Here, all of these documents are extremely remote, ranging from nine years before the incidents at question to two years before the incident. Relevancy is not an inherent characteristic of any item of evidence but exists only as a relation between an item of evidence and a matter properly provable in the case. Huddleston v. United States, 485 U.S. 681, 686; 108 S. Ct. 1496, 1500; 99 L. Ed. 2d 771; (1988) citing, Advisory Committee's Notes on Fed. Rule Evid. 401, 28 U. S. C. App., p. 688. Only three of the incidents even remotely involved Mr. Acosta and occurred two and five years prior to the incident respectively. The remoteness makes these documents completely irrelevant to establish any motive and there is no similarity between the incidents that would even arguably establish a pattern.

Further, defendants are barred by collateral estoppel from arguing that this evidence establishes motive. In the criminal trial, the Court held that the evidence of an altercation years

prior was so remote that to consider it as motive, would be speculative. (Ex. 2, p. 231). As such, they are barred by collateral estoppel because there has already been a determination that this evidence is not sufficient to establish motive and defendants were in privity with the District Attorney's office who had a full and fair opportunity to litigate this issue.

      Finally, they are hearsay because they are not business records. To qualify as a business record a document must be kept in the course of a regularly conducted business activity, and it must be the regular practice of that business activity to make the memorandum, report, record or data compilation. F.R.E. 803(6). Records which are likely to be biased and partisan are not admissible as business records. Hoffman v. Palmer, 129 F.2d 976 (2d Cir 1942). The words 'regular course of business, have always included the concept that the circumstances must be such as to safeguard against any crude bias on the part of persons making the records or supply the information and against any great likelihood that the records may have been fabricated by interested persons. Id. at 983. Here, these documents are nothing more than personal gripes with an evident bias on the part of the people making them. As such, they are not made in the ordinary course of business. The business of Parkchester security was to provide Security, not document personal issues.

## CONCLUSION

      For the foregoing reasons, the exhibits should be excluded from evidence and defense counsel should be precluded from making any comment or examining Plaintiff about their contents.

Dated: White Plains, New York

June 11, 2008

                        Respectfully submitted,

                        OSORIO & ASSOCIATES, LLC

BY: _____
                        Michael H. Joseph, Esq. (MJ8838)
                        184 Martine Avenue
                        White Plains, New York 10601
                        (914) 761-3168