UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

ANTHONY MANGANIELLO,

                                                 Plaintiff,

-against-

DET. LUIS AGOSTINI; DET. SHAWN ABATE,

                                                 Defendants.

------------------------------------------------------------------------x

**DECLARATION OF**
**AMY N. OKEREKE**

07 Civ. 3644 (HB)

       **AMY N. OKEREKE**, an attorney duly admitted to practice in the Southern District of New York, declares under penalty of perjury and pursuant to 28 U.S.C. § 1746, that the following is true and correct:

       1. I am an Assistant Corporation Counsel in the office of Michael A. Cardozo, Corporation Counsel of the City of New York, attorney for defendants Luis Agostini and Shawn Abate.

       2. I submit this declaration in support of defendants Agostini and Abate's motion for judgment as a matter of law on plaintiff's malicious prosecution claim as against them pursuant to Rule 50 of the Federal Rules of Civil Procedure, or for qualified immunity, or a new trial pursuant to Fed. R. Civ. P. 59(a), or for an order reducing the jury award in this action pursuant to Fed. R. Civ. P. Rule 59(e). I am familiar with the facts and circumstances stated herein based upon personal knowledge, the books and records of the City of New York, conversations with its agents and employees, and all prior pleadings and proceedings related to the case cited herein.

3. The civil trial in this matter began on Tuesday, June 17, 2008 and concluded on Tuesday, June 24, 2008. The only claim in the case is malicious prosecution. Therefore, the sole issue before the jury was whether the plaintiff had met his burden of proving all of the elements required to succeed on a malicious prosecution claim. A copy of the trial transcript is annexed hereto as Exhibit "A."

4. The facts elicited at trial establish that on the morning of February 12, 2001, Police Officers Miriam Nieves and Alex Perez were on patrol in their police car when they received a radio transmission of an officer shot. (Tr. 495, 506) The radio transmission directed the officers to respond to 1700 Metropolitan Avenue, which is a residential apartment building in the Parkchester Housing Complex in the Bronx. (Tr. 123) The radio transmission did not identify the shooting victim. (Tr. 507, 534)

5. When Officers Nieves and Perez arrived at the scene they entered the basement of the building. There was a body in a blue uniform laying face down on the floor. (Tr. 535) Officer Nieves subsequently learned that the victim of the shooting was a Parkchester Security Guard. (Tr. 508) When Officer Perez left the basement, he spoke to a Parkchester porter named Walter Cobb. (Tr. 519) Mr. Cobb told Officer Perez that he had been working outside the building when he heard a gunshot. (Tr. 519) A few minutes after that, Mr. Cobb saw the plaintiff exit the basement. (Tr. 537)

6. Officer Perez referred Mr. Cobb to detectives on the scene. (Tr. 545) As Officer Nieves was leaving the basement, she saw plaintiff Anthony Manganiello in the hallway outside the room where the victim lay mortally wounded. (Tr. 498) Plaintiff was assigned to work the same 8 x 4 shift as the victim. (Tr. 115, 117) Officer Nieves observed that the plaintiff was disheveled, pale, nervous, sweaty and that he had white dust on his uniform. (Tr.

494, 509) The plaintiff told Nieves that it was his partner in there. Officer Nieves thought plaintiff's statement was odd because she didn't think anybody knew the identity of the victim at that point. (Tr. 509) Officers Nieves and Perez were at the scene approximately 20 minutes and then went back on patrol. (Tr. 510)

7. That same morning, Detectives Shawn Abate and Richard Martinez from the 43rd Detective Squad also responded to the scene. Detective Abate had the area around the crime scene taped off so that the crime scene wouldn't be contaminated. (Tr. 372-373) Detective Abate also canvassed the building for anyone who might have information about the shooting and performed other investigatory tasks. (Tr. 373-374) Detective Martinez interviewed Mr. Cobb. (Tr. 401) Another detective from the 43rd Detective Squad, Luis Agostini, responded to Jacobi Hospital and was told by a doctor that the victim Albert Acosta had been shot in the back of the head and was likely to die. (Tr. 285)

8. On returning to the 43rd Precinct, Detectives Agostini and Abate interviewed plaintiff who had been brought to the precinct by uniformed police officers. (Tr. 375) Plaintiff appeared disheveled and had a white stain on his sleeve which appeared similar to the plaster dust on the walls of the basement. (Tr. 376-377) Plaintiff was not responsive to their questions. (Tr. 375-376) Shortly thereafter, plaintiff's lawyer telephoned and asked the detectives to stop questioning the plaintiff. (Tr. 291-293) That evening Mr. Acosta died and Detective Agostini was assigned as the lead detective on the case. (Tr. 282)

9. Plaintiff was placed in a cell at the precinct pending conferral with the Bronx District Attorney's Office. In a homicide case, a police officer cannot effect an arrest absent the authority of the Bronx District Attorney. (Tr. 380) The District Attorney's Office deferred

authorizing plaintiff's arrest that day. (Tr. 608)  Plaintiff testified that he was released the next morning at 5am. (Tr. 70)

10. The investigation into the Acosta homicide continued for approximately two months. Over twenty detectives participated in the investigation. (Tr. 284)  The information compiled by the detectives was memorialized in documents know as complaint follow-up reports or DD5s. (Tr. 283)  Detective Agostini spoke with Assistant District Attorney (ADA) Christine Scaccia at least once a week to update her on the status of the investigation. (Tr. 307-308, 319)

11. During the investigation, additional information and witnesses came to light. One of these witnesses was Terrence Alston. Mr. Alston informed Detective Agostini that plaintiff had approached him in late August 2000 and had asked him to kill another security guard. (Tr. 310)

12. Another witness by the name of Chris Tartone told Detective Agostini that the plaintiff had come into his pizza parlor and asked whether anyone there was selling a gun. (Tr. 318). Mr. Tartone referred Detective Agnostini to a friend of his by the name of Mike Booth for more information. Detective Agostini spoke with Mr. Booth who said that the plaintiff had approached him to buy a gun. (Tr. 273)

13. ADA Scaccia made the decision to put the case into the grand jury based upon her interviews with witnesses who came to light during the police investigation. (Tr. 621-622) In April 2001, the Bronx District Attorney's Office authorized plaintiff's arrest. (Tr. 361, 379) ADA Scaccia had access to Detective Agostini's entire homicide case folder throughout the grand jury stages of the case. (Tr. 612-614)

14. ADA Scaccia interviewed a number of witnesses and decided to present the following seven witnesses to the grand jury: Walter Cobb, Terrence Alston, Chris Tartone,

Police Officers Miriam Nieves, Alex Perez, Jose Casiano and Detective Agostini. (Tr. 647, 652, Grand Jury Minutes, Annexed Hereto as Exhibit "B" )  Detectives Abate and Martinez did not testify before the grand jury. (Tr. 382, 434)  Plaintiff did not testify before the grand jury or ask that witnesses be presented on his behalf. (Tr. 656) The grand jury voted to indict the plaintiff on charges of murder 2nd degree, manslaughter 1st degree and criminal possession of a weapon. (Tr. 656, Exhibit B)

15. Plaintiff spent ten days in jail before he was released on bail.  (Tr. 77) Approximately three years after plaintiff had been indicted, ADA Scaccia and Detective Agostini discovered that the police homicide folder had been misplaced. (Tr. 616-617) The criminal trial took place in 2004.  ADA Scaccia pursued the prosecution through trial.  The Bronx District Attorney's Office made the decision to prosecute plaintiff.  (Tr. 657)  None of the officer defendants urged or pressured the District Attorney's Office to prosecute plaintiff.  (Tr. 657) Plaintiff was acquitted after trial. (Tr. 639)

16. Upon the conclusion of the trial in the instant matter on Tuesday, June 24, 2008, the jury returned a defense verdict as to defendants Nieves, Martinez and Perez. The jury returned a verdict *against* defendants Abate and Agostini in the respective amounts of $142,626.10 and $1,283,634.90. (Jury Verdict Sheet, Annexed Hereto as Exhibit "C") The jury also decided to award punitive damages. The punitive damage phase of the trial is scheduled for August 5, 2008.

17. During the trial, certain exhibits were introduced into evidence.  Annexed hereto as Exhibit "D" is a copy of Criminal Court Complaint of the City of New York County of the Bronx The People of the State of New York v. Anthony Manganiello, Docket Number 2001BX024949.

18. Annexed hereto as Exhibit "E" is a copy of Court's Jury Charge in the matter of <u>Anthony Manganiello v. Luis Agostini, et al.</u>, 07 Civ. 3644 (HB).

19. Annexed hereto as Exhibit "F" is a copy of Defendants' Trial Exhibit "F8," a DD5 dated February 14, 2001 regarding an Interview of Terrence Alston.

20. Annexed hereto as Exhibit "G" is a copy of Plaintiff's Trial Exhibit "22," a DD5 dated February 15, 2001 regarding an Interview of Terrence Alston.

21. Annexed hereto as Exhibit "H" is a copy of Defendants' Trial Exhibit "L3," a DD5 dated February 27, 2001 regarding an Interview of Chris Tartone.

22. Annexed hereto as Exhibit "I" is a copy of Defendants' Trial Exhibit "I3," a DD5 dated February 27, 2001 regarding a Re-Interview of Sal Miro.

23. Annexed hereto as Exhibit "J" is copy of Plaintiff's Trial Exhibit "1," a DD5 dated February 12, 2001 regarding an Interview of Walter Cobb.

24. Annexed hereto as Exhibit "K" is a copy of Plaintiff's Trial Exhibit "5," a DD5 dated February 12, 2001 regarding an Interview of Police Officer Perez.

25. Annexed hereto as Exhibit "L" is a copy of Plaintiff's Trial Exhibit "39," a DD5 dated March 1, 2001 regarding an Interview of Police Officer Nieves.

Dated:      New York, New York
            July 21, 2008

                           MICHAEL A. CARDOZO
                           Corporation Counsel of
                             the City of New York
                           *Attorney for Defendants Luis Agostini and*
                           *Shawn Abate*
                           100 Church Street, Room 3-137
                           New York, New York  10007
                           (212) 788-9790

By: _____
                           Amy N. Okereke
                           Assistant Corporation Counsel
                           Special Federal Litigation Division

## DECLARATION OF SERVICE BY MAIL

I, AMY N. OKEREKE, declare, pursuant to 28 U.S.C. § 1746, under penalty of perjury that on July 21, 2008, I served the annexed NOTICE OF MOTION AND DECLARATION OF AMY N. OKEREKE upon the following counsel of record by depositing a copy of same, enclosed in a first class postpaid properly addressed wrapper, in a post office depository under the exclusive care and custody of the United States Postal Service, within the State of New York, directed to said counsel of record at the address set forth below, being the address designated by plaintiff for that purpose:

    Michael Joseph, Esq.
    Osorio & Associates, LLC
    184 Marine Avenue
    White Plains, New York 10601

Dated:    New York, New York
           July 21, 2008

                                            AMY N. OKEREKE
                                            ASSISTANT CORPORATION COUNSEL

Index No. 07 Civ. 3644 (HB)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANTHONY MANGANIELLO,

Plaintiff,

-against-

DET. LUIS AGOSTINI; DET. SHAWN ABATE,

Defendants.

**NOTICE OF MOTION AND DECLARATION OF AMY N. OKEREKE**

*MICHAEL A. CARDOZO*
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, New York 10007*

*Of Counsel: Amy N. Okereke*
*Tel: (212) 788-9790*

*Due and timely service is hereby admitted.*

*New York, N.Y. .............................................................., 200..*

*.................................................................................... Esq.*

*Attorney for................................................................*