1    was your last opporcunity.  So that's why I took your letter

2    and sort of thought that was the end --

3            MS. OKEREKE:  Again, your Honor, these reflect changes

4    that were made subsequent to that letter.

5            Lastly, defendants would note on the record that they

6    request that the jury be instructed that the lawyers fees that

7    were again only discussed today are only to be considered if

8    they in fact find that any one of the defendants is liable.

9            THE COURT:  You want me to bring that out to the jury

10   specifically a second time when I hardly got it from Mr. Joseph

11   when you told us it was a stipulation?

12           MS. OKEREKE:  That's fine then, your Honor.

13           MR. JOSEPH:  Judge, two issues.  One, on the jury

14   verdict sheet, which I just saw today, it appears that the

15   Court is asking about misconduct in the grand jury and its

16   asking if certain defendants committed certain types of

17   misconduct.  I would ask what should be included in there is if

18   they caused or pressured or support any other witness who

19   testified falsely in there.  I think if there has been

20   significant elements, proof of that in this case, that it's

21   something that should be put in there.

22           THE COURT:  As the defendant said in one or another

23   communications, it really only counts if it affected what

24   happened in the grand jury.

25           MR. JOSEPH:  But I think if the defendants pressured a

86NMMANT

1    witness to testify falsely who in turn testified falsely in the

2    grand jury, that would count, and I don't think that that fact

3    is contained in the jury verdict sheet.

4              THE COURT:  It is or is not?

5              MR. JOSEPH:  I don't think --

6              MS. OKEREKE:  The defendants object.

7              THE LAW CLERK:  I think he's referring to question No.

8    2, which is the only question that has some specific

9    indications of specific conduct.

10             THE COURT:  I think it may not cover it as

11   particularly as you would like, but it covers it in general.

12   And it's enough of this and the charge talks about it in great

13   detail.  Anyhow, denied.

14             What else would you like?

15             MR. JOSEPH:  Judge, I think it might be somewhat

16   confusing.  I think there is only one claim of damages that he

17   suffered and it might be confusing to ask the jury to segregate

18   damages caused by each and every particular defendant.  I think

19   the damage here is the emotional and financial damage, so to

20   speak, caused by the malicious prosecution.  I think it would

21   confuse the jury to ask them to assert certain amounts of money

22   against one defendant versus another.  The damage is what the

23   damage is.

24             MS. OKEREKE:  Again, as the Court charged the jury,

25   the jury must find that each defendant in fact has a proximate

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

86NMMANT

1    cause to that injury, which is why the determination must be

2    made as to each defendant and not all the defendants as a

3    whole.

4            MR. JOSEPH:  Judge, if they don't find that a

5    defendant participated in the malicious prosecution, they are

6    not liable for the damages anyway.  I think it's somewhat

7    duplicative.

8            THE COURT:  We have your objections.  I am going to

9    give the jury a couple of copies of the verdict sheet, but I am

10   going to deny your last objection.  I think that's all there

11   is, right?

12           MR. JOSEPH:  Yes, your Honor.

13           (In open court)

14           THE COURT:  Do we have a marshal.

15           (Marshal sworn)

16           THE COURT:  I am giving you two verdict sheets.  I

17   trust they are the right verdict sheets.  Okay, guys, you're

18   up.

19           (At 2:35 p.m., the jury retired to deliberate)

20           THE COURT:  I'll be available, but I wouldn't leave in

21   the next 10 or 15 minutes in case they want some exhibits.

22   Hopefully, we now know what the exhibits are, for better or for

23   worse, and we also have them in a way in which they can be

24   provided to the jury upon their request.

25           Very well.  We will see you soon, I'm sure.

86NMMANT

1          (Recess pending verdict)

2          (Jury present)

3          THE COURT:  Well, you got a fairly long day, it seems

4     to me.  I think both you and I are ready to go home.  So I just

5     want to remind you, we will begin deliberations tomorrow

6     morning at 9:30.

7          I want to remind you, as I think I did at the outset,

8     that you can't start deliberating when there are three or four

9     of you.  You really have to wait until the full eight of you

10    are here.  So try not to be late because all of the other

11    people will be chomping at the bit to get moving and that's the

12    way it ought to work, that everybody is together at 9:30.

13         Have a good evening.  Do not discuss the case amongst

14    yourselves outside the jury room or with anybody else.  See you

15    tomorrow morning.

16         (Jury not present)

17         THE COURT:  There are three notes from the jury.  Let

18    me read them into the record.  They have all been taken care

19    of.

20         The first one, which is Court Exhibit 6, reads:  We

21    would like to request all DD5s that were brought into evidence

22    as well as the crime scene drawing from Mr. Martinez.  And

23    signed by Carmen Freed, juror no. 1.

24         Exhibit 7, we would like to request the judge's

25    charge, also signed by juror no. 1, the foreperson.

86NMMANT

1              Finally, we request the ADA, Ms. Scaccia's testimony

2      and that's Court Exhibit 8.   Those are the only notes there

3      were.

4              (Adjourned to Tuesday, June 24, 2008, at 9:30 a.m.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

INDEX OF EXAMINATION

Examination of:                                    Page

REHANA LATIF

Direct By Mr. Joseph . . . . . . . . . . .    674

Cross By Mr. Zuckerman . . . . . . . . . .    685

Redirect By Mr. Joseph . . . . . . . . . .    693

PLAINTIFF EXHIBITS

Exhibit No.                                    Received

 56     . . . . . . . . . . . . . . . . .    677

 36     . . . . . . . . . . . . . . . . .    694

86OMMANT

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    ANTHONY MANGANIELLO,

4                    Plaintiff,

5            v.                              07 Civ. 3644 (HB)

6    LUIS AGOSTINI, individually
     and as a New York City Police
7    Detective; SHAWN ABATE,
     individually and as a New York
8    City Police Detective; ALEX
     PEREZ, individually and as a
9    New York City Police Officer;
     MIRIAM NIEVES, individually
10   and as a New York City Police
     Officer; and ROBERT MARTINEZ,
11   individually and as a New York
     City Police Officer,
12
                    Defendants.
13
     ------------------------------x
14                                          New York, N.Y.
                                            June 24, 2008
15                                          9:30 a.m.

16   Before:

17                    HON. HAROLD BAER, JR.,

18                                          District Judge

19                        APPEARANCES

20   OSORIO & ASSOCIATES
          Attorneys for Plaintiff
21   BY:  MICHAEL JOSEPH

22   MICHAEL A. CARDOZO, Corporation Counsel
     for the City of New York
23        Attorney for Defendants
     BY:  MARK ZUCKERMAN
24        AMY OKEREKE

25

     SOUTHERN DISTRICT REPORTERS, P.C.
             (212) 805-0300

1          (Trial resumed)

2          THE COURT:  Good morning, everybody.  I presume you've

3    read this note that's marked Court Exhibit 10.  And before I

4    tell the jury my thinking I'd like to have yours, if you have

5    any.  So I will listen to any thoughts you may have.  If you

6    don't have any, I'll be glad to do it my way.

7          MR. JOSEPH:  I have a few thoughts, Judge.  As the

8    Court is aware, we raised an objection or issue concerning

9    question No. 2 prior to this being submitted to the jury and at

10   the end of the charge.  We have several problems in that I

11   think No. 2 is somewhat vague in that, for example, 1, it says:

12   Having proven that the defendant misrepresented evidence to

13   prosecutors, or failed to provide the prosecutor with material

14   evidence or information, or gave testimony to the grand jury

15   that was false, or contained material omissions, and knew that

16   he or she was making a material misrepresentation or omission

17   or giving false testimony.

18          I think it's somewhat confusing in that it does not

19   allow for a number of other things that we have proven occurred

20   here which resulted in -- our contention is, grand jury

21   misconduct or misconduct which influenced or created a grand

22   jury indictment that was not in fact based on probable cause.

23          For example, there is nothing in here that says, did

24   these defendants coerce, suborn perjury before the grand jury,

25   which this jury has a firm grasp in evidence or basis in

86OMMANT

1    evidence to make such a finding.

2           Further, Judge, I think what the case law seems to say

3    is that once we have established that the grand jury

4    proceeding, that there was fraud or perjury, it's not requisite

5    as to who actually committed the fraud or perjury.  It just

6    negates the presumption of probable cause.  I think there is a

7    lot of problems with question No. 2 which I think is confusing

8    the jury, and I believe at the end of the charge I advised the

9    Court that I believe this would confuse the jury, the way it is

10   worded.  Those are my thoughts, Judge.  I think the Court

11   should give the jury a much more expansive reading of the law

12   and the question should be reworded.

13          THE COURT:  Anything from the defendant?

14          MR. ZUCKERMAN:  Yes, your Honor.  The way the verdict

15   sheet is written, the way your Honor has written it, for

16   plaintiffs or for the jurors to get to damages they would have

17   to answer questions 1 and 2 in the affirmative.  So to answer

18   their question is absolutely logical and acceptable to answer

19   yes to 1, no to 2.  But if they answer no to 2, then they

20   don't -- they shouldn't get to damages.

21          MR. JOSEPH:  Judge, I think this is going to be a

22   very -- this question does not change and if they answer yes to

23   1 and no to 2, there is going to be some appellate issue.  It

24   would be logical to let the jurors determine what the damages

25   are so we have a record for appeal, should there later be --

86OMMANT

1    should the appellate court later determine it was an error,

2    there would be a damage amount to reinstate.

3          THE COURT:  We don't have to resolve that now.  I am

4    not sure I understand you.  My view is that if there is

5    qualified immunity, which is what question 2 is deemed as, then

6    it's really my decision as to whether or not I buy the jury's

7    thinking.  It's really just advisory to me.  I don't think we

8    have to put in a lot more.  But in terms of what it would be in

9    terms of damages, I suppose that might be valuable.  I don't

10   quite know how I would express that.

11         MR. JOSEPH:  Judge, frankly, I think the way the case

12   law reads, if the jurors find that defendants did maliciously

13   prosecute this plaintiff, then there is no qualified immunity.

14   If they answer yes to question No. 1, there is no qualified

15   immunity because malicious prosecution was clearly established

16   at the time these events occurred and there would be no

17   good-faith basis for these particular defendants to, for

18   example --

19         THE COURT:  I understand, but I'm telling you that's

20   my job with respect to the qualified immunity, so I think the

21   damage issue is worth pursuing, but I haven't heard a logical

22   rational thought from you as to how we get them to that

23   juncture.

24         MR. JOSEPH:  Judge, I think --

25         THE COURT:  If they answer yes and no respectively.

1        MR. JOSEPH:  Judge, I think question No. 2 should be

2   expanded to include all of the things which -- all the findings

3   which would negate a qualified immunity.

4        THE COURT:  I thought I said it didn't matter because

5   if they answered yes to No. 1, the defendant has met the test.

6   If that's true, whatever they say to 2, I simply adopt the

7   Joseph method and tell them that in fact -- not tell them now,

8   but tell them when judgment days comes rolling around that in

9   fact there is no qualified immunity because Mr. Joseph says

10  that answering yes to 1, as the jury did, is sufficient.

11       What I'm trying to get from you is your concern, which

12  I'm sure is uppermost in your mind, and that is whether we tell

13  them in the way of damage thinking, if anything.

14       MR. ZUCKERMAN:  Judge, they shouldn't get a damage

15  thinking.

16       THE COURT:  Please let him answer the question, Mr.

17  Zuckerman.  You've been talking for a week.

18       MR. JOSEPH:  Judge, I think that in terms -- if the

19  Court is going to grant these defendants qualified immunity if

20  they answer no to these questions, they should be advised of

21  that.

22       THE COURT:  That's right.  But I don't know that I am

23  or I'm not.

24       MR. JOSEPH:  Judge, I think --

25       THE COURT:  This is a question of law, Mr. Joseph.  It

86OMMANT

1    has to do with me.  All they are doing here, because that's

2    what the Second Circuit asks me to have them do, is to give me

3    their view.  To expand it any further would help nobody, in my

4    humble opinion.

5                MR. JOSEPH:  Judge, I ask the Court, not to take as a

6    sign of disrespect, but I would respectfully disagree with the

7    Court.  And I would ask that we put on the record --

8                THE COURT:  Can you answer the question that we are

9    trying to get from you?

10               MR. JOSEPH:  Judge, I am not sure exactly what

11   question did you want me to answer.

12               THE COURT:  I am going to try it another time.  You

13   mentioned that in fact should I set aside the jury's advice.

14   Are you following me so far?

15               MR. JOSEPH:  Yes, I am.

16               THE COURT:  Fine, there is no qualified immunity,

17   assuming they answer no to question No. 2.

18               MR. JOSEPH:  Yes.

19               THE COURT:  Then you raise the thought that there

20   would have to be a way to figure out what the damages were.

21               MR. JOSEPH:  Correct.

22               THE COURT:  Because there was no qualified immunity.

23   You got me so far?

24               MR. JOSEPH:  Yes, your Honor.

25               THE COURT:  I'm asking you how we would approach that

86OMMANT

1    issue with the jury.

2         MR. JOSEPH:  Judge, I think the jury should be

3    informed that -- essentially, not to consider the results of

4    their findings or advice and just answer the questions as put

5    to them.

6         THE COURT:  Should not what?

7         MR. JOSEPH:  Should not be concerned necessarily with

8    the results of their answer.  However, they should just answer

9    the questions as put to them and make their factual

10   determinations or findings.

11        THE COURT:  Mr. Zuckerman, it's your turn.

12        MR. ZUCKERMAN:  Your Honor, two things.  Number one,

13   it's our position that only question 2 should be asked of the

14   jury because compared to question 1 it more accurately is the

15   appropriate question for the jurors to answer.  But with

16   respect to the jurors giving an advisory opinion on damages,

17   that's prejudicial.

18        THE COURT:  It wouldn't be advisory.  It would be what

19   they think the damages should be and the issue of qualified

20   immunity is separate and apart and a matter of law for the

21   judge.  That's the law.

22        MR. ZUCKERMAN:  Yes.  But if there is qualified

23   immunity there is no damages.

24        THE COURT:  That's the truth.  But indeed we don't

25   really know how I am going to come out on qualified immunity,

86OMMANT

1    regardless of how they come out, because, as I've told you, I

2    don't think -- this is not rocket science.  My understanding of

3    the law is that qualified immunity is a matter of law for the

4    judge and the circuit court -- if you're going to be looking at

5    somebody else's work, you should look at it and when you're

6    ready I'll talk to you.

7           MR. ZUCKERMAN:  Thank you, your Honor.  The problem is

8    that if the jury considers damages, that's an assumption that

9    there is liability.

10          THE COURT:  Question 1 is that clear and simple.

11          MR. JOSEPH:  Judge, frankly, if the Court does find

12   qualified immunity, it can certainly vacate any amount of

13   damages found.  We would just have a record of what this jury

14   has determined this plaintiff's damages are in the event a

15   later court should disagree.

16          THE COURT:  I think it makes sense.

17          MR. ZUCKERMAN:  Your Honor, we object.  Our position

18   is there ought to be a finding of liability before damages goes

19   to the jury.

20          THE COURT:  I agree with that, too.  I think that's

21   what the answer to No. 1 will provide.  That's the way the

22   verdict sheet is drafted, to boot.  3 just says:  State the

23   total amount of compensatory damages you award to the plaintiff

24   and then the issue is for me to decide with respect to the

25   qualified immunity.

86OMMANT

1      Bring them in.  I didn't know what we were talking

2   about.  I just didn't look at it, I guess.

3      MR. ZUCKERMAN:  Your Honor, one more thing.

4      THE COURT:  Sure.

5      MR. ZUCKERMAN:  The problem the way the verdict sheet

6   is set up, if they do find a malicious prosecution under

7   question 1, there is no question to the jury as to why they

8   found malicious prosecution to assist your Honor making a

9   qualified immunity decision.  That's one of the problems we

10  raised previously.

11     THE COURT:  I don't think you raised it.  If you did,

12  I certainly didn't get it.  And if I'm right, it seems to me

13  that 2 does enough.  It is what 2 is intended to do.  Whether

14  it does it or not, I can't be sure.  For my money, since I'm

15  the fellow that has to make the decision, it's good enough.

16     MR. ZUCKERMAN:  Note our objection for the record,

17  your Honor.

18     (Jury present)

19     THE COURT:  Ladies and gentlemen, sorry to have kept

20  you, but we had to listen to all of the parties speaking about

21  your question.

22     Let me just read it back to you before I answer it, or

23  at least try to answer it.  If we assume yes to question 1 for

24  a particular defendant, is it acceptable/logical to answer no

25  to question No. 2 for that same defendant?  Does it then mean

86OMMANT

1    that the defendant is then not liable to damages?

2            And the answer, and I think probably a briefer answer

3    than I might be able to provide, I think for your purposes

4    sufficient, you may, if you see fit, answer yes to question 1

5    for a particular defendant and answer no to question No. 2 for

6    the same defendant.  If you answer no to question No. 2, you

7    should nonetheless continue with question No. 3.

8            If you don't have a verdict sheet, you probably don't

9    know what I'm talking about.  But indeed when you get back in

10    the room you may get it.

11            Thank you very much.  You may continue your

12    deliberations.  I gather they have ordered lunch for you, so

13    you will not salivate for long.

14            (Jury not present)

15    THE COURT:  They may have another question very

16    quickly.  If indeed they do, I would hang in here.  We will

17    have lunch at 1:00, so you should plan on that same hour, but I

18    can't guarantee you that it will happen that way, but that's

19    the way it's planned to happen.  Everything else has been

20    provided.  This is the other note.

21            THE DEPUTY CLERK:  It hasn't been read into the

22    record.

23            THE COURT:  9 reads:  We would like to request the

24    grand jury testimony.  That's the first question.

25            The second:  We would like to request Officer Perez's

86OMMANT

 1    testimony.

 2            And I did read this into the record, so we needn't

 3    bother you to do any more.

 4            MR. ZUCKERMAN:  Your Honor, one more thing, if I may.

 5    Just the way questions 1 and 2 are written, they are

 6    inconsistent.  We note our objection for the record.

 7            MR. JOSEPH:  Judge, we likewise note our objection to

 8    question No. 2 concerning the wording for the reasons

 9    previously stated.

10            Just housekeeping, at 1:00, do you want us to leave

11    and come back at 2?

12            THE COURT:  You should do whatever you think is right.

13            (Recess pending verdict)

14

15

16

17

18

19

20

21

22

23

24

25

86OMMANT

```
 1                          AFTERNOON SESSION

 2                              2:20 p.m.

 3              (Jury not present)

 4              THE COURT:  There is a note which you have been

 5      furnished.

 6              THE DEPUTY CLERK:  They saw it, Judge.

 7              THE COURT:  Does anybody have an answer?

 8              MR. JOSEPH:  I would answer affirmative, your Honor.

 9      I would answer in the affirmative, your Honor.

10              THE COURT:  You would say:  If we find the defendant

11      is liable for malicious prosecution, a yes to question 1 in

12      parens.  Does it logically follow that he or she is liable for

13      punitive damages?  I guess that would be your position.  And

14      what about the city?

15              MR. ZUCKERMAN:  We say no, of course, your Honor.

16              THE COURT:  Bring them in.

17              (Jury present)

18              THE COURT:  Ladies and gentlemen, I trust you had a

19      good lunch and it apparently encouraged your penmanship, so I

20      have a new note which is denominated Court Exhibit 12 and

21      reads:  If we find the defendant is liable for malicious

22      prosecution (a yes to question 1), does it logically follow

23      that he or she is liable for punitive damages?

24              The answer is no.  You may continue your

25      deliberations.
```

86OMMANT

1                    (Jury not present)

2          MR. JOSEPH:  Plaintiff would like to place an

3     objection on the record as to that charge.  We would ask that

4     the jury be instructed that it's within their discretion

5     whether or not to find punitive damages and that the basis for

6     doing so may be malicious conduct.

7          THE COURT:  What would you like me to do?

8          MR. JOSEPH:  To instruct the jury that while it may

9     not logically follow that the fact that they are liable for

10    malicious prosecution, it may not automatically follow that the

11    plaintiff is entitled to punitive damages, but that they may in

12    their discretion award punitive damages if they determine the

13    facts of the case warrant it.

14         THE COURT:  They have my charge.  They know exactly

15    what they have to do, is reread it, and they will know it even

16    better.

17         MR. JOSEPH:  But, Judge, the fact that they raised

18    this question raised some ambiguity in their minds.

19         THE COURT:  You have an exception.  I think exceptions

20    went out 50 years ago, in 1933.  That's actually 75 years ago.

21    Your objection is noted.  That's where we are in the 21st

22    century.

23         MR. JOSEPH:  I just want to make sure that my

24    objection is noted on the record.  I thank your Honor for the

25    courtesy.  I wanted to make a record.

86OMMANT

1          (Recess pending verdict)

2          THE COURT:  We have a verdict, but we have no deputy

3      to take the foreperson through it.  I don't know where Dennis

4      is.

5          Court Exhibit 13 reads:  We have reached a verdict.

6          You can bring them in.  The marshal can bring them in.

7          (Jury present)

8          THE COURT:  I gather that you have reached a verdict

9      from the last note.  And my deputy will take you through the

10     verdict sheet.  Ms. Freed, I presume, is the spokesperson.

11         THE FOREPERSON:  Yes, that's correct.

12         THE DEPUTY CLERK:  Please rise.  Anthony Manganiello

13     v. Detective Luis Agostini, Shawn Abate, Police Officer Alex

14     Perez, Police Officer Miriam Nieves and Richard Martinez.

15         Question 1:  Has the plaintiff proved by a

16     preponderance of the evidence that the defendant whom you are

17     considering maliciously prosecuted him?

18         Answer yes or no in alphabetical order.

19         Shawn Abate.

20         THE FOREPERSON:  Yes.

21         THE DEPUTY CLERK:  Luis Agostini.

22         THE FOREPERSON:  Yes.

23         THE DEPUTY CLERK:  Richard Martinez.

24         THE FOREPERSON:  No.

25         THE DEPUTY CLERK:  Miriam Nieves.

86OMMANT

```
 1                THE FOREPERSON:  No.

 2                THE DEPUTY CLERK:  Alex Perez.

 3                THE FOREPERSON:  No.

 4                Question 2:  For each defendant whom you have answered

 5      yes to in question 1, has the plaintiff proved by a

 6      preponderance of the evidence that (A) the defendant

 7      misrepresented the evidence to the prosecutors, or failed to

 8      provide the prosecutor with material evidence or information,

 9      or gave testimony to the grand jury that was false or contained

10      material omissions and (B) the defendant knew that he or she

11      was making a material misrepresentation or omission or giving

12      false testimony?

13                Answer yes or no in alphabetical order.

14                Shawn Abate.

15                THE FOREPERSON:  No.

16                THE DEPUTY CLERK:  Luis Agostini.

17                THE FOREPERSON:  Yes.

18                THE DEPUTY CLERK:  Richard Martinez.

19                THE FOREPERSON:  No.

20                THE DEPUTY CLERK:  Miriam Nieves.

21                THE FOREPERSON:  No.

22                THE DEPUTY CLERK:  Alex Perez.

23                THE FOREPERSON:  No.

24                THE DEPUTY CLERK:  Question 3.  State the total amount

25      of compensatory damages you award to plaintiff.
```

86OMMANT

1          THE FOREPERSON:  $1,426,261.

2          THE DEPUTY CLERK:  Question 4:  If you awarded

3   compensatory damage in question 3, state the amount of

4   compensatory damage for which each defendant whom you answered

5   yes to in question 1 is liable.  The total of the amount that

6   you write below must equal the total that you wrote in the

7   answer to question 3.

8          In alphabetical order.

9          Shawn Abate:

10          THE FOREPERSON:  $142,626.10.

11          THE DEPUTY CLERK:  Luis Agostini.

12          THE FOREPERSON:  1,283,634.90.

13          THE DEPUTY CLERK:  Richard Martinez.

14          THE FOREPERSON:  Zero, zero, zero.

15          THE DEPUTY CLERK:  Question 6:  For each defendant

16   whom you answered yes to in question 1, do you unanimously

17   believe that defendant is liable for punitive damages?

18          Answer yes or no in alphabetical order.

19          Shawn Abate.

20          THE FOREPERSON:  Yes.

21          THE DEPUTY CLERK:  Luis Agostini.

22          THE FOREPERSON:  Yes.

23          THE DEPUTY CLERK:  Richard Martinez.

24          THE FOREPERSON:  No.

25          THE DEPUTY CLERK:  Miriam Nieves.

86OMMANT

```
 1                 THE FOREPERSON:  No.

 2                 THE DEPUTY CLERK:  Alex Perez.

 3                 THE FOREPERSON:  No.

 4                 THE COURT:  Thank you, all, for what is probably a

 5     major effort or was a major effort.  The concern with respect

 6     to the verdict and more particularly question 6 is that there

 7     is a need if punitive damages are awarded for the jury to

 8     obtain some information from the defendants in this case,

 9     Agostini and Abate, that was not part of this trial.  It has to

10     do with their resources because this is essentially a

11     punishment.

12                 So I don't know what that timetable is like, but my

13     guess is -- there is no need to guess.  Why don't you retire to

14     the jury room and as soon as I get some information from the

15     defendants we will call you back and tell you when we need you

16     to come by once more and listen to some more evidence.

17                 (Jury not present)

18                 THE COURT:  My guess is that there are a couple of

19     items that I think are essential for us from the two defendants

20     that have been awarded punitive damages, but there may be other

21     things.  I don't really know what the parameters are, but I

22     think we need at least a couple of years of their income tax

23     returns.  I'm glad to listen if any of you know how this area

24     proceeds.  I'm glad to listen to anything else because we have

25     to fix a timetable for when we are going to hear this.
```

86OMMANT

1        MR. ZUCKERMAN:  Your Honor, it's my understanding that

2   after a verdict like this, the city makes a determination on

3   whether to -- I guess essentially indemnify for punitives.  And

4   we would request that even before looking at the issue of

5   whether the defendants have to be put on the stand and income

6   tax returns and all of that that we be allowed to make that

7   determination and then go from there.  That would be the way we

8   suggest --

9        THE COURT:  It's all right with me.  I am not going to

10  be here in July.  If we don't do it before Monday, you're going

11  to have plenty of time to get it together.  How long do you

12  think it will take to make that determination?

13       MR. ZUCKERMAN:  Thirty days.

14       THE COURT:  That will work.  What about you, Mr.

15  Joseph?  Do you have any large thoughts?

16       MR. JOSEPH:  No, Judge, no large thoughts.  My only

17  small thought, we are going to be making an application

18  pursuant to 1988 for fees --

19       THE COURT:  I'm sure of it.

20       MR. JOSEPH:  That's to you, Judge.  Does the Court

21  want it within the 15 days or are they giving us the same

22  30-day time frame to make that application?

23       THE COURT:  It gets complicated.  I have to look

24  myself of what I would like in addition to what the city, if

25  they indemnify, may like.  I suppose if the city decides not

86OMMANT

1    to, they have the opportunity to get their own counsel.  So

2    this could take a long time before we see -- hopefully these

3    jurors are well, and certainly we have to make those

4    determinations before your application becomes mature.

5           MR. JOSEPH:  Judge, the problem is, also, we are still

6    going to be working on this case, so to speak, so I would ask

7    that any time frame in which I be required to submit a 1988

8    application be stayed until the final determination as to

9    punitive damages also.

10          THE COURT:  Well, that's perfectly all right with me.

11   What I need to know from all of you is, actually mostly from

12   the city is how they come out.  Now, I can't imagine it will

13   take you 30 days to make that determination, but if that's what

14   you're talking about, then we ought to put some -- add some

15   thoughts to it as to what else you are going to do within those

16   30 days.  If you decide you can't represent them for some

17   reason, then they obviously should have a little time to find

18   new counsel.

19          MR. ZUCKERMAN:  Sure.

20          THE COURT:  And in that regard it won't be 30 days but

21   it will be closer to 60 days.  So if you could telescope your

22   timetable just so that we can move this along.  I don't really

23   care except I don't know how interested the jury is in making a

24   career out of this lawsuit.  So I would urge you to come up

25   with your decision on that issue within the next two weeks.

1  And then if you say yes, we can move along in terms of what we

2  need from them and I can communicate with you and, if not, they

3  have some time for counsel.  How does that sound?

4       MR. ZUCKERMAN:  Sounds reasonable, your Honor.  We

5  will try to get it done within two weeks.

6       THE COURT:  I won't be here, so don't worry about it.

7  It will have to funnel to me.  Actually, I guess in two weeks I

8  will be in San Francisco.  But we will work it out.  If you

9  just communicate with Anna, that will do it.

10      And the other issue, I suppose, I have to think about

11 it a little bit, but I suppose it may be that on the qualified

12 immunity piece nobody but Agostini was answered yes.  And so

13 if, in fact, the city is planning to contest that, I think

14 probably it would be valuable for you and Mr. Joseph to prepare

15 a timetable where I could see all of your thoughts from each of

16 you on that issue since it is a matter of law in the last

17 analysis.  But you can work that out with Mr. Joseph in terms

18 of the memorandum.  That's all I really need.

19      MR. ZUCKERMAN:  Can we then inform Anna of the

20 schedule on the qualified immunity that we reach on the

21 briefing schedule.

22      THE COURT:  Yes.  We should know.  Why don't we assume

23 that you'll be able to provide an answer to the indemnification

24 on the punitive damage aspect within two weeks and that with

25 respect to the qualified immunity memorandum of law, why don't

860MMANT

1    we figure that that should take another ten days or two weeks,

2    however you figure it out.

3          MR. ZUCKERMAN:  I'm sorry.  I didn't hear --

4          THE COURT:  I suppose we have to give you another two

5    weeks to provide me with whatever qualified immunity pearls you

6    and Mr. Joseph may have to deliver.  So that brings us, I

7    guess, to the end of July.

8          I want to tell them something.  My thought is that if

9    you make a decision to represent them, there is no problem.  If

10   you make a decision not to represent them and you do that

11   within two weeks, which is like the 10th or 12th of July, I

12   presume if we give them the balance of July they can find their

13   own lawyers during that three-week period.  Maybe you better

14   talk to whoever we are talking about.  I guess it's just

15   talking about Abate and Agostini.  And see whether or not how

16   long they would like if in fact the city does not represent

17   them.

18         But for the sake of argument I am going to assume that

19   come the end of July they will have found counsel if it's not

20   you.  And if it is you, then there is no big problem.  So I

21   would ask the jury to come back some time, I guess, early in

22   August.  I'm hesitant to do anything much later than that, but

23   I'm always glad to hear your thoughts.

24         I'm not sure what to do about any motions that you

25   make.  And your colleague, who is always anxious and probably

86OMMANT

1  ready to write something on the motions, but I think probably

2  you should look at the law.   There is a ten-day jurisdictional

3  requirement on some of them, but I think we can probably

4  waive -- I can probably waive that.

5       MS. OKEREKE:   Yes, your Honor.  Defendants would

6  request that the ten days be waived for their motions pursuant

7  to Rule 50 and Rule 59 and, additionally, if the Court would

8  like those to coincide with the qualified immunity papers.

9       THE COURT:   Yes.  I want as much as soon as possible.

10  And you can also talk with Mr. Joseph so -- I only take fully

11  briefed motions.  In fact, you'll have to work that out with

12  him.  And if we do it in concert with the qualified immunity,

13  it will all be here by August 1.

14       MS. OKEREKE:   Additionally, your Honor -- rather, in

15  addition to the motions, defendants would request that at least

16  with respect to defendant Abate, that the Court hold a mistrial

17  due to the inconsistent verdict.

18       THE COURT:   You can include that in your motion

19  papers.  The larger issue, it seems to me, at the moment is

20  what we are doing about representation, and the rest I'm

21  obviously interested in, but I would like to let please jurors

22  go home now.

23       MS. OKEREKE:   Yes, your Honor.  Defendants do request

24  that they request a mistrial from the Court and, additionally,

25  to move pursuant to Rules 50 and 59.

86OMMANT

1        THE COURT:  We have a timetable for that, which is the

2    end of July or the first week of August.  First week in August

3    starts on, I guess, Monday, the 6th.  Does that sound

4    reasonable for everything else; in other words, the lawyers if

5    they need them and for any motions that you want to make?

6        MR. JOSEPH:  Judge, I anticipate starting a trial on

7    August 5.  If it's a matter of paper, I can certainly get it in

8    before that.  If it's a matter of appearance, that might be

9    problematic.

10       THE COURT:  Mr. Joseph, the problem is a jury.  I am

11   always here, but I'm not at all clear that they are always

12   anxious to come by.  So I don't want to give them a lot of

13   alternatives.  So when are you available?

14       MR. JOSEPH:  August 1, Judge, I would ask for.  I'm

15   starting a trial the following week.

16       THE COURT:  It's a Friday.

17       MR. JOSEPH:  Or even the 31st of July.  Judge, I can

18   even be here on Monday, August 4, the day before the trial.

19       THE COURT:  How long is that likely to take, Mr.

20   Joseph, if you know?

21       MR. JOSEPH:  I would say approximately a week.  It's a

22   criminal trial.  If the people aren't ready on that date,

23   obviously, it's going to get bounced.

24       THE COURT:  I can tell the jury -- I can tell them.

25   What their reaction is, I can't guarantee.  Since we have got

86OMMANT

1    all the other motion practice problems out of the way I can

2    tell them that we will sit -- I have a civil case starting on

3    the 4th, so I would tell them that we will sit only in the

4    afternoon, which make them feel better, on the 4th of August.

5              MR. JOSEPH:  That's fine.

6              THE COURT:  If that's okay.  Or we can do it on the

7    18th, whichever you prefer.  I just want to tell them something

8    I know you are going to be here for.

9              MR. JOSEPH:  Frankly, Judge, being here on the 4th is

10   fine.  Spilling over, I can submit an affidavit of engagement

11   in the other matter.

12             THE COURT:  I'm prepared to help.

13             MR. JOSEPH:  I appreciate the help, Judge.

14             THE COURT:  Let's see if we can corral them.  I'm sure

15   they will be delighted.  They would probably like to have a new

16   turn at that verdict sheet.

17             We may write you with some pearls about what we want

18   from them in addition to what you and Mr. Joseph may want from

19   them, if you're representing them.  If you're not, we probably

20   won't write you.

21             (Jury present)

22             THE COURT:  We are going to need the pleasure of your

23   company again.  So the issue really is whether, looking at my

24   calendar and the calendar of the lawyers, there is any

25   problem -- we would only sit in the afternoon because I have a

86OMMANT

1    trial in the morning on the 4th of August.  If the 4th of

2    August is a problem, we can move to the morning of the 18th.

3    This will take no more than a day.  If you would like to go in

4    the back to conference, to come out with a choice, which judges

5    rarely give jurors.  But since we are giving it to you, it

6    could probably create a problem.  If you're all free and

7    available for an afternoon on the 4th, we will stay with that.

8    Is everybody available?  Can they think that far in advance?  I

9    see not everybody is available on that day.  Is everybody

10   except Bernice Pasternack available on that day?

11            JUROR:  Your Honor, at some time in August I am going

12   to visit my mother, but I do not recall the dates.

13            THE COURT:  We are going to hope it's not the 4th.

14            Yes, ma'am.

15            JUROR:  I am abroad between the 4th and the 18th.  I

16   am not coming back from Europe until the 19th.

17            THE COURT:  We may have to do without your services.

18            Is everybody else game for the 4th in the afternoon?

19   That's all I think it should take because there is only one

20   defendant.

21            JUROR:  It's a Monday?

22            THE DEPUTY CLERK:  The 4th is a Monday.

23            You want to come inside and call.

24            THE COURT:  I have no preference myself between the

25   4th and the 18th.  That won't do you any good because you're

86OMMANT

1   not coming back until the 18th.

2               JUROR:   19th.

3               THE COURT:   There used to be a really venerable,

4   respected, brilliant judge on this court whose name was

5   Weinfeld, and he made it clear about two things, both of which

6   lawyers and judges rarely follow.  One is, you don't thank

7   jurors.  They are only doing their job.  And two is, you don't

8   listen to thanks from lawyers because indeed the judge is only

9   doing his job.

10              But in this instance I must tell you that while I do

11  follow as much of his learning as I can, I think this was a

12  significant effort which all of us are not only glad that you

13  were able to do but in fact I assume you realize, just from the

14  difference of views that you heard, that this wasn't going to

15  be resolved any other way.  It wasn't going to be resolved by

16  chatting with one another about how to resolve it.  And in

17  those cases it's really only a jury like yourselves that can

18  provide the answers.

19              So once we hear from Mr. Kuklin, we will bid you ado.

20              As I may have told you before, you have no obligation

21  to chat with the lawyers when they surround you.  By the same

22  token, if what you like is talking to lawyers, you can talk to

23  them.  But it is really your own decision.  And in this case,

24  because it's really not over, I would urge you not to talk to

25  the lawyers.  And I'm certainly not telling you what to do for

86OMMANT

1    the next month, but I think that this punitive damage overlay,

2    which is essentially what it is, is something I would probably

3    urge you to keep confidential so far as that's possible.

4    Frankly, we are only waiting that long because there are a

5    variety of other motions and aspects of this before we can

6    figure it out finally.

7            No one home?

8            JUROR:  I'll be returning from Omaha from my mother's

9    94th birthday on August 4.

10           THE COURT:  Would that make the 5th better?

11           JUROR:  Yes, it would.

12           THE COURT:  It's of no moment.  It's a nonjury case,

13   so I don't really care whether or not we do it in the morning

14   of the 5th.  Let's give you a time to at least partially

15   adjust.  And we will see you all, assuming that doesn't

16   interfere with anybody else's thinking, we will see you at 1:30

17   on Tuesday, August 5.

18           While I can, with sadness in my heart, let Bernice

19   Pasternack go, you can't really afford to let anybody else --

20           JUROR:  I'm Mary Combal.

21           THE COURT:  Bernice is next to you, I suppose.

22           JUROR:  Yes.

23           THE COURT:  That's a little number problem.  We have

24   resolved it.

25           In any event, we are sorry that you won't be with us,

86OMMANT

1    but I can't let any of the others of you go.

2         We will see you all at 1:00 or 1:30.  I guess 1:30

3    would be better for me since I have a trial in the morning on

4    the 5th of August.

5         Have a really good afternoon and a really good July,

6    and we will see you then.

7         You took the verdict sheet, I presume Dennis?

8         THE DEPUTY CLERK:  Yes, I have it.

9         THE COURT:  You're excused.

10        (Jury not present)

11        THE COURT:  So we have a timetable and the first

12   contribution is from the city as to whether or not they are

13   going to represent and indemnify the defendant, and that will

14   happen within the next two weeks.  And then we are off on a

15   schedule for both of you together on almost every item of

16   motion practice.

17        Anything else?

18        MR. JOSEPH:  Judge, just so it's clear, our time to

19   submit the 1988 application will not begin until after the

20   punitive damage phase.

21        THE COURT:  You got to speak up.

22        MR. JOSEPH:  Plaintiff's time to submit a 1988

23   application for fees will not commence until after the punitive

24   damage phase.

25        THE COURT:  Correct.

86OMMANT

1      MS. OKEREKE:  Your Honor, defendants --

2      THE COURT:  Then, of course, obviously, the city will

3  have an opportunity, or the city and whoever else may be

4  representing Mr. Agostini will have an opportunity to answer.

5  And I only take fully briefed motions, as I said.  When that

6  time comes, you are my deputy to make sure you remind me

7  somebody who we have never seen before, that he, too, has an

8  opportunity to respond.

9      MS. OKEREKE:  Yes, your Honor.  Defendants would just

10  request and note for the record that they additionally intend

11  to add to their motions requests for remittitur with the Rule

12  50 and Rule 59 motions, and that any timetable be, again, the

13  same as the timetable as we previously discussed.

14      THE COURT:  Do you need an order for that, or do you

15  think you have it?  Why don't you get together, since you

16  have -- we have to make it so that everybody is on board for

17  the same timetable and submit an order to me.

18      MS. OKEREKE:  The parties will submit a proposed

19  briefing schedule for those motions.

20      THE COURT:  Anything else?

21      MR. JOSEPH:  No, your Honor.

22      THE COURT:  We will see you soon, I trust.

23      (Trial adjourned to August 5, 2008, at 1:30 p.m.)

24

25