Index No.07 Civ. 3644 (HB)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK


ANTHONY MANGANIELLO,

Plaintiff,

-against-

DET. LUIS AGOSTINI; DET. SHAWN ABATE,

Defendants.


**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR JUDGMENT AS A MATTER OF LAW ON PLAINTIFF'S MALICIOUS PROSECUTION CLAIM AS AGAINST DEFENDANTS ABATE AND AGOSTINI, OR IN THE ALTERNATIVE FOR QUALIFIED IMMUNITY, OR FOR A NEW TRIAL ON DAMAGES, OR REDUCTION OF THE JURY'S AWARD**


*MICHAEL A. CARDOZO*
*Corporation Counsel of the City of New York*
*Attorney for Defendants Luis Agostini and Shawn Abate*
*100 Church Street*
*New York, N.Y. 10007*


*Of Counsel: Mark D. Zuckerman*
*Amy N. Okereke*


*Tel: (212) 442-8248*
*(212) 788-9790*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...........................................................................................iii

PRELIMINARY STATEMENT...................................................................................... 1

ARGUMENT ............................................................................................................... 1

POINT I

PLAINTIFF FAILED TO SUSTAIN HIS BURDEN OF PROOF
ON HIS MALICIOUS PROSECUTION CLAIM AND THUS
JUDGMENT SHOULD BE GRANTED TO DEFENDANTS
AGOSTINI AND ABATE AS A MATTER OF LAW .............................................. 1

    A.   Plaintiff failed to elicit any evidence during trial which
rebutted the presumption of probable cause created by his
grand jury indictment.    2

    B.   Plaintiff failed to establish each of the elements of
malicious prosecution on the part of defendants Abate and
Agostini.    4

    C.   Plaintiff failed to establish that there was a total
absence of probable cause for his prosecution.    9

POINT II

DEFENDANTS ABATE AND AGOSTINI ARE ENTITLED TO
QUALIFIED IMMUNITY..................................................................................... 11

    A.   Detective Shawn Abate    13

    B.   Detective Louis Agostini    14

POINT III

DEFENDANTS WERE DENIED A FAIR TRIAL................................................. 16

    A.   The Failure of the Court to Bifurcate Liability and
Damages    17

    B.   The Court Erroneously Permitted Plaintiff to Testify
about his Questioning and Detention on February 12, 2001

**Page**

and his Arrest in April, 2001 which Resulted in Undue
Prejudice to Defendants                                          17

C.   Dr. Latif was Allowed to Testify as An Expert Witness
Without a Proper Disclosure                                      19

D.   The Court's Comments During and the Conduct of the
Trial Were Unduly Prejudicial and Defendants Agostini
and Abate were Denied a Fair Trial                              21

E.   The Jury's Verdict as to Detective Abate was
Inconsistent                                                    28

F.   The Court's Instruction to the Jury Regarding an
Adverse Inference Resulting from the so-called Missing
Box was Improper                                               29

G.   The Court Refused to Allow Defendants to Argue
Their Rules 50 and 59 Motions at the Close of the Evidence      30

H.   The Court Failed to Issue Special Interrogatories to the
Jury on the Issue of Qualified Immunity                        30

I.   The Jury Charge on the Probable Cause Element Was
Misleading and Improper                                        31

POINT IV

THE JURY'S VERDICT SHOULD BE SET ASIDE AS
EXCESSIVE AND A NEW TRIAL SHOULD BE ORDERED ON
LIABILITY AND DAMAGES; OR THE JURY'S AWARD
SHOULD BE REDUCED IN ACCORDANCE WITH EXISTING
CASE LAW.................................................................................32

CONCLUSION ...........................................................................................35

**Cases**                                                                      **Pages**

# TABLE OF AUTHORITIES

Alvarado v. City of New York,
    04 CV 2558 (NGG)
    2006 U.S. Dist. LEXIS 57345 (E.D.N.Y. Aug. 5, 2006)............................................2

Anderson v. Brenan,
    17 F.3d 552 (2d Cir. 1994)...............................................................................31

Anderson v. Creighton,
    483 U.S. 635 (1987)...........................................................................11, 12, 13

Anderson v. Recore,
    317 F.3d 194 (2d Cir. 2003)...............................................................................12

Bernard v. United States ............................................................................................4
    25 F.3d 98 (2d. Cir. 1994)

Brogdon v. City of New Rochelle,
    200 F. Supp. 2d 411 (S.D.N.Y. 2002)...............................................................2, 8, 25

Brooks v. Brattleboro Memorial Hospital,
    958 F.2d 525 (2d Cir. 1992)...............................................................................29

Brown v. New York,
    459 N.Y.S.2d 589 (1st Dept. 1983)...............................................................................9

Byrd v. New York City Transit Authority,
    172 A.D.2d 579 (App. Div. 2d Dep't 1991)...............................................................34

Caldarola v. DeCiuceis,
    142 F. Supp. 2d 444 (S.D.N.Y. 2001)...............................................................................8

Carter v. Rosenberg & Estis, P.C.,
    1998 U.S. Dist. LEXIS 4010 (S.D.N.Y. Mar. 31, 1998) ...........................................32

Carthens v. City of New York,
    Index No. 10402/84 (Kings Cty. NY 1989)...............................................................33

Cartier v. Lussier,
    955 F.2d 841 (2d Cir. 1992)...............................................................................12

Caruolo v. John Crane, Inc.,
    226 F.3d 46 (2d Cir. 2000)...............................................................................16

**<u>Cases</u>**                                                                                         **<u>Pages</u>**

<u>Causey v. Zinke (In re Aircrash in Bali, Indonesia)</u>,
    871 F.2d 812 (9th Cir. 1989)...........................................................................21

<u>Coast to Coast Stores, Inc. v. Womack-Bowers, Inc.</u>,
    818 F.2d 1398 (8th Cir. 1987)........................................................................21

<u>Colon</u>,
    60 N.Y.2d at 82 ...............................................................................................28

<u>Denman v. Sanders</u>,
    2006 U.S. Dist. LEXIS 7612 (S.D.N.Y. Feb. 24, 2006) ...........................32

<u>Fulton v. Robinson</u>,
    289 F.2d 188 (2d Cir. 2002)..............................................................................8

<u>Galdieri-Ambrosini v. National Realty & Development Corp.</u>,
    136 F.3d 276 (2d Cir. 1998).............................................................................1

<u>Gasperini v. Ctr. For Humanties, Inc.</u>,
    518 U.S. 415 (1996).......................................................................................32

<u>Gentile v. County of Suffolk</u>
    926 F.2d 142 (2d. Cir. 1991)..........................................................................33

<u>Glasser v. United States</u>,
    315 U.S. 60 (1942).........................................................................................21

<u>Gosely v. City of New York</u>,
    Index No. 021382/2001 (Queens Cty. NY, June 30, 2006) ......................34

<u>Harlow v. Fitzgerald</u>,
    457 U.S. 800 (1992).......................................................................................12

<u>Hill v. City of New York</u>,
    05 Civ. 9473 (RMB)
    2007 U.S. Dist. LEXIS 94969 (S.D.N.Y. Dec. 28, 2007)............................5

<u>Hygh v. Jacobs</u>,
    961 F.2d 359 (2d Cir. 1992)...........................................................................16

<u>Kearney v. City of New York</u>,
    Index No. 16489/87 (Kings Cty. NY, June 7, 1989)....................................33

**Cases**                                                                                                    **Pages**

King v. City of New York,
    92 Civ. 7738, 1996 U.S. Dist. LEXIS 19017 (S.D.N.Y. December 23, 1996).......................33

King v. Macri,
    993 F.2d 294 (2d. Cir. 1993)...........................................................................................................33

Kinzer v. Jackson,
    316 F.3d 139 (2d Cir. 2003)...............................................................................................................4

Laborde v. City of New York,
    93 Civ. 6923 (JGK) ........................................................................................................................33

Malley v. Briggs,
    475 U.S. 335 (1986) ......................................................................................................................12

Manley v. Ambase Corp.,
    337 F.3d 237 (2d Cir. 2003).........................................................................................................19

Martinez v. Gayson,
    No. 95 Civ. 3788, 1998 U.S. Dist. LEXIS 12281 (E.D.N.Y. June 30, 1998)...........................33

Mathie v. Fries,
    121 F.3d 808 (2d Cir. 1997)..........................................................................................................33

Mazza v. City of New York,
    98 CV 2343, 1999 U.S. Dist. LEXIS 13192 (E.D.N.Y. July 13, 1999)....................................6

McGrory v. City of New York,
    2004 U.S. Dist. LEXIS 20425 (S.D.N.Y. 2004) .......................................................................1

Middleton v. City of New York,
    04 CV 1304 (JFB)
    2006 U.S. Dist. LEXIS 44320 (E.D.N.Y. June 19, 2006) ........................................................7

Mitchell v. Forsyth,
    472 U.S. 511, 105 S. Ct. 2806 (1985) .....................................................................................11

Noga v. Potenza,
    221 F. Supp. 2d 345 (N.D.N.Y. 2002) .....................................................................................32

Oliveira v. Mayer,
    23 F.3d 642 (2d Cir. 1994), cert. denied, 513 U.S. 1076 (1995) .............................................12

Pierre v. The City of New York,
    05 CV 5018 2007 U.S. Dist. LEXIS 60707 (E.D.N.Y. Aug. 17, 2007) ...................................7

**Cases**                                                                                          **Pages**

Piesco v. Koch,
   12 F.3d 332 (2d Cir. 1993)...........................................................................................2

Present v. Avon Products, Inc.
   687 N.Y.S.2d 970 (1st Dept. 1999)...........................................................................7

Ricciuti v. NYC Transit Authority,
   796 F. Supp. 84 (S.D.N.Y. 1992)............................................................................30

Rivas v. Suffolk County,
   326 F. Supp. 2d 355 (E.D.N.Y. 2004) ......................................................................2

Rohman v. New York City Transit Authority,
   215 F.3d 208 (2d Cir. 2000)......................................................................................7

Rothstein v. Carriere,
   373 F.3d 275 (2d Cir. 2004)................................................................................2, 28

Rounsville v. Zahl,
   13 F.3d 625 (2d Cir. 1994)........................................................................................9

Santa Maria v. Metropolitan-North Commuter Railroad,
   81 F.3d 265 (2d  Cir. 1996).....................................................................................21

Saucier v. Katz,
   533 U.S. 194, 121 S. Ct. 2151 (2001) ...............................................11, 12, 13, 30

Shah v. Pan Am Services,
   148 F.3d 84 (2d Cir. 1998)......................................................................................21

Stephenson v. John Doe,
   332 F.3d 68 (2d Cir. 2003)......................................................................................31

Tolbert v. Queens College,
   242 F.3d 58 (2d Cir. 2001).........................................................................................1

United States v. Henderson,
   409 F.3d 1293 (11th Cir. 2005)..........................................................................19, 20

United States v. Landau,
   155 F.3d 93 (2d Cir. 1998)......................................................................................16

United States v. Manko,
   979 F.2d 900 (2d Cir. 1992)....................................................................................21

**Cases**                                                                  **Pages**

United States v. Rosa,
    11 F.3d 315 (2d Cir. 1993)..........................................................................21, 28

Warren v. Dwyer,
    906 F.2d 70 (2d Cir. 1990), cert. denied, 498 U.S. 967 (1990) ................................12

Washington Square Post No. 1212 v. Maduro,
    907 F.2d 1288 (2d Cir. 1990)......................................................................................11

Washpon v. Parr,
    06 Civ. 2400  2008 U.S. Dist. LEXIS 44602 (S.D.N.Y. June 2, 2008) ......................4

Young v. County of Fulton,
    160 F.3d 899 (2d Cir. 1998)........................................................................................13

Zellner v. Summerlin,
    494 F.3d 344 (2d Cir. 2007)........................................................................................31

**Statutes**                                                                              **Pages**

42 U.S.C. § 1983..............................................................................................................4, 33

Fed. R. of Civ. P. 50........................................................................................................1

Fed. R. Civ. P. 59.................................................................................................1, 16, 32, 35

Fed. R. Evidence 702........................................................................................................19

Rule 26(a)(2) ...................................................................................................................20

## PRELIMINARY STATEMENT

Defendants submit this memorandum of law in support of their motion to set aside that part of the verdict finding liability for malicious prosecution as against defendants Shawn Abate and Luis Agostini and requesting that judgment be entered as a matter of law in favor of defendants on this claim pursuant to Fed. R. of Civ. P. 50 and 59. Defendants Agostini and Abate also move for qualified immunity. Alternatively, defendants ask that the Court significantly reduce the damages award pursuant to Rule 59; or, set aside the verdict as against defendants Agostini and Abate and order a new trial as to these defendants pursuant to Rule 59; on the grounds that (1) there was no legally sufficient evidentiary basis for a reasonable jury to find liability against defendants Abate and Agostini for plaintiff's malicious prosecution claim; (2) the jury's verdict is against the weight of the evidence; and (3) the jury verdict awarding plaintiff $1,426,261.00 in compensatory damages was excessive as a matter of law and unsupported by the evidence.

## ARGUMENT

## POINT I

## PLAINTIFF FAILED TO SUSTAIN HIS BURDEN OF PROOF ON HIS MALICIOUS PROSECUTION CLAIM AND THUS JUDGMENT SHOULD BE GRANTED TO DEFENDANTS AGOSTINI AND ABATE AS A MATTER OF LAW

A judgment as a matter of law should be granted where "(1) there is such a complete absence of evidence supporting the verdict that the jury's verdict could only have been the result of sheer surmise and conjecture, or (2) there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded [persons] could not arrive at a verdict against [it]." Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp., 136 F.3d 276, 289 (2d Cir. 1998); McGrory v. City of New York, 2004 U.S. Dist. LEXIS 20425, *20-22 (S.D.N.Y. 2004). Although the Court "cannot assess the weight of conflicting evidence, pass on the credibility of witnesses, or substitute its judgment for that of the jury," Tolbert v. Queens College, 242 F.3d 58, 70 (2d Cir. 2001), "the motion should be granted where the Court can conclude that, with credibility assessments made against the moving party and all inferences drawn against the moving party, a reasonable

juror would have been compelled to accept the view of the moving party." <u>Piesco v. Koch</u>, 12 F.3d 332, 343 (2d Cir. 1993).

In the instant case, there was a complete absence of evidence supporting liability against defendants Abate and Agostini for malicious prosecution. Accordingly, the jury's verdict could only have been the result of sheer surmise and conjecture, and must not stand.

### A.    Plaintiff failed to elicit any evidence during trial which rebutted the presumption of probable cause created by his grand jury indictment.

Plaintiff was indicted by a grand jury. (Tr. 656). Plaintiff, therefore, was required to rebut the presumption of probable cause created by his grand jury indictment. <u>See</u> <u>Rothstein v. Carriere</u> 373 F.3d 275, 283 (2d Cir. 2004) (the plaintiff must "rebut [the] presumption by proving fraud, perjury, suppression of evidence or other misconduct in the grand jury"); <u>Rivas v. Suffolk County</u>, 326 F. Supp. 2d 355, 363 (E.D.N.Y. 2004); ("in the absence of any evidence that the defendants – or any other officers or prosecutors – acted in bad faith or gave perjured evidence before the grand jury or without any other exculpable evidence, or documentary evidence of any kind, no reasonable juror could find that [the plaintiff] could overcome the presumption of probable cause that arises from the indictment"). In order to prevail on his malicious prosecution claim, plaintiff necessarily had to prove "that [his] indictment was the product of fraud, perjury, suppression of evidence or other bad faith conduct by the *police*." <u>Alvarado v. City of New York</u>, 04 CV 2558 (NGG)(WP), 2006 U.S. Dist. LEXIS 57345 (E.D.N.Y. Aug. 5, 2006)(citing <u>Rothstein</u>, 373 F.3d at 283)(emphasis added).

In <u>Rothstein</u> the Second Circuit reasoned that "the burden of rebutting the presumption of probable cause requires the plaintiff to establish what occurred in the grand jury, and to further establish that those circumstances warrant a finding of misconduct sufficient to erode the 'premise that the grand jury acts judicially[.]'" <u>Id.</u> at 284. Moreover, unsupported conclusions that witnesses perjured themselves in front of the grand jury or argumentative interpretation of physical evidence that the grand jury had before it do not overcome the strong presumption of probable cause. <u>Brogdon</u>, 200 F. Supp. 2d at 422. It was plaintiff's burden, therefore, to establish that defendants committed fraud, perjury, or other misconduct which "had an

impact on the grand jury's decision to indict Mr. Manganiello," (Tr. 789), and which effectually eroded the deference accorded to the determination and judgment of the grand jury. Plaintiff failed to meet this burden.

The evidence elicited at trial establishes that four police witnesses testified before the grand jury: non-party Police Officer Casciano, and defendants Agostini, Perez, and Nieves. (Tr. 652) As an initial matter, plaintiff elicited no evidence at trial alleging that Police Officer Casciano's testimony before the grand jury was tainted. Additionally, the jury's verdict in favor of defendants Perez and Nieves reflects that the jury found that these officers *did not* act with malice or commit fraud in the course of plaintiff's prosecution. Furthermore, defendant Abate testified that he did not even testify before the grand jury. (Tr. 382)

Thus, the only police defendant which the jury seemingly could have considered to "rebut the presumption" of probable cause would have been defendant Agostini. However, plaintiff failed to present any evidence that defendant Agostini committed fraud, perjury, or other misconduct which would demonstrate that the grand jury's indictment was the result of police action undertaken in bad faith. In fact, plaintiff did not even elicit testimony from defendant Agostini regarding testimony he gave to the grand jury. (Tr. 153-276; 326-332).

As established at trial, Detective Agostini's role as lead detective in the Acosta homicide investigation was to interview witnesses, follow-up on leads, and perform the various tasks associated with investigating a homicide, which he did. Detective Agostini kept ADA Scaccia informed of the status of the investigation and provided her with access to the entire police homicide case folder. ADA Scaccia conducted interviews of witnesses and decided to present the case to the grand jury. The evidence shows that the only testimony detective Agostini gave before the grand jury concerned the identification of the victim's body as being that of Albert Acosta. (Grand Jury Transcript, Exhibit B; Tr. 321-324, 655)

Defendants submit that the evidence presented at trial failed to establish that defendants Agostini or Abate engaged in any misconduct or wrongdoing which would rebut the presumption of probable cause created by plaintiff's grand jury indictment, and that the jury verdict could only have been the result of

mere conjecture and speculation. Accordingly, as a matter of justice, the jury's verdict must not stand, and the Court must enter judgment as a matter of law on behalf of defendants Agostini and Abate.

**B.      Plaintiff failed to establish each of the elements of malicious prosecution on the part of defendants Abate and Agostini.**

"To sustain a § 1983 claim of malicious prosecution, a plaintiff must demonstrate conduct by the defendant that is tortious under state law and that results in a constitutionally cognizable deprivation of liberty." Washpon v. Parr, 06 Civ. 2400 (NRB), 2008 U.S. Dist. LEXIS 44602, *19-20 (S.D.N.Y. June 2, 2008) (quoting Kinzer v. Jackson, 316 F.3d 139, 143 (2d Cir. 2003)). "Specifically, under New York law, the following elements must be satisfied: '(1) the defendant commenced or continued a criminal proceeding against plaintiff, (2) the proceeding terminated in plaintiff's favor, (3) there was no probable cause for the criminal proceeding, and (4) the defendant initiated the criminal proceeding out of malice.'" Id. (quoting Bernard v. United States, 25 F.3d 98, 104 (2d Cir. 1994)). Plaintiff failed to present evidence during trial establishing elements (1), (3), and (4) as to defendants Abate or Agostini. Therefore, the jury's verdict against them must not stand.

**Defendant Abate**

Defendant Abate's trial testimony establishes that he had limited involvement in the events surrounding plaintiff's prosecution. Defendant Abate testified that he received notification on the morning of February 12, 2001 of a shooting at 1700 Metropolitan Avenue in the Bronx. (Tr. 371-372) At that point the victim was still alive; therefore, defendant Abate was assigned as lead detective because he was next in line for assignment of a non-fatal shooting case. (Tr. 337) He testified that when he arrived at the scene, the victim had already been removed to the hospital. (Tr. 374-375) Defendant Abate additionally testified that he went into the basement and observed that the walls were crumbling. (Tr. 377) He testified that he then set-up a crime scene, so that the area surrounding the shooting was not contaminated. (Tr. 372-373) Defendant Abate testified that pursuant to his duties as a detective, he canvassed several apartments in the building. (Tr. 373) Shortly thereafter, he returned to the 43rd Precinct, where he was present with defendant Agostini during an interview with the plaintiff. (Tr. 375-376) During the interview, the plaintiff was asked simple

questions, however defendant Abate testified that plaintiff was not forthcoming. (Tr. 376) Furthermore, defendant Abate observed a white stain on plaintiff's jacket, and the jacket was tested to see if it was the same white substance present on the walls in the basement of 1700 Metropolitan Avenue. (Tr. 376-377) The interview with plaintiff was cut short, when plaintiff's lawyer called and told detectives not to question his client. At approximately 8:00 P.M. on February 12, 2001, Albert Acosta died, and defendant Agostini was reassigned as the lead detective in the homicide investigation.

Defendant Abate's only other involvement in this case is that he was involved in the execution of the search warrant for plaintiff's car, and he was authorized by the Bronx County District Attorney's Office to arrest the plaintiff in April 2001. (Tr. 379) Defendant Abate testified that his DD5s and any other information he collected was put in the homicide case folder. (Tr. 379) Defendant Abate did not testify before the grand jury. (Tr. 382) Three years later, detective Abate testified at plaintiff's pretrial hearing and the criminal trial. Plaintiff, however, has not established that Detective Abate did anything other than testify to the best of his recollection at these criminal proceedings.

Plaintiff presented no evidence at trial establishing that defendant Abate commenced or continued plaintiff's prosecution, or that he committed any action concerning plaintiff's prosecution with malice. Plaintiff "[did] not satisfy the 'initiation' element because [he did] not show that [defendant Abate] 'misled or pressured' the ADA" to prosecute the plaintiff. Hill v. City of New York, 05 Civ. 9473 (RMB)(JCF), 2007 U.S. Dist. LEXIS 94969 at *10 (S.D.N.Y. Dec. 28, 2007). ADA Scaccia testified that *she* conducted her own independent investigation into the Albert Acosta homicide, and that her decision to prosecute was based on her independent verification of facts and witnesses, and not merely on information she received from police. (Tr. 621-622) Plaintiff provided no evidence at trial to contradict ADA Scaccia's assertion.

Furthermore, defendant Abate's role in arresting the plaintiff cannot be a basis for the initiation element of a malicious prosecution claim. The evidence established that the Bronx District Attorney decided to present the case to the grand jury and that it was the Bronx District Attorney's Office who authorized the plaintiff's arrest. (Tr. 361, 379, 621-622) Additionally, ADA Scaccia testified that

- 5 -

Detective Abate did not pressure her to prosecute the plaintiff (Tr. 657) and that officers have very little, if anything, to do with what gets presented to the grand jury. (Tr. 657)  Plaintiff moreover did not present any evidence at trial demonstrating that any of defendant Abate's actions were undertaken with malice.  In the context of malicious prosecution, "malice means only 'that the defendant must have commenced the criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served.'" Mazza v. City of New York, 98 CV 2343, 1999 U.S. Dist. LEXIS 13192 at *18 (E.D.N.Y. July 13, 1999).

Here, plaintiff failed to demonstrate that defendant Abate played any role in plaintiff's prosecution, or performed any of his duties in the course of the investigation with any motive other than to obtain information into the homicide of Albert Acosta.  Defendant Abate did nothing wrong and, therefore, as a matter of law, he cannot be held liable for malicious prosecution.

**Defendant Agostini**

Plaintiff furthermore failed to elicit evidence at trial which supported the initiation and malice elements of his malicious prosecution claim as against defendant Agostini.  Detective Agostini testified that he became the lead detective in the investigation after Mr. Acosta died, that he gathered information from witnesses he interviewed, and took other investigative actions in connection with the homicide.  He testified that he was in frequent contact with ADA Scaccia and kept her updated as to the status of the investigation. (Tr. 307-308)  ADA Scaccia furthermore testified that at the conclusion of the police investigation, and upon her independent review of the homicide case file, the Bronx County District Attorney's Office made the decision to prosecute the plaintiff. (Tr. 647)  Shortly thereafter, defendant Agostini signed a criminal court complaint, which was prepared by the District Attorney's Office, and the contents of which was based on defendant Agostini's belief after having conducted a two-month investigation into the homicide. (Tr. 258, 660; Criminal Court Complaint, Exhibit D).

He testified that after the plaintiff's arrest, he provided the Bronx County District Attorney's Office with the entire homicide case file.  Some three years later when the case was going to trial, ADA Scaccia asked Detective Agostini for the case file. (Tr. 616-617)  Detective Agostini who by that time had

been transferred out of the 43rd Detective Squad attempted to locate the case file but discovered that it had been misplaced somewhere at the 43rd Precinct. Detective Agostini testified that he spent three or four days looking for the case file, but he was unable to locate it. (Tr. 279 )

Plaintiff failed to demonstrate that any of defendant Agostini's actions constituted the "initiation or commencement of a criminal proceeding." As an initial matter, plaintiff failed to present any evidence establishing that ADA Scaccia's decision to prosecute the plaintiff was the product of pressuring or urging from defendant Agostini. Indeed, ADA Scaccia testified that Detective Agostini did not pressure her in any way to bring a prosecution against the plaintiff. (Tr. 657) In fact, officers have very little, if anything, to do with what gets presented to a grand jury. "It's not [the officer's] decision." (Tr. 647, 657)

ADA Scaccia's uncontroverted trial testimony reflects that she independently interviewed witnesses and made the decision to prosecute. (Tr. 657) Defendant Agostini, therefore, cannot be said to be liable for the independent and intervening actions of the Bronx County District Attorney's Office. See Pierre v. The City of New York, 05 CV 5018 (JFB), 2007 U.S. Dist. LEXIS 60707, at *36 (E.D.N.Y. Aug. 17, 2007) (finding police officer defendants did not initiate or continue prosecution where prosecutor made decision to commence prosecution); Middleton v. City of New York, 04 CV 1304 (JFB)(LB), 2006 U.S. Dist. LEXIS 44320, at *22 (E.D.N.Y. June 19, 2006) (dismissing malicious prosecution claim upon holding that the decision to prosecute was made by the District Attorney's Office).

That defendant Agostini signed the criminal court complaint, without more, cannot be a basis to support a claim that he maliciously initiated or continued a prosecution against the plaintiff. The Second Circuit has held that "[i]nitiation' in this context is a term of art," involving more than merely reporting a crime and giving testimony; "it must be shown that defendant played an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act." Rohman v. New York City Transit Auth., 215 F.3d 208, 217 (2d Cir. 2000). "One who does no more than disclose to a prosecutor all material information within his knowledge is not deemed to be the initiator of the proceeding." Rohman, 215 F.3d at 217 (citing Present v. Avon Products, Inc., 687 N.Y.S.2d 970, 971 (1st Dept. 1999)).

Here, the evidence establishes that the Bronx County District Attorney's Office prepared the criminal court complaint and determined what crimes to charge. (Tr. 660)  Defendant Agostini, as the lead detective in the investigation, signed the complaint which affirmed *no more* than his belief, based on the results of his "official investigation, defendant's statements, and witnesses known to the Police Department," that the plaintiff had committed the crimes charged in the complaint. (Criminal Court Complaint, Exhibit D) The evidence at trial establishes that defendant Agostini did nothing wrong.  He was involved in a two-month investigation that resulted in witness statements and other information pointing to plaintiff as the prime suspect in the homicide of Albert Acosta.  Defendant Agostini's signing of the criminal court complaint, without more, cannot support a finding that he maliciously "initiated" a prosecution against the plaintiff.  Plaintiff additionally failed to present any evidence showing that defendant Agostini urged the District Attorney's Office to charge plaintiff with a specific crime, or any crime for that matter.

Plaintiff, moreover, failed to prove that defendant Agostini acted with malice in conducting any of his duties in the course of the investigation.  In addition to demonstrating that defendant had an improper motive in commencing a prosecution, a plaintiff must elicit evidence "showing [...] some deliberate act punctuated with awareness of 'conscious falsity' to establish malice." Brogdon v. City of New Rochelle, 200 F. Supp. 2d 411, 423 (S.D.N.Y. 2002) (citing Caldarola v. DeCiuceis, 142 F. Supp.2d 444, 452 (S.D.N.Y. 2001)).  A plaintiff, furthermore, must present admissible evidence of malice and may not merely infer where there are no facts upon which to base that assumption.  Fulton v. Robinson, 289 F.2d 188 (2d Cir. 2002) (finding no facts on which to infer malice existed for prosecution).  Here, the trial record is devoid of any evidence which establishes that defendant Agostini harbored ill will towards the plaintiff or that he had a "malicious" state of mind in conducting any of his duties.

The evidence established that there were multiple detectives participating in the Acosta homicide investigation, that the detectives spoke with witnesses, followed-up on leads, and performed the various tasks associated with a homicide investigation. (Tr. 284, 321) The information compiled by the detectives was memorialized in DD5s. Detective Agostini provided the District Attorney's Office with all of the DD5s prepared by detectives who participated in this investigation along with his entire case folder. (Tr.

612-614)  ADA Scaccia had access to the entire case file through all stages of the grand jury proceedings. (Tr. 612-614)  Although plaintiff claimed that the "missing box" was somehow linked to a malicious intent on the part of Detective Agostini, there is simply no evidence to support such a claim or a finding that Detective Agostini did anything other than perform his duties in connection with the homicide investigation. The jury's verdict against defendant Agostini does not comport with the evidence elicited at trial and must be rejected.

### C.    Plaintiff failed to establish that there was a total absence of probable cause for his prosecution.

Plaintiff failed to controvert the evidence elicited at trial which established that there was probable cause to commence a prosecution against him.  When evaluating whether there was probable cause to initiate a prosecution, the Court evaluates the information that existed at the time when the prosecution was initiated.  Rounsville v. Zahl, 13 F.3d 625, 630 (2d Cir. 1994). "Probable cause does not require a 'certitude' that a crime has been committed by a suspect.  Rather, a malicious prosecution connotes a decision to proceed maliciously with the prosecution of an individual where probable cause is clearly lacking." Brown v. New York, 459 N.Y.S.2d 589, 591 (1st Dept. 1983).  Therefore, to succeed on his malicious prosecution claim, plaintiff necessarily had to establish that at the time he was arraigned on April 20, 2001, there was no probable cause for his prosecution.  Plaintiff failed to meet this burden.

The uncontroverted evidence established that prior to commencing the grand jury proceedings, which commenced prior to plaintiff's arraignment, defendant Agostini provided the District Attorney's Office with all of the documents and materials compiled during the police investigation.  Those materials provided to the ADA included witness statements and witness identifications of (a) plaintiff as the individual Walter Cobb observed leave the scene of the homicide after he heard shots fired; (b) plaintiff as the individual that Terrence Alston stated had asked him to kill a security guard; and (c) plaintiff as the individual Chris Tartone identified as the person who came into his pizza parlor asking about purchasing a handgun.  Plaintiff has failed to show that these witness statements and the other evidence the ADA possessed at the time of his arraignment were insufficient to establish probable cause for his prosecution.

- 9 -

Plaintiff's entire case is premised on his claim that witnesses lied to the grand jury and that the defendant officers engaged in misconduct, but plaintiff presented no evidence to that effect other than his own say so. Plaintiff claimed Terrance Alston was a gang member and a criminal and that he lied to get out of jail. (Tr. 88-89) The Bronx District Attorney's Office, and not Detectives Agostini or Abate, entered into a cooperation agreement with Mr. Alston. According to ADA Scaccia's testimony, all of the judges involved in the pendency of the case knew about the cooperation agreement. (Tr. 661) Moreover, ADA Scaccia testified that she is obligated to put witnesses on the stand who she has reason to believe are telling the truth. (Tr. 643) ADA Scaccia testified that she has discretion with respect to the witnesses she presents to the grand jury. (Tr. 656) She testified that she interviewed and determined which witnesses to present to the grand jury. (Tr. 621) She further testified that it was her "decision to put Mr. Alston in the grand jury and that it had nothing to do with Detective Agostini or what he thought about Mr. Alston or anything else. It was the District Attorney's call as to who to put before the grand jury, when, and why." (Tr. 647)

The evidence establishes that ADA Scaccia was fully aware of all the information concerning Mr. Alston, including the fact that Mr. Alston had lied to police about the identity of the individual he alleged sold plaintiff a gun. (Tr. 640-642) Moreover, ADA Scaccia knew about Mr. Alston's criminal background and decided to present Mr. Alston to the grand jury anyway. Mr. Alston testified that plaintiff asked him to kill another security guard. (Tr. 643-645, Grand Jury Transcript, Exhibit B) ADA Scaccia emphatically testified that "Mr. Alston, to my knowledge back then and as I sit here before you today, did not lie about anything material having to do with this homicide investigation." (Tr. 644)

Plaintiff also claimed that the Parkchester porter Walter Cobb lied. (Tr. 81, 94) In support of this claim, plaintiff pointed out what he alleged to be inconsistencies in Mr. Cobb's statements to police. For instance, in one statement to police, Mr. Cobb said he heard a gun shot, while in another statement to police he said he had heard more than one shot. (Tr. 623) However, ADA Scaccia testified that she interviewed Mr. Cobb and decided to put him before the grand jury. (Tr. 622) Plaintiff claimed that the pizza parlor owner Chris Tartone lied. (Tr. 99) However, ADA Scaccia testified that Mr. Tartone would see plaintiff in his pizza parlor and on one particular occasion overheard plaintiff ask someone where plaintiff could get a gun.

- 10 -

(Tr. 654) Plaintiff's testimony that all of the civilian witnesses lied is mere speculation and conjecture, and does not detract from the fact that there was probable cause for his prosecution. Plaintiff has simply failed to show that there was a complete absence of probable cause at the time of the ADA's presentation of the case to the grand jury.

Even if one were to discount the testimony of Terrance Alston, there was additional information, including two other civilian witnesses who implicated plaintiff in criminal wrongdoing, and evidence that plaintiff had a prior physical altercation with the decedent. (Tr. 459-460) Furthermore, plaintiff has presented no evidence establishing that Detectives Agostini or Abate failed to provide the ADA with any material information during the prosecution of the criminal case, or that probable cause was vitiated at any stage in plaintiff's criminal proceeding. To the contrary, Detective Agostini kept ADA Scaccia up to date on the status of the investigation, and ADA Scaccia had access to the entire homicide case file at all stages of the grand jury proceeding. ADA Scaccia independently interviewed the witnesses and made the decision to present the case to the grand jury and still further, to pursue the prosecution through resolution at trial. The evidence elicited establishes that it was ADA Scaccia who decided to pursue the prosecution and not Detectives Agostini or Abate.

## POINT II

### DEFENDANTS ABATE AND AGOSTINI ARE ENTITLED TO QUALIFIED IMMUNITY

The question of qualified immunity is independent of the merits of the underlying action and must be examined independent of the underlying malicious prosecution claim. Saucier v. Katz, 533 U.S. 194, 204, 121 S. Ct. 2151 (2001); Washington Square Post No. 1212 v. Maduro, 907 F.2d 1288, 1292 (2d Cir. 1990)(citing Mitchell v. Forsyth, 472 U.S. 511, 527-28, 105 S. Ct. 2806 (1985)). The application of qualified immunity is important since it is inevitable that "officials will, in some cases, reasonably but mistakenly …[take actions that are later found to be illegal and,] in such cases those officials…who act in ways they reasonably believe to be lawful -- should not be held personally liable." Anderson v. Creighton,

483 U.S. 635, 641 (1987); see also Oliveira v. Mayer, 23 F.3d 642, 649 (2d Cir. 1994), cert. denied, 513 U.S. 1076 (1995) (qualified immunity available to officer "when he reasonably believes that a reasonable prudent police officer would have acted even though a reasonable prudent police officer would not have acted.").

The purpose of qualified immunity is to protect government employees from civil liability where performance of their discretionary functions "does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1992). It is well settled that police officers, like other government officials performing discretionary functions, are shielded from liability when their conduct does not violate an individual's clearly established constitutional or statutory rights. Warren v. Dwyer, 906 F.2d 70, 74 (2d Cir. 1990), cert. denied, 498 U.S. 967 (1990). Where reasonably competent officials could disagree as to whether the conduct at issue would violate clearly established rights, the immunity defense is available as well. Malley v. Briggs, 475 U.S. 335, 341 (1986); Cartier v. Lussier, 955 F.2d 841, 846 (2d Cir. 1992). Because a main "concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct," Saucier, 533 U.S. at 205, qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law." Malley, 475 U.S. at 341.

As held in Saucier, district courts must begin the qualified immunity determination with an analysis of whether, on the facts alleged, the officer's conduct violated a constitutional right. Saucier, 533 U.S. at 201. Assuming, arguendo, that the first prong is satisfied, that is, a constitutional violation is established on the facts alleged, "the next, sequential step is to ask whether the right was clearly established" at the time of the alleged incident. Id. The clearly established inquiry requires that "[i]f the law did not put the officer on notice that his conduct would be clearly unlawful, …qualified immunity is appropriate." Id. at 202. Put another way, qualified immunity is appropriate "if either a) the defendant's action did not violate clearly established law, or b) it was objectively reasonable for the defendant to believe that his action did not violate [the] law." Anderson v. Recore, 317 F.3d 194, 197 (2d Cir. 2003).

"A right is clearly established if 1) the law is defined with reasonable clarity, 2) the Supreme Court or the Second Circuit has recognized the right, and 3) a 'reasonable defendant [would] have

understood from the existing law the [his] conduct was unlawful.'" Anderson, 317 F.3d at 197 (quoting Young v. County of Fulton, 160 F.3d 899, 903 (2d Cir. 1998). The Saucier Court stated that the right the officer is alleged to have violated must have been "clearly established in a more particularized, and hence more relevant, sense." Id. at 202. That is, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson, 483 U.S. at 640. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202.

### A.    Detective Shawn Abate

The evidence at the trial, as confirmed by the jury's "No" answer to Question 2 on the verdict sheet, was that Detective Abate neither misrepresented evidence to the prosecutors nor gave false testimony to the grand jury, which is the gravamen of a malicious prosecution claim. (Final Verdict Sheet, Exhibit C) Detective Abate did not even testify before the grand jury. With respect to the civilian witnesses that did testify before the grand jury, Terrence Alston, Walter Cobb and Chris Tartone, there was no evidence that Detective Abate ever talked to or interviewed these witnesses, much less committed any misconduct in connection with their respective grand jury testimonies. He did not interview the police officer witnesses, Officers Nieves and Perez, that testified before the grand jury either, nor even discuss their respective testimonies with them. There was no evidence that Detective Abate falsified any evidence or withheld any information from the prosecutor or in any way took any acts whatsoever that resulted in plaintiff being indicted. Detective Abate had absolutely nothing to do with the presentation of the case by ADA Scaccia to the grand jury.

In fact, Defendant Abate's primary involvement in this matter was effectively limited to events occurring prior to plaintiff's prosecution, i.e., establishing a crime scene around the basement area of 1700 Metropolitan Avenue, canvassing the building for anyone with information about the shooting, participating in the interview of plaintiff at the 43rd Precinct, obtaining a search warrant for plaintiff's car and arresting plaintiff at the behest of the Bronx District Attorney's Office in April 2001. (Tr. 372-376, 379-380)

As such, plaintiff cannot establish either prong that he must establish to deny Detective Abate qualified immunity. He did not maliciously prosecute plaintiff, even as the jury was charged in this case. While it is not clear why the jury found liability as to Detective Abate, to the extent the jury based their finding on Detective Abate's participation in the events occurring on February 12, 2001, and his involvement in plaintiff's arrest in April 2001, these events are not germane to the issue of malicious prosecution. Moreover, Detective Abate certainly did not violate a "clearly established" right of plaintiff, and plaintiff cannot point to any such right that Detective Abate violated.

### B.    Detective Louis Agostini

Detective Agostini did testify before the grand jury. The grand jury minutes reflect that, the questions posed to Detective Agostini by ADA Scaccia were limited to the identification of the victim, Albert Acosta. That is all that he testified to before the grand jury. He, moreover, did not give any false testimony to the grand jury. (Grand Jury Transcript, Exhibit B) His role in this matter was lead detective of the investigation into the homicide of Albert Acosta, and he interviewed witnesses and undertook other investigatory steps in furtherance of the investigation.

With respect to the civilian witnesses that did testify before the grand jury, Detective Agostini did re-interview Terrence Alston while Mr. Alston was incarcerated at Riker's Island. The trial testimony reflects that non-party Detective Derrick Parker was contacted by a confidential informant incarcerated at Riker's Island who advised that Mr. Alston had information concerning a murder in the Bronx. (Tr. 479-80) Other members of the 43rd Detective Squad went to Riker's Island after Mr. Parker met with Mr. Alston and interviewed Mr. Alston themselves. (Tr. 481; Defendants' Trial Exhibit "F8," Annexed Hereto as Exhibit "F") Detective Agostini, as lead detective in the investigation, prudently re-interviewed Mr. Alston the next day and prepared a DD5 concerning same. (Plaintiff's Trial Exhibit "22," Annexed Hereto as Exhibit "G") ADA Scaccia interviewed Terrence Alston independently, decided herself to enter into a cooperation agreement for his testimony, and in her discretion presented his testimony to the grand jury. (Tr. 621, 647) At trial, ADA Scaccia testified that she decided which witnesses to present to the grand jury, that she has an obligation to put people before the grand jury who she believes are telling her the truth,

and that to this day, as far as she is concerned, Terrence Alston did not lie about anything material having to do with the Acosta homicide investigation. (Tr. 643-647)

With respect to civilian witness Walter Cobb's testimony before the grand jury, Detective Martinez, and not Detective Agostini, prepared the DD5 concerning what Cobb witnessed on the day of the murder. (Plaintiff's Trial Exhibit "1," Annexed Hereto as Exhibit "J")  Furthermore, ADA Scaccia interviewed Mr. Cobb independently and presented his testimony to the grand jury. (Tr. 621-622 and 652-53, 656 and 657)

With respect to Chris Tartone, Detective Agostini did prepare a DD5 of his interview of Mr. Tartone. (Defendants' Trial Exhibit "L3," Annexed Hereto as Exhibit "H")  The DD5s in the case reflect that Detective Agostini was given Mr. Tartone's name by Sal Miro, a construction worker at Parkchester. (Defendants' Trial Exhibit "I3", Annexed Hereto as Exhibit "I")  Mr. Tartone, the owner of a pizzeria that plaintiff admitted on cross-examination that he frequented, was interviewed by Detective Agostini. (Tr. 144)  Mr. Tartone was independently interviewed by ADA Scaccia and presented to the grand jury. (Tr. 621, 654, 656)  There was no evidence presented at trial that Mr. Tartone testified falsely before the grand jury or that Detective Agostini suborned perjury in connection therewith.

With respect to Officer Perez's grand jury testimony, Detective Martinez, and not Detective Agostini interviewed him and prepared a DD5 concerning same. (Plaintiff's Trial Exhibit "5," Annexed Hereto as Exhibit "K")  ADA Scaccia independently interviewed Officer Perez and presented his testimony to the grand jury. (Tr. 621 and 652, 656)  There was no evidence at trial that Officer Perez testified falsely before the grand jury or that Detective Agostini suborned perjury in connection therewith.  In fact, the jury's verdict with respect to Officer Perez indicates that he did not testify falsely before the grand jury.

With respect to Officer Nieves' grand jury testimony, Detective Agostini did interview her and prepared a DD5 concerning same. (Plaintiff's Trial Exhibit "39," Annexed Hereto as Exhibit "L")  ADA Scaccia independently interviewed Officer Nieves and presented her testimony to the grand jury. (Tr. 621, 655 and 656)  There was no evidence at trial that Officer Nieves testified falsely before the grand jury or that

- 15 -

Detective Agostini suborned perjury in connection therewith.    The jury's verdict with respect to Officer Nieves indicates that she did not testify falsely before the grand jury.

Plaintiff will point to the so-called missing box as a reason that qualified immunity should not be afforded Detective Agostini.  However, the undisputed evidence at trial was that ADA Scaccia had the complete contents thereof for her use in her grand jury presentation.  (Tr. 612-614)  Although plaintiff claims there are inconsistencies in statements in the DD5s, the evidence shows that all the DD5s were provided to the ADA for her review after plaintiff's arrest and prior to her presentation of the case to the grand jury.

Significantly, the evidence establishes that the Bronx District Attorney's Office pursued the prosecution of plaintiff through trial notwithstanding the fact that the police homicide folder (box) could not be located.  There is nothing in the record to show that probable cause for the prosecution was vitiated between the grand jury indictment and the criminal trial.

Simply put, Detective Agostini did not violate plaintiff's constitutional rights by maliciously prosecuting him, much less violate a clearly established right of plaintiff.   As such, qualified immunity must be afforded Detective Agostini.

## POINT III

## DEFENDANTS WERE DENIED A FAIR TRIAL

In considering a motion made pursuant to Rule 59, the trial judge may reassess the trial evidence and need not view it in the light most favorable to the nonmovant.  See United States v. Landau, 155 F.3d 93, 104 (2d Cir. 1998).  Accordingly, "a motion for a new trial may be granted even if there is substantial evidence to support the jury's verdict."  Caruolo v. John Crane, Inc., 226 F.3d 46, 54 (2d Cir. 2000).  A new trial may be granted where the Court finds that "the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice."  Hygh v. Jacobs, 961 F.2d 359, 365 (2d Cir. 1992).  For the reasons set forth below, defendants submit that the jury's verdict was not based on the weight of the admissible evidence and represents a miscarriage of justice.

### A.    The Failure of the Court to Bifurcate Liability and Damages

Plaintiff called as expert witnesses a licensed psychiatrist, Dr. Latif, and an economist, Dr. Tinari.  Taken in sum, these experts testified that plaintiff suffers from post-traumatic stress disorder resulting from the criminal prosecution, is and will continue to be unable to function, and has economic losses greater than $1,200,000.  The testimony of Dr. Tinari was particularly speculative, in that he gave an opinion that plaintiff would not be able to work until the year 2023 without considering any factors such as whether plaintiff would have been continuously employed until that date even if he had not been prosecuted.  Defendants were not even allowed to cross-examine Dr. Tinari with plaintiff's disciplinary histories at Parkchester that showed him to be less than a model employee.  The presentation of this evidence, before a finding of liability, was unduly prejudicial to defendants in that the foregoing evidence evoked undue sympathy for plaintiff's alleged injuries before there was any finding of wrongdoing by defendants of any type.  Plaintiff's brother, Mario Manganiello, called solely as a damage witness, was also allowed to testify before a finding of liability.  The undue prejudice caused by the Court's failure to bifurcate liability and damages as requested in defendants' motion in limine is grounds for the Court to grant a new trial.  The failure to bifurcate caused a seriously erroneous result, a verdict against the weight of the evidence and a miscarriage of justice. The Court should thus use its broad discretion and grant a new trial.

### B.    The Court Erroneously Permitted Plaintiff to Testify about his Questioning and Detention on February 12, 2001 and his Arrest in April, 2001 which Resulted in Undue Prejudice to Defendants

Defendants' first motion in limine sought to limit the evidence presented at trial to whether defendants acted improperly in connection with ADA Scaccia's presentation of evidence to the grand jury. Defendants' second motion in limine sought to exclude plaintiff from testifying about the questioning of him by defendants Agostini and Abate on February 12, 2001, shortly after the homicide.  The grounds for the motion was that the proffered evidence was irrelevant to whether defendants had acted improperly in connection with the evidence put by ADA Scaccia before the grand jury and as unduly prejudicial under F.R.E. 402 and 403. Defendants' first and second motions in limine were denied by the Court before trial.

Plaintiff was thus allowed to testify concerning his questioning and detention on February 12, 2001 as follows, resulting in undue prejudice to the defendants: plaintiff was "pat(ted)" down and placed into the back of the police car. (Tr. 65) He was having heart palpitations from running down the street and from what he saw at the scene of the homicide. (Tr. 65) At the 43rd Precinct he was brought to the "interrogation room" to see defendant Agostini. (Tr. 65) Defendant Agostini then sat plaintiff down and asked him general questions, including his address and phone number. (Tr. 66) Plaintiff was then examined by the NYPD Emergency Services Unit and that sensors were placed on his chest. (Tr. 66) Plaintiff then asked if he could be "checked out" but that he was told that he couldn't by Detective Agostini. (Tr. 66)

Plaintiff testified that he was then asked by defendant Agostini if he had killed Albert Acosta, and that he responded, "Are you fucking crazy?" (Tr. 68) Plaintiff then was "look(ed)" at "like a piece of garbage" by a "pissed off" Detective Agostini, and Detective Abate and Sgt. McGovern were called into the room where plaintiff was being questioned. (Tr. 68)

Plaintiff was then stripped of his clothes. (Tr. 68) His jacket and shirt were taken, as well as his belt and keys. (Tr. 69) Defendants Agostini and Abate laughed as they were stripping plaintiff of his clothes. (Tr. 69) Detective Agostini then ripped off a band-aid from plaintiff's finger and told plaintiff that he wouldn't be needing it anymore. (Tr. 69) Plaintiff was then placed in a holding cell. (Tr. 69) He was still in his pants and t-shirt. (Tr. 70) He asked Detective Agostini to get some clothes for him since he was cold. (Tr. 70) Detective Agostini laughed and walked away. (Tr. 70) Plaintiff was in the holding cell until 5 a.m. the next morning. (Tr. 70) Plaintiff was then told to leave the precinct stationhouse by Detective Agostini but was not given his car keys. (Tr. 70) Plaintiff was not allowed to put his shoelaces on his shoes in the stationhouse and was told to get out of the "fucking station house." (Tr. 71) Plaintiff was nauseous, dizzy and couldn't sleep thereafter. (Tr. 71)

Plaintiff was permitted to examine defendant Agostini regarding whether there was probable cause to arrest plaintiff on February 12, 2001. (Tr. 218-219) However, there was no claim for false arrest to be tried in this case and therefore questions going to probable cause to arrest should not have been permitted. Likewise, plaintiff's counsel was allowed to question defendant Abate about a search warrant that was

- 18 -

obtained to search plaintiff's vehicle. (Tr. 355-357) However, there was no claim in this case that the search warrant was not obtained properly and thus should not have been permitted.

Plaintiff was also allowed to testify to the details of his arrest that occurred several months later. In April, 2001, plaintiff was filling up his car with gas at a gas station. (Tr. 73) Two officers with guns pointed ran toward plaintiff. (Tr. 73) Plaintiff didn't know that they were police officers. (Tr. 73) He thought that he was being carjacked. (Tr. 73) The police officers threw plaintiff against a car and handcuffed him. (Tr. 73-74) Detective Agostini told Detective Abate and Sgt. McGovern that "he's all yours, now we got him good." (Tr. 74) Plaintiff was strip searched and put into a cell. (Tr. 74) The detectives were laughing behind plaintiff's back. (Tr. 74) Plaintiff was taken to Central Booking and placed into a cell and remained handcuffed. (Tr. 74) Plaintiff then spent 10 days in custody at Riker's Island. (Tr. 76)

Allowing the foregoing testimony was unduly prejudicial to defendants and error. Nothing arising from the questioning of plaintiff on February 12, 2001 or the arrest of plaintiff in April, 2001 was presented to the grand jury. The only claim in the case was whether plaintiff was maliciously prosecuted. Therefore, testimony of how plaintiff was treated at the time of his arrest should not have been allowed into evidence, had an obvious prejudicial effect and is grounds for a new trial. Manley v. Ambase Corp., 337 F.3d 237, 245 (2d Cir. 2003)(new trial appropriate where "'the jury has reached a seriously erroneous result or . . . the verdict is a miscarriage of justice,'" i.e., it must view the jury's verdict as "against the weight of the evidence.'").

### C.    Dr. Latif was Allowed to Testify as An Expert Witness Without a Proper Disclosure

Under Fed. R.. Evidence 702, "non-expert lay witnesses may only testify to opinions or inferences 'which are (a) rationally based on the perception of the witness, and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." United States v. Henderson, 409 F.3d 1293, 1300 (11th Cir. 2005).

Here, Dr. Rehana Latif was permitted to testify to opinions concerning the causation of plaintiff's alleged injuries which were not rationally based on her perception or treatment of the plaintiff. Dr. Latif, in fact, testified that her opinions regarding the cause of plaintiff's injuries were based solely on statements made to her by the plaintiff. (Tr. 689-690). Dr. Latif's testimony as to the cause of plaintiff's injuries, thus, was purely hypothetical, speculative, and clearly outside the scope of allowable testimony which may be elicited from a non-expert witness. See Henderson, 409 F. 3d at 1300 ("the ability to answer hypothetical questions is 'the essential difference' between expert and lay witnesses.")(internal citations omitted) The Court, however, allowed Dr. Latif to testify as if she was an expert over defendants' objections in their motion in limine and at trial, despite the fact that plaintiff never proffered Dr. Latif as an expert witness prior to trial. No Rule 26(a)(2) disclosure was ever made by plaintiff which would have allowed Dr. Latif to testify as an expert witness.

That Dr. Latif was allowed to testify to her purely speculative opinion that the injuries for which plaintiff sought her treatment were caused, to a reasonable degree of medical certainty, by plaintiff's prosecution was extremely prejudicial to defendants. (Tr. 682-83) Had Dr. Latif been properly identified and proffered as an expert during discovery, defendants would have appropriately been on notice and would have had the opportunity to seek rebuttal expert testimony on the issue of causation. Moreover, because Dr. Latif was not properly classified as an expert during trial, defendants were unable to voir dire this witness as to her credentials and competency to even proffer her opinions on causation.

Notwithstanding the prejudicial effect of Dr. Latif's inappropriate expert testimony, the Court's affirmation as to the sufficiency of Dr. Latif's opinions improperly bolstered her testimony. After defendants objected to Dr. Latif's opinion testimony, the Court did not merely overrule defendants' objections, but instead opined "…She is a treating doctor and relating to us her opinion during the course of that treatment and what it portends. I can't imagine a better type of testimony, and I certainly don't understand any of your last ten objections, but it's of no moment since I'm the judge." (Tr. 683)

That Dr. Latif was allowed to testify as an expert, when not proffered as one prior to trial, and then improperly bolstered by the Court, was unduly prejudicial to defendants, caused an improper result, and is grounds for a new trial.

**D.    The Court's Comments During and the Conduct of the Trial Were Unduly Prejudicial and Defendants Agostini and Abate were Denied a Fair Trial**

"A court must strive for 'that atmosphere of perfect impartiality which is so much to be desired in a judicial proceeding.'" Santa Maria v. Metro-North Commuter Railroad, 81 F.3d 265, 273 (2d Cir. 1996)(citing Glasser v. United States, 315 U.S. 60, 82 (1942)). "Indeed, 'a trial judge must be especially cautious and circumspect in language and conduct during a jury trial.'" Santa Maria (citing Coast to Coast Stores, Inc. v. Womack-Bowers, Inc., 818 F.2d 1398, 1401 (8th Cir. 1987)) In reviewing a challenge to a trial judge's conduct, the relevant inquiry is not "whether the trial judge's conduct left something to be desired, or even whether some comments would have been better left unsaid[, but] . . . whether the judge's behavior was so prejudicial that it denied [a party] a fair, as opposed to a perfect, trial." United States v. Rosa, 11 F.3d 315, 343 (2d Cir. 1993).

Although "asking numerous and probing questions of witnesses" is "unquestionably proper," a "trial judge should limit questioning to inquiries necessary to clarify ambiguities, correct misstatements, or obtain information necessary to make rulings," Shah v. Pan Am Services, 148 F.3d 84, 98 (2d Cir. 1998)(citing United States v. Manko, 979 F.2d 900, 905 (2d Cir. 1992), and a reversal on the "basis of a judge's improper remarks if the judge expresses [his] opinion on an ultimate issue of fact in front of the jury or [argues] for one of the parties." Shah (citing Causey v. Zinke (In re Aircrash in Bali, Indonesia), 871 F.2d 812, 815 (9th Cir. 1989)). "It is only after an examination of the entire record," however, "that the appellate court "can come to a conclusion about the conduct of the district court." Shah (citing Manko, 979 F.2d at 905-906).

1. Several of the Court's Comments and Rulings Throughout the Duration of the Trial were both Irrelevant and Extremely Prejudicial.

As an initial matter, the Court refused side bars, and consequently all of the Court's comments were made in the presence of the jury. (Tr. 270)  Defendants submit that several of the Court's comments were irrelevant to the issues presented at trial, and extremely prejudicial to defendants.

(a) *The Court's Commentary on the Weight of Defendants' Evidence*

On several occasions, the Court openly criticized the sufficiency and/or importance of crucial evidence and testimony which defendants attempted to elicit in the presentation of their case.  For example, during the "cross" examination of former police lieutenant Harry Scott, defendants introduced a DD5 which established that the plaintiff was involved in a prior physical altercation with the deceased. Defendants submit that this evidence supported their position that there was probable cause for plaintiff's prosecution.  Despite the obvious significance of this testimony, during plaintiff's redirect examination of Lt. Scott, the Court stated, "The reason we are letting any of this in, really, is on a flimsy basis, it seems to me. But if it's far away from the time of the incident in question, *then it really ought not be given any weight by the jury*.  So the only reason that he's asking these questions is because he can't tell when it happened, and if it was long ago *it should be given less weight*.  I think they have the picture unless you can do better.  You're welcome to do better."  (Tr. 462-463)  The Court's commentary minimized the significance of this testimony, which likely tainted the jury's ability to make *their own* determination as to the weight of evidence presented.

Similarly, the Court later bolstered certain evidence presented by plaintiff regarding why Michael Booth was not arrested when he gave a statement to police  The Court stated,  "Let me clarify how you may have misunderstood the ruling with respect to the motion in limine, but the bottom line is that the evidence with respect to Booth and the fact that he had not been arrested was something I found to be relevant, and I can tell you why, but in fact that's partially the way I came out with respect to this and differently with respect to Alston." (Tr. 272)

The Court's commentary, again, implies that some weight should be given to the fact that police officers did not arrest Michael Booth during their interview with him. It was defendants' theory of the case, however, that police had no obligation, nor reason for that matter, to arrest Mr. Booth, and that therefore, the fact that he was not arrested had no relevance respecting any issue germane to malicious prosecution. Plaintiff argued that Mr. Booth gave a false statement implicating plaintiff in wrongdoing because police threatened, but did not, arrest him after he signed the statement. Mr. Booth, however, was not even presented by ADA Scaccia to the grand jury. (Tr. 635)

As the issue of Mr. Booth's arrest/non-arrest should have been a non-issue at trial, the Court's bolstering of plaintiff's version of events—the fact that the Court found it "relevant" that Mr. Booth was not arrested—was inappropriate, prejudicial, and invaded the province of the jury to make their own determination as to the weight of this evidence.

Again, although it was for the jury to decide if defendants did anything improper with respect to obtaining witness statements, and for the jury to make credibility determinations, the Court stated before the jury without any prompting, "I will, again, take judicial notice. That (threatening a witness) would not be good police practice." (Tr. 421)

(b) *The Court's Prejudicial Comments in Response to Defendants' Testimony*

In addition to criticizing the sufficiency of defendants' physical evidence, the Court was hostile to the defendant officers on numerous occasions.

**Defendant Agostini**

The Court was openly hostile to Detective Agostini's explanation about the so-called missing box: "Detective, is there any doubt in your mind that within the last ten minutes you changed from having given it (the spiral notebook) to her (ADA Scaccia) to not having given it to her?" (Tr. 170) "There is a lot of story here about lost notes and the inability to have them to defense counsel, which is usually what defense counsel wants. Does this happen often?" (Tr. 192) "But you're aware of the law, right, that indeed you have to turn over--…I don't know about everything, but certainly everything exculpatory." (Tr. 236-37)

Detective Agostini gave a rational explanation for why the box was missing, namely renovations at the 43rd Precinct after he was transferred and both Detective Agostini and ADA Scaccia testified that the box was available to ADA Scaccia at the time of the Grand Jury presentation. (Tr. 202, 204, 283, 612, 614) It was three years later when ADA Scaccia was preparing for the criminal court trial that she and defendant Agostini discovered the box had been misplaced.  (Tr. 615-617)  Moreover, Detectives Agostini, Abate, and Martinez respectively testified that the notes taken down on their spiral notebooks were transposed to their DD5s and contained the exact same information. (Tr. 283; 378; 404) Thus, the Court's comments were unduly prejudicial to defendants and are grounds for a new trial.

The Court further berated Detective Agostini with regard to his testimony concerning the questioning of plaintiff on February 12, 2001.  Detective Agostini testified that plaintiff was evasive during the questioning, yet the Court made it appear to the jury that Detective Agostini did something wrong: "But you didn't pursue that issue and ask him what it (his phone number) was, regardless of whether it was unlisted?" (Tr. 203)

With respect to evidence provided by confidential informant Terrence Alston, the Court made it appear as if Detective Agostini was responsible for Alston's release from jail when the undisputed evidence was that it was the Bronx District Attorney's decision:  "Is it your decision whether he gets out of jail or not?...Where did you have to go to make that happen?" (Tr. 315)

**Defendant Abate**

The Court essentially insinuated that Detective Shawn Abate withheld information from the ADA: with respect to the affidavit of Detective Abate supporting the application to a criminal court judge for a search warrant, the Court asked a series of questions of Det. Abate: "Did she (the Assistant District Attorney)  have more than what you gave her?....How would she achieve that?....Where do you guess it would have come from other than the detectives on the case? (Detective Abate: "I think nowhere.") Me too."  (Tr. 357-58)  In fact, the issue of a search warrant for plaintiff's car had no bearing on the elements that plaintiff had to establish to prove his malicious prosecution claim.

- 24 -

(c) *The Court's Unsolicited and Prejudicial Comments Regarding Irrelevant Points of Law or Misstatements of the Law*

With respect to the questioning of plaintiff by detectives prior to the date of his arrest and the commencement of his prosecution, the Court stated before the jury: "Did anyone read him his Miranda rights?" (Tr. 466) The Court's comment creates the impression that defendants had an obligation to Mirandize the plaintiff, or that it was an issue in the proceedings. Plaintiff, however, was not claiming that he was not read his Miranda rights. In fact, this was not an issue in the case. The issue of Miranda rights was completely irrelevant to plaintiff's malicious prosecution claim, was prejudicial, and moreover, presented additional, unrelated arguments for defendants to refute.

During defendant Officer Nieves' "direct" examination by plaintiff, the Court stated before the jury: "The element here that is most disturbing to, I believe, all of us is that we have to show—indeed the plaintiff has to show that a defendant or more than one acted maliciously, if indeed this woman testified to the effect—differently than she had heard only a few minutes before, that seems to go to that element." (Tr. 490) While the jury's verdict *did not* find liability for malicious prosecution against Officer Nieves, the Court's commentary and misstatement of what the jury had to establish to find malice, was prejudicial to all the defendants. The Court's commentary makes it appear that the jury could find malice on behalf of a defendant, merely by the defendant's inability to recall a prior statement. This, however, *is not* the legal standard upon which to make a finding of malice, nor could it be. In fact, defendants Agostini, Abate, Nieves, and Perez had testified in multiple criminal proceedings regarding plaintiff over the course of 7 years and could not recall their testimonies verbatim. In order to prove malice, it was plaintiff's burden to show not only that defendant had an improper motive in commencing a prosecution, but also "some deliberate act punctuated with awareness of 'conscious falsity.'" Brogdon, 200 F. Supp. 2d 411 at 423 (internal citations omitted).

The Court's "restatement" of the malice prong of a malicious prosecution claim, however, imposed a greatly diminished and very low burden upon which the jury could find malice. The Court's

commentary on this point was clearly prejudicial, and likely played a role in the jury's finding of liability against defendants Agostini and Abate.

  (d) *The Court's Rulings Over Defendants' Objections Were Unduly Prejudicial*

    The Court, over defendants' objections, allowed plaintiff's counsel to ask purely speculative questions of defendants. For example, the Court asked defendant Martinez, "Going back to the telephone earpiece, just to fill up the time, you don't know whether or not that makes you hear better or more or less? You're not a telephone—;" (Tr. 434) The Court allowed plaintiff's counsel to ask, "My question is, even though he was wearing an earpiece, was he able to hear Walter Cobb say hello to him?" (Tr. 438) Defendants submit that they should not have been required to testify about what another person may have heard or seen.

    The Court sustained an objection by plaintiff's counsel as to the use of DD5s which were entered into evidence during defendants' summation. (Tr. 705-708) In the presence of the jury, plaintiff's counsel claimed that defendants' attempt to use evidence that was not introduced during the presentation of the case, was "absolutely improper." (Tr. 706) Plaintiff's counsel continued to castigate defense counsel in front of the jury, stating, "Judge, what the defense is doing right now is highly improper." (Tr. 707)

    Despite defense counsels' protestations that the DD5s had been entered into evidence (Tr. 705-707), the Court responded, "…at the moment since only you and your colleague [defense counsel] recall that [the DD5s] went into evidence, we are not letting them in now." (Tr. 707) Later, after the jury had left the courtroom, the Court admitted that the DD5s *had in fact* been entered into evidence, and that the confusion was its own fault. Defendants, however, were not allowed to reopen their closing to utilize the additional DD5s they intended to use, nor was the jury advised of the confusion. (Tr. 763-68) That plaintiff's counsel was permitted to accuse defense counsel of improper conduct without cure was highly prejudicial.

  2. <u>The Court prevented defendants from fully presenting their case to the jury.</u>

    During defendants' examination of Detective Agostini, the Court refused to allow defendants' counsel to elicit from him the breadth of the investigation that was done and why the

investigation led to plaintiff as a suspect: "When I talk you (Ms. Okereke) don't talk because he can only get one person and I assure you if he has to choose, he will choose me." (Tr. 296-97) "Are we finished with this line of questioning? Because I am...we are not asking you for your response...we are going to move along to something else...There may well be (additional DD5s to be introduced into evidence), but they are not coming in now, and maybe never." (Tr. 307) Although Detective Agostini was a critical witness as the lead detective, the Court refused to allow defendants' counsel to make a full and complete presentation of what he did as lead detective: "Are we close to the end here? (Tr. 325) "You're over your limit." (Tr. 326) However, plaintiff was allowed to question defend Agostini for several hours.

During plaintiff's direct examination, plaintiff was allowed to read certain snippets of other people's Grand Jury testimony. Defendants objected to just small portions of the Grand Jury minutes being read to the jury in a vacuum and the Court specifically stated that defendants would be allowed to read the entirety of the grand jury testimony of the witnesses for which plaintiff read just portions to the Jury later in the trial. (Tr. 95-98) The Court, however, would not allow the testimony to be read when defendants' counsel attempted to elicit such testimony later on in the trial. Instead, when defendants attempted to have Detective Agostini read his grand jury testimony to the jury, the Court stated, "Did you get my drift? Did you understand what I was saying?" (Tr. 322) When defendants' counsel attempted to have defendant officer Alex Perez read his grand jury testimony, the Court stated, again before the jury, "No way. Put another question." (Tr. 540) As the focus of this case should have been on whether there was wrongdoing by defendants in connection with the testimony given to the grand jury, defendants should have been allowed to present the testimony that they gave to the grand jury. Not being allowed to do so was unduly prejudicial.

Despite the Court continuing to cut off defendants' examinations, witnesses were allowed to be asked over and over by plaintiff's counsel regarding whether interview notes should be preserved and not allowed to go missing. (E.g. Tr. 405) It was unduly prejudicial to allow plaintiff's counsel to ask this question over and over again, while repeatedly cutting off defendants' presentation of evidence.

- 27 -

The Court's comments and rulings in light of the record as a whole were more than harmless, and rather, so prejudicial that they denied defendants a fair trial.  <u>United States v. Rosa</u>, 11 F.3d 315, 343 (2d Cir. 1983)  As such, the Court should grant a new trial.

### E.    The Jury's Verdict as to Detective Abate was Inconsistent

With respect to Detective Abate, the Jury answered "Yes" to Question 1, that he maliciously prosecuted plaintiff, "No" to Question 2 that he knowingly misrepresented evidence to the prosecutor and/or grand jury and "Yes" to awards of compensatory and punitive damages.  Given the elements of the charge that was given to the jury, and how the verdict sheet was worded, there is no possible way to reconcile the jury's answers to the four questions that were given to them.  The jury's verdict as to Detective Abate is clearly inconsistent and irreconcilable, thus a new trial is clearly warranted.

Pursuant to <u>Rothstein</u>, 373 F.3d at 282-283,

> Once a suspect has been indicted ... the law holds that
> the grand jury action creates a presumption of probable
> cause. Colon, 60 N.Y. 2d at 82. "The presumption may be
> overcome only by evidence establishing that the police
> witnesses have not made a complete and full statement
> of facts either to the grand jury or to the District Attorney,
> that they have misrepresented or falsified evidence, that they
> have withheld evidence or otherwise acted in bad faith."
> Id. At 82-83. Thus, in order for a plaintiff to succeed in
> a malicious prosecution claim after having been indicted,
> "he must establish that the indictment was produced by
> fraud, perjury, the suppression of evidence or other police
> conduct undertaken in bad faith." <u>Id</u>. at 83.

Here, the verdict reflects that the jury did not find that plaintiff had proved by a preponderance of the evidence that (A) Defendant Abate misrepresented the evidence to the prosecutors, or failed to provide the prosecutor with material evidence or information, or gave testimony to the grand jury that was false or contained material omissions, and (B) the Defendant knew that he was making a material misrepresentation or omission or giving false testimony.  This is the very essence of what is required to establish malicious prosecution.  Yet, the jury found that defendant Abate had maliciously prosecuted plaintiff and is liable for punitive damages.

The truth of the matter is that there is no evidence showing that Detective Abate did anything wrong. The evidence elicited at trial established that Defendant Abate gave his DD5s and notes to Detective Agostini who was the lead detective on the Acosta homicide case. (Tr. 378)  In fact, defendant Abate did not even testify before the grand jury. (Tr. 382)  Defendant Abate's primary involvement in this matter was effectively limited to events occurring prior to plaintiff's prosecution, i.e., establishing a crime scene around the basement area of 1700 Metropolitan Avenue, canvassing the building for anyone with information about the shooting, participating in the interview of plaintiff at the 43rd Precinct, obtaining a search warrant for plaintiff's car and arresting plaintiff at the behest of the Bronx District Attorney's Office in April 2001. (Tr. 372-376, 379-380)  Detective Abate's involvement in these events certainly cannot support a malicious prosecution claim against him.

Indeed, given the fact that the jury answered "No" to Question 2 as to defendant Abate, there can be no question that the malicious prosecution claim against Abate should be dismissed or, alternatively, defendant Abate should be entitled to qualified immunity.  Additionally, at the very least, both moving defendants, Detective Agostini and Abate, must be granted a new trial as the jury's inconsistent verdict shows that they did not understand the instructions.  See Brooks v. Brattleboro Memorial Hospital, 958 F.2d 525, 529 (2d Cir. 1992)(new trial appropriate based on jury's inconsistent verdicts).

F.     **The Court's Instruction to the Jury Regarding an Adverse Inference Resulting from the so-called Missing Box was Improper**

The Court's adverse inference instruction to the jury concerning documents or other evidence in this lawsuit that was not produced (Tr. 782-83) makes no reference to particular documents or evidence and is so confusing as to be wholly improper and unduly prejudicial and must result in a new trial. First, with respect to the police homicide case folder or so-called missing box, the undisputed evidence at trial was that ADA Scaccia had access to the contents of the box and all documents and other items compiled by Detective Agostini during the Acosta homicide investigation (Tr. 203, 204, 283, 611, 612) for her use in presenting the case to the grand jury.  The fact that the file/box later went missing before the criminal trial had no effect on what was at issue in this case, namely the presentation of evidence to the grand jury.  The

full contents of the box were available to ADA Scaccia in the grand jury proceedings, thus, could have no effect on what the grand jury did or didn't do. Furthermore, ADA Scaccia testified that she decided to present the case to the grand jury based on her own, independent interviews of witnesses. (Tr. 621-622)

Second, to the extent that the Court's charge was related to the District Attorney's criminal case file which ADA Scaccia testified was archived after plaintiff's criminal trial and which her office was subsequently unable to locate (Tr. 612-14), those documents should have no bearing whatsoever on the issue of whether the five defendant officers were liable for maliciously prosecuting the plaintiff. As such, there was no basis for that instruction to the jury in this case, and it was unduly prejudicial. The improper instruction caused a result that was against the weight of the evidence, a miscarriage of justice and was seriously erroneous.

**G.    The Court Refused to Allow Defendants to Argue Their Rules 50 and 59 Motions at the Close of the Evidence**

The Court refused to allow defendants to argue their motions following the completion of plaintiff's and defendants' cases. (Tr. 694-695, 762) Although the Court "assumed" that motions had been made, it is simply not proper to merely allow the parties to reserve their motions post-verdict, when resolution of those motions could have resulted in issues not having been presented to the jury for its consideration. As a result, the Court's failure to hear the post-trial motions of defendants prior to giving the case to the jury was unduly prejudicial and must result in a new trial.

**H.    The Court Failed to Issue Special Interrogatories to the Jury on the Issue of Qualified Immunity**

A defendant will be entitled to qualified immunity if, at the time of the incident, he neither knew nor should have known that his actions were contrary to federal law. Put another way, a defendant is entitled to qualified immunity (1) if it was objectively reasonable for him to believe that his actions were consistent with federal law or (2) if reasonably competent police officers could disagree as to the legality of the defendants' conduct. See Saucier v. Katz, 533 U.S. 194 (2001); Ricciuti v. NYC Transit Authority, 796 F. Supp. 84 (S.D.N.Y. 1992). Although the Court agreed with defendants that it is the Court's decision to

decide the issue of qualified immunity, <u>Stephenson v. John Doe</u>, 332 F.3d 68 (2d Cir. 2003), and that special interrogatories must be provided to the jury on this issue, <u>Zellner v. Summerlin</u>, 494 F.3d 344, (2d Cir. 2007), the verdict sheet did not provide questions that would indicate the jury's basis for finding malicious prosecution against defendants Agostini and Abate, particularly given the jury's response to Question 2 relating to defendant Abate. As such, a new trial should be granted to defendants where proper special interrogatories are provided to the jury, after counsel has the opportunity for input into the special interrogatories themselves, which comport with the law of qualified immunity.

### I.     The Jury Charge on the Probable Cause Element Was Misleading and Improper

"A jury instruction is erroneous if it misleads the jury as to the correct legal standard or does not adequately inform the jury on the law." <u>Anderson v. Brenan</u>, 17 F.3d 552, 556 (2d Cir. 1994). "An erroneous instruction, unless harmless, requires a new trial." <u>Id.</u>

The charge to the jury on the probable cause element of malicious prosecution was misleading and erroneous because it allowed the jury to find that there was no probable cause for the prosecution if defendants failed to make "a complete and full statement of facts to the grand jury." (Tr. 788) However, this instruction is completely contrary to the way a grand jury presentation works. The District Attorney determines what witnesses to present to the grand jury. The District Attorney determines what questions to ask of witnesses. Arguably exculpatory evidence does not have to be presented to the grand jury by the District Attorney. The District Attorney has complete discretion over the presentation of evidence. (Tr. 608-660)

In this case, the prejudicial effect of the instruction on defendant Agostini is immeasurable. He was only asked questions by ADA Scaccia about his identification of the victim, Acosta, during the grand jury proceedings. Yet, the jury charge allowed him to be found liable for a malicious prosecution if he didn't make a complete and full statement of facts to the grand jury. The jury instruction allowed the jury to find him liable for a malicious prosecution when he simply, and lawfully, truthfully answered the questions that

ADA Scaccia posed to him. The obviously improper and erroneous instruction is thus grounds for a new trial.

## POINT IV

**THE JURY'S VERDICT SHOULD BE SET ASIDE AS EXCESSIVE AND A NEW TRIAL SHOULD BE ORDERED ON LIABILITY AND DAMAGES; OR THE JURY'S AWARD SHOULD BE REDUCED IN ACCORDANCE WITH EXISTING CASE LAW**

Pursuant to Rule 59 of the Federal Rules of Civil Procedure, defendants move for a new trial, or in the alternative for the Court to alter or amend the judgment, or order remittitur, to reduce the jury award of $1,426,261.00 in damages. Here, the jury reached a seriously erroneous verdict with respect to the damages awarded. The jury's award is against the weight of the evidence indicating that the jury considered matters not before it, based their verdict on speculation, and/or was motivated by sympathy. Defendants contend that a new trial should be granted with respect to plaintiff's damages, or the Court should significantly reduce the jury award to reflect the value of awards in comparable cases within this Circuit.

"While a jury has broad discretion to award damages as it feels appropriate . . . a jury verdict cannot stand if it is the result of a miscarriage of justice and represents a windfall to the plaintiff without regard for the actual injury." Denman v. Sanders, 2006 U.S. Dist. LEXIS 7612 (S.D.N.Y. Feb. 24, 2006) (citing Carter v. Rosenberg & Estis, P.C., 1998 U.S. Dist. LEXIS 4010 (S.D.N.Y. Mar. 31, 1998)). In evaluating a jury's damages award, "if a court finds that damages awarded by a jury are excessive, it may grant a defendant's motion for a new trial in whole or limited to damages, or it may grant remittitur by conditioning denial of a defendant's motion for a new trial on a plaintiff's accepting damages in a reduced amount." Noga v. Potenza, 221 F. Supp. 2d 345 (N.D.N.Y. 2002). In federal question cases, the jury's verdict may be overturned where it is so excessive that it shocks the conscience of the court. See Gasperini v. Ctr. For Humanties, Inc., 518 U.S. 415, 422-23 (1996).

In determining if a damages award is so excessive as to shock the judicial conscience, the Court should not evaluate a case "'in a vacuum,' but should include consideration of the amounts awarded in

other, comparable cases." <u>Mathie v. Fries</u>, 121 F.3d 808, 813 (2d Cir. 1997) (internal citations omitted).  In considering jury awards in comparable cases, a Court may appropriately reference both state and federal cases.  <u>King v. City of New York</u>, 92 Civ. 7738 (JGK), 1996 U.S. Dist. Lexis 19017 at *10 (S.D.N.Y. December 23, 1996).  Moreover, "if the verdict is found to be excessive, it should be reduced only to the maximum amount that could be upheld." <u>Id</u> at *47-48.  In the instant case, the jury's award of $1,426,261.00 in compensatory damages is clearly excessive in comparison to the value of jury awards for malicious prosecution in other recent cases within the Second Circuit.  As set forth below, recent jury verdicts compensating malicious prosecution have been in the range of $250,000.00.

In granting defendants' motion for a new trial on damages concerning a jury verdict of $500,000.00 for plaintiff's malicious prosecution claim, the Court in <u>Laborde v. City of New York</u>, 93 Civ. 6923 (JGK), cited several 42 U.S.C. § 1983 actions where the jury's verdict included a claim for malicious prosecution—*none* in which the verdict exceeded $200,000.00. 1999 U.S. Dist. LEXIS 642 at *26 (S.D.N.Y. January 26, 1999) ("The plaintiff agrees that the jury award [of $500,000.00] exceeds the highest sustained award in other malicious prosecution tort Claims") (citing <u>King v. Macri</u>, 993 F.2d 294 (2d Cir. 1993) (upholding award of $75,000 in a § 1983 action for malicious prosecution where plaintiff suffered serious emotional and mental injuries); <u>Gentile v. County of Suffolk</u>, 926 F.2d 142 (2d Cir. 1991) (*sustaining award of $150,000 for police misconduct that resulted in several days of wrongful confinement and pendency of criminal charges for six years*) (emphasis added); <u>Martinez v. Gayson</u>, No. 95 Civ. 3788, 1998 U.S. Dist. LEXIS 12281 (E.D.N.Y. June 30, 1998) (lump-sum damage award of $310,000 for false arrest and malicious prosecution held excessive; remittitur of $160,000); <u>King</u>, 1996 U.S. Dist. LEXIS 19017 (award of $300,000 for false arrest, malicious prosecution, and assault and battery excessive; remittitur to $200,000)).

The case of <u>Carthens v. City of New York</u>, Index No. 10402/84 (Kings Cty. NY 1989), in which the jury awarded the plaintiff $150,000.00 for his malicious prosecution claim, presents very similar facts to the instant case.  In <u>Carthens</u>, the plaintiff alleged that he was falsely arrested and maliciously prosecuted for murder.  Shortly after the murder occurred, the plaintiff claimed that he was apprehended by police as he was walking home.  The plaintiff was then taken to the crime scene, where an eyewitness to the

murder failed to identify plaintiff as the perpetrator. Plaintiff claimed that despite the fact that the eyewitness was unable to identify him, and the fact that he did not match the description of the perpetrator police received over their radios, he nonetheless was still charged and prosecuted for murder. Plaintiff, furthermore, argued that the grand jury was never informed that he neither matched the description of the assailant broadcast over police radios, nor that the eyewitness was unable to identify him as the perpetrator. Plaintiff was held for nine months before he was released. Plaintiff additionally alleged that for four months of his incarceration, police officers were actually aware of the individual who in fact had committed the murder. At trial, the jury found for plaintiff only on his malicious prosecution claim, and awarded him damages of $150,000.00. See also Kearney v. City of New York, Index No. 16489/87 (Kings Cty. NY, June 7, 1989) (jury verdict of $40,000.00 in malicious prosecution case where plaintiff incarcerated for 14 months on homicide charge and where plaintiff claimed police withheld information from grand jury and prosecutor).

Additional New York State court juries have rendered damages awards of amounts less than $250,000.00 in malicious prosecution cases. See Byrd v. New York City Transit Auth., 172 A.D.2d 579, 568 (App. Div. 2d Dep't 1991) (jury award for compensatory damages in case of assault and battery, false arrest, and malicious prosecution resulting in scars, post-traumatic stress disorder, and some loss of earning capacity, reduced from $950,000 to $250,000); Gosely v. City of New York, Index No. 021382/2001 (Queens Cty. NY, June 30, 2006) (jury verdict for $25,000.00 in malicious prosecution and false arrest case, where plaintiff—16 year old boy—was held in precinct for one day and Rikers Island for additional 2 days, compelled to take polygraph test, and to appear in court at least 5 times).

In light of the jury verdicts awarded in malicious prosecution actions in New York federal and state courts—several in which plaintiffs alleged significantly longer periods of incarceration than plaintiff's ten days, and where the jury generally awarded verdicts of less than $250,000.00—the jury's

award, here, of $1,426,261.00 deviates materially from comparable precedent, and is thus inappropriate and must be reduced in the interests of justice.[1]

### CONCLUSION

For the foregoing reasons, the jury's verdict must be set aside. Defendants respectfully request that the Court grant their motion for judgment as a matter of law, qualified immunity, and/or in the alternative, their motion for a new trial.

Dated:  New York, New York
       July 21, 2008

                          MICHAEL A. CARDOZO
                          Corporation Counsel of the
                            City of New York
                          *Attorney for Defendants Luis Agostini and Shawn Abate*
                          100 Church Street, Room 3-211/137
                          New York, New York  10007
                          (212) 442-8248/(212) 788-9790

                        By: _____
                              Mark D. Zuckerman
                              Amy N. Okereke

To:    Michael Joseph, Esq.
        Osorio & Associates, LLC
        *Attorney for Plaintiff*
        184 Marine Avenue
        White Plains, New York 10601 (via E.C.F. and first class mail)

---

[1] Notwithstanding that plaintiff's compensatory award is grossly excessive, plaintiff's compensatory award may independently be reduced on the grounds that he failed to elicit evidence at trial which sufficiently established proximate cause for his injuries to defendants' alleged unconstitutional behavior. As stated more fully, supra, Point I, plaintiff failed to elicit evidence at trial which demonstrated that either defendants Agostini or Abate violated his constitutional rights. Defendants therefore cannot be said to have caused, and thus cannot be liable, for plaintiff's alleged damages.

For the same reasons, plaintiff has also failed to show that defendants' conduct warrants an award of punitive damages. The punitive damages hearing is currently scheduled to take place before the Court on August 5, 2008. As the jury has yet to determine the amount of their award, if any, for punitive damages, defendants reserve their right to supplement their motion pursuant to Fed. R. Civ. P. 59 on the issue of punitive damages after the August 5, 2008 hearing, and in the event the jury awards punitive damages.

## DECLARATION OF SERVICE BY MAIL

       I, AMY N. OKEREKE, declare, pursuant to 28 U.S.C. § 1746, under penalty of perjury that on July 21, 2008, I served the annexed MEMORANDUM OF LAW upon the following counsel of record by depositing a copy of same, enclosed in a first class postpaid properly addressed wrapper, in a post office depository under the exclusive care and custody of the United States Postal Service, within the State of New York, directed to said counsel of record at the address set forth below, being the address designated by plaintiff for that purpose:

              Michael Joseph, Esq.
              Osorio & Associates, LLC
              184 Marine Avenue
              White Plains, New York 10601

Dated:       New York, New York
            July 21, 2008

                                         _____
                                   AMY N. OKEREKE
                                   ASSISTANT CORPORATION COUNSEL