Index No.07 Civ. 3644 (HB)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANTHONY MANGANIELLO,

Plaintiff,

-against-

DET. LUIS AGOSTINI,

Defendant.

**DEFENDANT AGOSTINI'S REPLY MEMORANDUM OF LAW IN SUPPORT OF HIS POST-TRIAL MOTIONS**

*MICHAEL A. CARDOZO*
*Corporation Counsel of the City of New York*
*Attorney for Defendant Luis Agostini*
*100 Church Street*
*New York, N.Y. 10007*

*Of Counsel: Mark D. Zuckerman*
*Amy N. Okereke*

*Tel: (212) 442-8248*
*(212) 788-9790*

**PRELIMINARY STATEMENT**

Plaintiff's opposition fails to show that plaintiff proved the elements required to establish malicious prosecution against Detective Agostini.[1] Consequently, judgment should be granted to Agostini or, at the very least, the Court should set aside the verdict and grant a new trial. For a statement of relevant facts elicited at trial, the Court is respectfully referred to the Declaration of Amy N. Okereke, dated July 21, 2008, at paragraphs 3 through 16.

**POINT I**

**PLAINTIFF'S OPPOSITION CONSISTS OF CONJECTURE AND SPECULATION, IS REPLETE WITH INACCURACIES, AND UNDERSCORES THE FACT THAT THE JURY VERDICT WAS WITHOUT SUPPORT**

*1. Plaintiff's Statement of Facts*

As a preliminary matter, plaintiff asserts that certain facts were established at trial, (See Pl. Opposition, pp. 1-10), when in actuality, they were not. For example, plaintiff asserts that Albert Acosta was shot between 8:45 a.m. and 9:25 a.m., and that he thus could not have committed the murder because plaintiff was with NYPD Officers Ortiz and Rodriguez responding to a domestic dispute at 1700 Metropolitan Avenue, Apt. 5E, during this period of time. (Pl. Opposition, pp. 1, 17). However, there is no evidence in the trial record establishing the precise time, or even setting a time frame, within which Acosta was shot. The evidence elicited at trial does not even establish the precise time frame that plaintiff was with Officers Ortiz and Rodriguez. Officer Rodriguez testified at trial that he had no independent recollection of any encounter with the plaintiff on the day of the homicide (Tr. 150) and had to rely entirely on notations in his memo book, which he testified were recorded about the same time or shortly thereafter (Tr. 151); Officer Ortiz was not called as a witness during trial; and the DD5s relating to the domestic dispute do not conclusively establish the time plaintiff left Apt. 5E or his whereabouts at the time Acosta was shot.

---

[1] Pursuant to the Court's ruling on August 6, 2008, wherein the Court granted qualified immunity to Shawn Abate, Mr. Abate is no longer a defendant in this action.

### 2. *Plaintiff's Opposition Focuses on His Purported Innocence and Acquittal at Trial, Not on the Issues Germane to the Claim of Malicious Prosecution*

In any event, the issue at trial should not have been whether plaintiff actually committed the homicide, but rather (1) whether plaintiff's prosecution was so totally lacking of probable cause to believe that he had committed the crimes for which he was charged, (2) whether defendant Agostini wrongfully initiated a prosecution against the plaintiff, and (3) whether defendant Agostini's actions were committed with malice. Plaintiff's opposition asserts so-called facts which are irrelevant to the question of whether defendant Agostini maliciously prosecuted the plaintiff, and instead focus on finding fault with the manner in which Agostini investigated the Acosta homicide.

For instance, plaintiff argues that defendant Agostini should be liable for malicious prosecution because he failed to investigate other suspects who could have killed Acosta. (Pl. Opposition pp. 7, 19). However, defendant Agostini and the numerous other detectives involved in the homicide investigation *did* follow-up and investigate leads, and memorialized their investigatory actions and findings in numerous DD5s, which were provided to the Assistant District Attorney for review. (See e.g. Def. Trial Exhibits D3 and J3, Annexed Hereto, respectively, as Exhibits "M," "N"). Even if the District Attorney's Office was in possession of information which identified other potential suspects, that is not germane to the issue of whether the prosecution had *independent* basis to believe that plaintiff had committed the crimes charged in the indictment.

Plaintiff's assertion that defendant Agostini gave false testimony during plaintiff's criminal pre-trial hearing and criminal trial are equally irrelevant to his malicious prosecution claim and should be disregarded. For example, plaintiff claims that defendant Agostini gave false testimony during plaintiff's pre-trial suppression hearing as to the contents of a note which police found in plaintiff's workroom locker. Detective Agostini testified that the note stated, "I feel like killing someone," when the note in fact stated, "I pray every day I don't have to kill someone." However, Detective Agostini testified at trial that he didn't have the note in front of him when he testified at the pre-trial suppression hearing. (Tr. 267) He testified from memory. Thus, there is simply no evidence that defendant Agostini intentionally lied or committed perjury at the pre-trial hearing or at the criminal trial. Even taking plaintiff's allegations to be true, although they are not, testifying falsely at pre-trial criminal hearings cannot alone be a basis for the imposition of § 1983 liability for malicious prosecution, White v.

- 2 -

Frank, 855 F.2d 956, 961 (2d Cir. N.Y. 1988), unless it is established that "[defendant's] testimony at a judicial proceeding may have been the means by which he initiated the prosecution." Id.

Here, plaintiff does not argue that his prosecution was initiated by means of defendant Agostini's testimony during his pre-trial hearing or criminal trial. Plaintiff instead argues that defendant Agostini initiated the prosecution by signing the criminal court complaint. (Pl. Opposition, p. 15). Therefore, plaintiff's claims that defendant Agostini intentionally lied or committed perjury at criminal pre-trial hearings or at the criminal trial must be disregarded. Furthermore, plaintiff's argument that ADA Scaccia failed to provide plaintiff's criminal defense attorney with required documents and evidence has no place in this federal civil trial. Plaintiff's remedy for any purported failure to disclose was a matter to be addressed before the criminal court judge and should have no bearing on plaintiff's malicious prosecution claim against defendant Agostini.

### 3. *Plaintiff's Mischaracterization of the Court's Ruling on Defendant's Summary Judgment Motion*

Plaintiff's opposition incorrectly states that defendant's claims are barred by the law of the case doctrine because plaintiff "established the pertinent facts which supported the Summary Judgment decision." (Pl. Opposition, p. 15). Plaintiff, moreover, states that the Court "in its prior decision found that if the Defendants falsified evidence and suborned perjury then it would be clear to a reasonable officer this conduct was unlawful." First, the Court's decision on summary judgment does not declare that defendant Agostini violated the plaintiff's constitutional rights. The Court's decision merely states that there were disputed questions of fact to be resolved at trial. Second, plaintiff's suggestion that the Court's decision on summary judgment should have some preclusive effect on defendant's post-trial motions is incorrect. In evaluating a motion pursuant to Federal Rules of Civil Procedure 50 and 59, the trial judge may reassess the trial evidence, See United States v. Landau, 155 F.3d 93, 104 (2d Cir. 1998), and in fact must assess the full trial record in establishing whether the jury's verdict was against the weight of the evidence. See also Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp., 136 F.3d 276, 289 (2d Cir. 1998); McGrory v. City of New York, 2004 U.S. Dist. LEXIS 20425, *20-22 (S.D.N.Y. 2004).

## POINT II

### PLAINTIFF FAILED TO ELICIT ANY EVIDENCE DURING TRIAL WHICH REBUTTED THE PRESUMPTION OF PROBABLE CAUSE CREATED BY HIS GRAND JURY INDICTMENT

Plaintiff's opposition consists of conclusory assertions that witnesses gave false testimony before the grand jury, or were coerced or threatened to testify before the grand jury. Plaintiff fails to cite to a single portion of the record which demonstrates that any of the seven witnesses who testified before the grand jury lied or that defendant Agostini coerced any witness to give false testimony. There is no evidence that any of the individuals who testified before the grand jury recanted their grand jury testimony, or that defendant Agostini suborned perjury or committed any other misconduct. Plaintiff's assertion that witness testimonies were false or perjured is solely based on his own self-serving testimony at trial that he reviewed their grand jury testimonies and found them to be fabrications. (Pl. Opposition, p. 11). In support of this proposition, plaintiff cites to Jocks v. Tavernier, 316 F.3d 128, 138 (2d Cir. 2003). Jocks, however, does not support plaintiff's assertion.

In Jocks, plaintiff disputed the accuracy of a written statement, which defendants alleged memorialized a verbal statement that he provided to them shortly after plaintiff's arrest. The Second Circuit opined that in this circumstance "a reasonable jury would be entitled to credit [plaintiff's] testimony and reject [defendant's]." Jocks, 316 F.3d 128, at 138. Thus, Jocks presents a situation where plaintiff's testimony addressed the veracity of a statement which he, himself, was alleged to have made, which plaintiff necessarily would have had first-hand knowledge of, and therefore, a statement which plaintiff would be in a position to refute. However, in the instant case, plaintiff's attack on the various witness testimonies has no basis in fact.

Plaintiff claims that every witness who testified against him at the grand jury lied and that Detective Agostini suborned perjury. While plaintiff can basically make any claim he wishes as to a witness' veracity, he simply cannot make the leap to assert Detective Agostini suborned perjury without more, which is what he has done here. Consequently, plaintiff's argument that Detective Agostini suborned perjury must fail.

Similarly, plaintiff alleges that Walter Cobb lied to the grand jury when Cobb testified that he heard several gunshots very near the time Acosta was shot, and when plaintiff's whereabouts were unknown. Plaintiff cannot speak to what Walter Cobb heard or saw, and thus, is not in a position to refute Cobb's statement.

Furthermore, defendant submits that no reasonable jury could rationally have relied on plaintiff's self-serving statements to discredit the testimony of three independent civilian witnesses without any corroborating evidence.

### POINT III

### PLAINTIFF FAILED TO ESTABLISH THAT THERE WAS A TOTAL ABSENCE OF PROBABLE CAUSE FOR HIS PROSECUTION

Plaintiff failed to demonstrate that probable cause for his prosecution was so totally lacking as to support a claim for malicious prosecution. There was substantial evidence linking plaintiff to criminal wrongdoing. It is undisputed that plaintiff was working the same shift as Acosta on the day Acosta was shot. It is undisputed that plaintiff had white powder on his jacket when police attempted to interview him on February 12, 2001. It is undisputed that police found the same white powder in the basement area where Acosta was shot. It is further undisputed that police had statements from a number of plaintiff's co-workers at Parkchester which implicated plaintiff in criminal wrongdoing. Anthony Longhorn told police that plaintiff was in possession of several guns, and that plaintiff and Acosta had been involved in a fight approximately one year prior to Acosta's murder. (See Def. Trial Exhibit O4, Annexed Hereto as Exhibit "O"). Harry Plaza told police that he also witnessed a fight occur between plaintiff and Acosta in the employee locker room. (See Def. Trial Exhibit R8, Annexed Hereto as Exhibit "P").

Civilian witness Sal Miro claimed that plaintiff told him that he owned the same caliber gun as the one used to shoot Acosta. Additionally, Sal Miro told police that the owner of a local pizza shop, Chris Tartone, told Miro that plaintiff had inquired about buying a gun. (See Exhibit I; and Defendant's Trial Exhibit Z7, Annexed Hereto as Exhibits "Q"). Mr. Miro also told police that plaintiff and Acosta had a disagreement prior to Acosta's homicide. Chris Tartone told police that he observed the plaintiff in his pizza shop inquiring about purchasing a gun shortly before Acosta's murder. Mr. Tartone further directed police officers to another individual, Michael Booth, who later informed police that plaintiff had asked him about buying a gun. Walter Cobb told police that he saw the plaintiff leave the scene of the shooting, after he heard gunshots and shortly before Albert Acosta's mortally wounded body was discovered. Eric Grant told police that at approximately 9:30 A.M., shortly before police discovered Acosta's body, he saw a Parkchester Security Officer matching the

plaintiff's description in the vicinity of the area where Acosta's body was found. (See Def. Trial Exhibit R5, Annexed Hereto as Exhibit "R").

Additionally, Police Officer Miriam Nieves testifed at trial that plaintiff appeared to know the identity of the shooting victim before this information had become public knowledge. Officer Alex Perez testified that the plaintiff looked disheveled, pale, and sweaty at the crime scene. Finally, Terrence Alston told police that the plaintiff asked him to murder a Parkchester security guard.

Considering all of this information which the District Attorney's Office had access to prior to drafting the criminal court complaint, no reasonable jury could find that this information was insufficient to establish probable cause. Absent credible evidence which called the veracity of each of these witnesses into question, no reasonable jury could find that law enforcment should not have relied on these witnesses, and that there was a total lack of probable cause. See Miloslavsky v. AES Eng'g Soc'y, Inc., 808 F. Supp. 351, 355 (S.D.N.Y. 1992) (A law enforcement official may rely on information from an individual who "it seems reasonable to believe is telling the truth").

Even if Alston's grand jury testimony were to be discounted, the testimony and/or witness statements of Cobb, Tartone, plaintiff's Parkchester co-workers, and the other civilian witnessses implicating plaintiff in the homicide cannot be discounted. Defendant submits that the information provided by these individuals, standing alone, established probable cause.

Plaintiff manipulates the facts in an effort to attack the credibility of the witnesses who gave statements to the police and District Attorney's Office. For example, plaintiff alleges that Walter Cobb gave police contradictory and inconsistent statements, and therefore was incredible. However, the only alleged inconsistency which plaintiff can cite to is that Mr. Cobb may have initially told police officers that he heard "a gunshot" before seeing the plaintiff flee the crime scene, and that Cobb later told police that he heard "four gunshots." Even crediting plaintiff's assertion of inconsistency, it is inconceivable that law enforcement would have dismissed Mr. Cobb's statements as to what he heard and saw because they varied somewhat from one interview to another. What is important is that Cobb heard at least one gunshot, saw the plaintiff leave the basement shortly thereafter, and that Acosta's injured body was discovered in the basement area after that.

Plaintiff's attacks on the credibility of Michael Booth and Terrence Alston are equally untenable. The evidence elicited at trial reflected that Mr. Booth was referred to police officers by Chris Tartone. Mr. Tartone told police that plaintiff had inquired into purchasing a gun from Booth in Tartone's pizza shop. Plaintiff argues that Michael Booth was involved in illegal gambling and loan sharking. Even if true, it does not change the fact that Booth had pertinent information with respect to the Acosta homicide that could not be ignored. In fact, the District Attorney's Office was aware of Booth's activities. (Tr. 636).

Finally, plaintiff fails to cite to any actual evidence to sustain his allegation that Terrence Alston's testimony concerning the plaintiff's solicitation of a murder was anything other than truthful. Rather, plaintiff argues that Alston's criminal background was such that any information he offered to law enforcement should have been dismissed out of hand. However, there is no basis to believe that a witness with an unsavory past is incapable of telling the truth. Plaintiff also argues that Alston wanted to get out of jail and therefore had a motive to lie. However, plaintiff cannot refute the fact that there were several witnesses apart from Alston who also implicated plaintiff in criminal wrongdoing.

## POINT IV

### PLAINTIFF FAILED TO ESTABLISH THAT DEFENDANT AGOSTINI INITIATED HIS CRIMINAL PROSECUTION, OR THAT HE ACTED WITH MALICE

Defendant submits that there is no evidence establishing fraud, perjury, or other misconduct on the part of defendant Agostini. Plaintiff's assertion that Agostini initated the criminal prosecution by signing the felony complaint flies in the face of prevailing case law. The mere act of signing a criminal court complaint is not enough to confer liability for malicious prosecution. Where the evidence establishes that the prosecutor was responsible for drafting the criminal court complaint and making the initial decision to commence a prosecution, and the plaintiff cannot present any evidence to the contrary, a police officer cannot be held liable for malicious prosecution. Burt v. Aleman, 05 CV 4493 (NGG), 2008 U.S. Dist. LEXIS 35846 (E.D.N.Y. Apr. 30, 2008) (dismissing malicious prosecution claim where plaintiff failed to present any evidence to rebut affidavit stating that the District Attorney's Office made decision to prosecute plaintiff, and drafted the criminal court complaint).

Moreover, while plaintiff attempts to argue that ADA Scaccia was misled, there is nothing in the record establishing that Detective Agostini misled the ADA or suppressed any evidence. To the contrary, ADA

- 7 -

Scaccia knew all there was to know about the information compiled by Detective Agostini and his fellow detectives. ADA Scaccia testified that she and Agostini discussed Terrence Alston's criminal background. (Tr. 645) ADA Scaccia knew Alston lied about the identity of the individual he claimed sold plaintiff a gun. (Tr. 640-641) Regardless, ADA Scaccia was adamant in her testimony at trial that to this day she believed Alston was telling the truth when he stated that plaintiff had approached him and asked that he kill a security guard. (Tr. 644) Similarly, Detective Agostini testified that he believed Alston was telling the truth about plaintiff. (Tr. 248)

        Alston's desire to get out of jail was also known to the District Attorney's Office and the fact that the Bronx District Attorney's Office entered into a cooperation agreement with Alston should not reflect negatively on Detective Agostini. (Tr. 647) Detective Agostini had nothing to do with the District Attorney's agreement with Alston.

        Further, with respect to plaintiff's assertion that Mr. Cobb provided law enforcement with contradictory statements, ADA Scaccia testified that she was aware of Walter Cobb's statements. (Tr. 622) She was also aware that the test results of plaintiff's hands and clothing were negative. (Tr. 608-609) Regardless, ADA Scaccia pursued the prosecution through resolution at the criminal trial. The evidence elicited at trial established that the District Attorney's Office drafted the criminal court complaint, that ADA Scaccia independently made the decision to commence the prosecution, and that defendant Agostini had no involvement in her decision to prosecute. Plaintiff failed to present any evidence to contradict ADA Scaccia's testimony.

        Plaintiff also failed to establish that defendant Agostini harbored ill will toward the plaintiff or that he had a "malicious" state of mind in conducting any of his duties. Plaintiff's opposition largely relies on his own testimony which alleges that defendant Agostini used profanity against him and behaved unprofessionally. (Pl. Opposition, p. 20). Even taking these allegations to be true, plaintiff fails to establish that defendant Agostini performed any of his duties with any motive other than to obtain information into the homicide of Albert Acosta. Absent such evidence, defendant Agostini cannot be said to have acted with malice. See Mazza v. City of New York, 98 CV 2343, 1999 U.S. Dist. LEXIS 13192 at *18 (E.D.N.Y. July 13, 1999) ("malice means only 'that the defendant must have commenced the criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served.'").

As the trial record is devoid of any evidence demonstrating that defendant Agostini initiated the plaintiff's criminal prosecution or that he carried out his duties with malice, the Court must find that the jury's verdict is against the weight of the evidence and should be set aside.

## POINT V

### DEFENDANT AGOSTINI IS ENTITLED TO A NEW TRIAL

Although plaintiff argues that defendant Agostini is not entitled to a new trial, defendant submits that the jury reached a seriously erroneous result and that the verdict is a miscarriage of justice. First, the jury found that Detective Agostini had maliciously prosecuted the plaintiff. However, there is no evidence in the record to support that finding. Plaintiff argues among other things that Agostini's initial contact with plaintiff at the 43rd Precinct on February 12, 2001 was less than pleasant. For example, plaintiff testified that he cooperated and answered Agostini's questions, whereas Agostini testified that plaintiff was not forthcoming. Agostini's perception of plaintiff as not cooperative is not evidence of malice. Furthermore, contrary to plaintiff's contention, the fact that Agostini's suspicions were aroused when plaintiff's lawyer contacted the detectives and told them not to question plaintiff is not reflective of malice. The Court permitted plaintiff to testify in substantial detail regarding his detention on February 12, 2001 and his arrest in April 2001, but what plaintiff had to say about these events was irrelvant to his malicious prosecution claim. In the face of the jury's verdict, there can be no doubt that the jury was influenced by plaintiff's description of these events and the effect it had on him. Moreover, absent special interrogatories, there is no way to determine the basis for the jury's finding. Defendant's proposed jury charge at page 8 ftn. 1 expressly requested that the jury be given special interrogatories in the event it found for plaintiff, (See Court Exhibit 2; Defendant's Proposed Jury Charge), but none were given.

As explained in its moving papers, defendant submits that the Court should have precluded plaintiff's testimony in this regard. Although plaintiff argues that "a successful malicious prosecution plaintiff may recover compensation for being arrested and for incarceration" (Pl. Opposition, p. 24), that is not so. The only damages recoverable on a malicious prosecution claim must be from the time of arraignment to acquittal and not before. Wallace v. Kato, 127 S. Ct. 1091, 1096 (2007). Here, there is no way of knowing whether, and how

much, plaintiff's testimony regarding his detention on February 12, 2001 and arrest in April 2001 factored into the jury's finding and, consequently, defendant Agostini was greatly prejudiced.

In addition, Question No. 2 of the Verdict Sheet essentially asked the jury whether defendant Agostini had misrepresented evidence to the prosecutors, failed to provide the prosecutor with material evidence, gave false testimony to the grand jury and knew he was making material misrepresentations or omissions. Although the jury responded "yes," there was no evidence elicited at trial which could be construed as misconduct by Agostini such that he could be held liable for malicious prosecution. Although plaintiff relies heavily on "notes disappearing," ADA Scaccia made clear that she had access to the entire police homicide file during all stages of the grand jury process. The testimony elicited at trial reflects that the detectives' notes were transferred onto their respective DD5s. Both the notes and DD5s were seen by the ADA. While ADA Scaccia testified that she told the criminal trial judge that she never had possession of the police homicide file, she explained at trial that she had access to the entire police homicide file. In fact, her office made copies of the DD5s for production to the criminal defense counsel and that is how the DD5s were preserved even though the file was lost at some point prior to the criminal trial. (Tr. 615) There is simply no evidence that Detective Agostini deliberately or intentionally destroyed any police documents.

*Plaintiff has failed to show that the jury verdict is consistent with comparable cases.*

Although plaintiff asserts that the jury verdict rendered in this case is consistent with awards in comparable cases, the cases cited by plaintiff in his opposition fail to support this assertion. Plaintiff relies primarily on Papa v. City of New York, 194 A.D.2d 527 (N.Y.A.D. 2 Dep't 1993) and Vitale v. Hagan, 132 A.D.2d 468 (N.Y.A. 1 Dep't 1987). (Pl. Opposition, at pp. 33-35). As an initial matter, Papa is factually distinguishable from the instant case. In Papa, the jury found that the plaintiff had been severely beaten by police officers, and that the plaintiff had suffered significant physical injury. Here, plaintiff does not allege that he suffered any physical injury. Furthermore, in awarding plaintiff Gerard Papa damages for future lost earnings, the New York Supreme Court first established a basis in the record for accurately determining future lossess, and secondly evaluated the excessiveness of the award so as to ensure that it would not "deviate materially from what would be reasonable compensation." Id. In the instant case, plaintiff's damages award clearly deviates from awards in similar cases. Moreover, beyond Dr. Latif and Dr. Tinari's wholly speculative testimony, plaintiff

- 10 -

provided little or no support for his purported future earnings. Vitale v. Hagan is also factually distinguishable from the instant case. In Vitale, plaintiff's physical injuries were significant and warranted over $50,000 in medical expenses. Vitale, moreover does not even discuss the issue of pecuniary losses.

As cited more fully in defendant's moving papers at Point IV, damages awarded in malicious prosecution actions in New York federal and state courts have generally not exceeded $250,000.00. The jury's award here, of $1,283,634.90, deviates materially from comparable precedent, and is thus inappropriate and must be reduced in the interests of justice.

***The Jury's Punitive Award Must be Vacated***

That the jury awarded punitive damages in the amount of $75,000 as well as compensatory damages in the amount of $1,283,634.90 reflects that the jury's entire verdict was without legal support. In order to be entitled to punitive damages, plaintiff was required to establish that defendant Agostini's conduct was so outrageous and evidenced such a degree of malice or callousness or reckless disregard for plaintiff's rights that he deserved to be punished. Smith v. Wade, 461 U.S. 30, 52-56 (1983). For the reasons stated herein, plaintiff failed to elicit evidence at trial establishing that Defendant Agostini's conduct was unconstitutional, much less that it warranted an award of punitive damages. Therefore, the jury's award of $75,000 for punitive damages against defendant Agostini must also be vacated and/or reduced.

Additionally, defendant submits that he was prejudiced at the punitive damages hearing due to an article concerning this matter which appeared in the New York Daily News in the weeks prior to the punitive damages hearing. The punitive damages hearing was held on August 6, 2008, after a one and a half month adjournment of the trial which concluded on June 24, 2008. The Court adjourned the punitive damages proceeding, in order to allow the City of New York an opportunity to determine whether it would represent the remaining defendants at that phase of trial. The adjournment additionally afforded the parties an opportunity to raise any additional issues to the Court regarding punitive damages, such as whether the jury would be informed that the City of New York was indemnifying defendant Agostini for any award of punitive damages.

On June 25, 2008, an article entitled "City to Pay guard $1.5M, Maybe More," appeared in the New York Daily News. (See Court Exhibit 22). The article, which quotes plaintiff's counsel, Michael Joseph, states, *inter alia,*

- 11 -

"The $1.5 million award on Tuesday was for compensatory damages only. Still to be decided are punitive damages, which could triple the money the city will have to pay Manganiello."

On August 6, before the jury was brought in, defendant advised the Court of the Daily News Article, and requested that the jury be polled to determine whether any of the jury members had read the article, and whether it had affected their views on punitive damages. Of the six sitting jurors, two stated that they had in fact read the article. While these two jurors stated that the article would not affect their ability to determine the issue of punitive damages fairly, defendant objected and requested a mistrial, which the Court denied.

Defendant submits that he was in fact prejudiced by the Daily News article. First, the article states that the City of New York is the responsible party for the payment of punitive damages. However, defendant requested that the issue of indemnification remain silent during the punitive hearing, and plaintiff did not object, as this issue is irrelevant to the jury's evaluation of defendant Agostini's conduct, and prejudicial in that it implies a seemingly limitless source of funds from which the punitive award would be paid. Second, the article states that the punitive damages award could "triple the money the city will have to pay [plaintiff]." This implies that the punitive award may be as high as $4.5 million dollars. That at least two of the jurors viewed information in the local news which may have inappropriately influenced their determination as to the amount of punitive damages to award was prejudicial to defendant Agostini.

## CONCLUSION[2]

For the foregoing reasons defendant Agostini respectfully requests that the Court grant his motion for judgment as a matter of law or for qualified immunity or, in the alternative, grant his motion for a new trial.

Dated:   New York, New York
         August 18, 2008

>                                    MICHAEL A. CARDOZO
>                                    Corporation Counsel of the
>                                      City of New York
>                                    *Attorney for Defendant Luis Agostini*
>                                    100 Church Street, Room 3-211/137
>                                    New York, New York 10007
>                                    (212) 442-8248/(212) 788-9790
>
>                                    By: _____
>                                        Mark D. Zuckerman
>                                        Amy N. Okereke

To:  Michael Joseph, Esq.
     Osorio & Associates, LLC
     *Attorney for Plaintiff*
     184 Marine Avenue
     White Plains, New York 10601 (via E.C.F. and first class mail)

---

[2] Defendant Agostini served his post-trial motions on plaintiff on July 21, 2008. The punitive damage phase of the trial continued on August 6, 2008. Immediately prior to proceeding with the punitive damage phase of trial, the Court granted qualified immunity to defendant Shawn Abate noting that Abate will pay neither compensatory nor punitive damages. (Tr. 840) Subsequent to the punitive damage phase of the trial, plaintiff submitted two letters to the Court respectively dated August 6, 2008 and August 15, 2008 requesting that the Court enter judgment against defendant Agostini for the damages awarded against former defendant Abate in the amount of $142,626.10 in addition to those awarded against defendant Agostini based on a theory of joint and several liability. Plaintiff also requested that the Court grant his application for attorney's fees. The issue of joint and several liability was not contemplated in defendant's post-trial motions nor was it raised in plaintiff's opposition and, thus, should the Court entertain plaintiff's application, defendant Agostini reserves his right to brief the issue separately. Similarly, should the Court wish to address the issue of attorney's fees at this juncture, defendant requests a briefing schedule.

- 13 -

## DECLARATION OF SERVICE BY MAIL

I, AMY N. OKEREKE, declare, pursuant to 28 U.S.C. § 1746, under penalty of perjury that on August 18, 2008, I served the annexed REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT AGOSTINI'S POST-TRIAL MOTIONS upon the following counsel of record by depositing a copy of same, enclosed in a first class postpaid properly addressed wrapper, in a post office depository under the exclusive care and custody of the United States Postal Service, within the State of New York, directed to said counsel of record at the address set forth below, being the address designated by plaintiff for that purpose:

>Michael Joseph, Esq.
>Osorio & Associates, LLC
>184 Marine Avenue
>White Plains, New York 10601

Dated:    New York, New York
         August 18, 2008

_____
AMY N. OKEREKE
ASSISTANT CORPORATION COUNSEL